UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>-against-<br><br>ICOT HOLDINGS, LLC, and ICOT HEARING SYSTEMS, LLC,<br><br>*Defendant*s. | 1:18-cv-02554-AMD-PK |

## <u>DECLARATION OF TODD C. BANK</u>

1.      I am the plaintiff in the above-captioned matter, and submit this declaration in support of my motion for class certification and for the appointment of Daniel A. Osborn as class counsel.

2.      I have personal knowledge of the facts that gave rise to my individual claims. In addition, I am knowledgeable about the factual and legal issues pertaining to this case.

3.      My interests do not conflict with other class members' interests, and I am committed to vigorously prosecuting this case and representing the proposed class.

4.      I understand that, if the class were certified, I would have a fiduciary duty to the other class members, which would require me to place their interests above the interests of Mr. Osborn and/or myself whenever I believe that a conflict exists between the interests of the class members and Mr. Osborn and/or myself.

5.      I will not accept any payment for serving as a representative party on behalf of any class beyond my *pro rata* share of any recovery, except as ordered or approved by the Court.

6.      I am financially independent from Mr. Osborn.

7.      I do not have any interest in, and I disclaim any interest in, any legal fees that Mr.

Osborn might seek or receive.

8.      A copy of portions of the transcript of deposition of Jacob Zellweger, dated August 8, 2019, is annexed hereto as Exhibit "A."

9.      A copy of my Response to Defendants' First Set of Interrogatories is annexed hereto as Exhibit "B."

10.      A copy of Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories is annexed hereto as Exhibit "C."

11.      A copy of ICOT Hearing Systems, LLC's Responses and Objections to Plaintiff's First Set of Requests for Admission is annexed hereto as Exhibit "D."

12.      A copy of ICOT Hearing's Responses and Objections to Plaintiff's Amended First Set of Interrogatories is annexed hereto as Exhibit "E."

13.      A copy of the subpoena for documents that I served upon Prospects DM, Inc., is annexed hereto as Exhibit "F."

14.      A copy of a redacted excerpt of the document that Prospects DM, Inc., served upon me in response to the subpoena described in paragraph "7" is annexed hereto as Exhibit G."

15.       I incorporate, by reference, all factual assertions in my accompanying memorandum of law.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

                                          ___ **s/ *Todd C Bank*** _____
                                          Todd C. Bank
                                          Executed on January 29, 2021

# EXHIBIT "A"

**Portions of the Transcript of
Deposition of Jacob Zellweger**

**August 8, 2019**

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER

1                UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NEW YORK
2

3
     TODD C. BANK, et al,
4
         Plaintiff,
5

6

7

8

9    vs.                          CIVIL ACTION NUMBER
                                  1:18-CV-02554-AMD-PK
10                                   (E.D.N.Y.)

11

12

13
     ICOT HOLDINGS, LLC,
14   and ICOT HEARING SYSTEMS, LLC,
     d/b/a LISTENCLEAR,
15       Defendant.

16   --------------------------/

17          The deposition of JACOB ZELLWEGER, a

18   witness in the above-entitled cause, taken

19   pursuant to Notice and agreement, before Kyle J.

20   Saniga, Certified Court Reporter and Notary

21   Public, at the Offices of Coastal Court

22   Reporting & Video Inc., The Altmayer Building,

23   100 Bull Street, Suite 200, Savannah, Georgia,

24   on the 8th day of August 2019, commencing at or

25   about the hour of 10:11 a.m.



**COASTAL COURT REPORTING & VIDEO SERVICES**
        **800-791-1100      www.coastalcourt.com**

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                                    2

```
 1   APPEARANCES OF COUNSEL:

 2      FOR THE PLAINTIFF:

 3           TODD C. BANK, ESQUIRE
             Attorney At Law
 4           119-40 Union Turnpike
             Fourth Floor
 5           Kew Gardens, New York 11415
             tbank@toddbanklaw.com
 6           718.520.7125

 7      FOR THE DEFENDANT:

 8           LISA MESSNER, ESQUIRE
             MacMurray & Shuster
 9           6525 West Campus Oval
             Suite 210
10           New Albany, Ohio 43054
             614.939.9955
11           lmessner@mslawgroup.com

12      ALSO PRESENT:
             Matthew Whelan, ListenClear
13           888.895.1162
             mattwhelan@icotdls.com
14

15

16

17                       -  -  -

18

19

20

21

22

23

24

25
```



TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                    11

1       A     No, I don't -- I mean I've looked up so
2    many I mean I don't remember.
3       Q     Okay.  Just one additional instruction
4    I should have mentioned earlier and you're doing
5    fine in terms of the instructions but just keep
6    in mind because of the court reporter just make
7    sure you really know that I'm finished with each
8    question before you answer.  Just -- I mean
9    you're doing fine but I just want to make sure
10   that there's no jumping in because the court
11   reporter will be -- will find it very difficult.
12      A     Sure.
13      Q     I assume.  Are you currently employed
14   by ListenClear?
15      A     Yes.
16      Q     And what is the corporate entity or
17   entities that employ you?
18      A     I mean ICOT and ListenClear.
19      Q     Okay.  When you say ICOT what's the
20   full name?
21      A     Hearing Systems.
22      Q     Okay.  And what about Holding Systems?
23      A     I don't really know much about that
24   stuff.  I mean I just know ListenClear is a
25   d/b/a of I think ICOT Hearing Systems.



TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                    12

1      Q     Do you receive paychecks?

2      A     Yes.

3      Q     And who is the drafter of the

4   paychecks?

5      A     I have no idea.  I've never even

6   looked.  I get it direct deposited.

7      Q     Okay.  How long have you been employed

8   by can I say ListenClear to cover everything?

9      A     Yeah, that's fine.  April of 2016.

10     Q     And have you changed your job position

11  since that time?

12     A     Yeah.

13     Q     How did you start out?

14     A     Just as a sales rep.

15     Q     And how long did you hold that

16  position?

17     A     Two months.

18     Q     And then what happened after that?

19     A     I moved on.  They started a collections

20  department and so I ran that.

21     Q     For how long?

22     A     Until -- from July of '17 all the way

23  until the previous guy left my position, so it'd

24  been about March of '18.

25     Q     And what was the change after March of



TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                              13

1    '18?

2        A    I'm in charge of sales and marketing

3    now.

4        Q    What's your -- do you have an official

5    title?

6        A    Director of Sales and Marketing.

7        Q    You mentioned a company called

8    Prospects, is that correct, earlier?

9        A    Yeah.

10       Q    And is that the same as Prospects DM?

11       A    Correct.

12       Q    And if I refer to it as Prospects is

13   that okay?

14       A    Yeah, that's fine.

15       Q    When did you first hear of Prospects?

16       A    Probably -- I mean first heard of them

17   probably back in 2017 or whatever.

18       Q    How did you hear of them?

19       A    Just I knew they were one of our big

20   vendors we used to transfer calls in.

21       Q    So were they used before you became the

22   Director of Marketing?

23       A    Yes.

24       Q    And were they used before you became

25   employed all together as ListenClear?



TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                           14

1        A     I don't believe so.  I think it was

2    after.

3        Q     Do you know who at ListenClear first

4    dealt with Prospects?

5        A     Blair, Justin.

6        Q     Okay.  And what was his position at the

7    time?

8        A     Director of Marketing.

9        Q     Do you know where he's located today?

10       A     The last I knew -- I'm not -- he's with

11   another company.  I mean I don't know if he's

12   still with them or not.

13       Q     Do you know --

14       A     I don't know.

15       Q     I'm sorry.  Do you know what company

16   that is?

17       A     I don't know their official name but

18   they used to be lift -- some lift chair company.

19       Q     Lift chair?

20       A     Yeah.

21       Q     Like for like a handicap like a lift

22   chair up the stairs?

23       A     Yeah.  No, no, no, I think like lift

24   chairs like a Lazy Boy for --

25       Q     Okay.  And is that located in Savannah?



**COASTAL COURT REPORTING & VIDEO SERVICES**
800-791-1100      www.coastalcourt.com

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                    17

1    don't know if it was Georgia or where it was.

2        Q    But that's not the Charvat case?

3        A    No, I didn't really do -- even hear

4    about that until it was all pretty much said and

5    done.

6        Q    How did it come to your attention this

7    -- the existence of this Performance Media

8    Strategies?

9        A    Just when we were trying to get around

10   how the relationship of Prospects started.

11       Q    When did ListenClear first utilize

12   Prospects services?

13       A    It was before my time.  I wouldn't

14   know.  It'd just be a guess.

15       Q    Can you approximate?

16       A    Sure.

17       Q    And not just a wild guess.

18       A    December of '16, January of '17, right

19   in that area.

20       Q    And is it correct that ListenClear at

21   some point around that time you just mentioned

22   hired Prospects?

23       A    Well it went through Performance Media

24   who then got -- had the relationship with

25   Prospects.



**COASTAL COURT REPORTING & VIDEO SERVICES**
800-791-1100        www.coastalcourt.com

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                    18

1      Q     Okay.  So ListenClear hired Performance
2   Media?
3      A     Correct.
4      Q     And ListenClear did not hire Prospects?
5      A     Correct, at that time.
6      Q     Okay.  Has ListenClear ever hired
7   Prospects directly?
8      A     Well I wouldn't say -- I guess I don't
9   understand your meaning of hired.
10     Q     Okay.  Has Listen -- well let me ask
11  you this, has ListenClear ever made payments to
12  Prospects?
13     A     Yes.
14     Q     And has ListenClear also ever made
15  payments to Performance I call it Performance?
16     A     Yes, yes.
17     Q     Did ListenClear ever have a written
18  agreement or contract with Prospects?
19     A     I don't lawyers.  I don't know back
20  then.  I mean we do now.
21     Q     You have a contract now with Prospects?
22     A     Yeah.
23     Q     Do you know when that contract began?
24     A     I don't know the exact date.
25     Q     Can you approximate even it's the year



TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                    19

1   or the month or something like that?

2      A    I mean they do -- first one I would say

3   March of '18 maybe.  It's a guess.

4      Q    And when did ListenClear first have a

5   contract with Performance?

6      A    Probably around that time, December or

7   January.  December of '17 -- '16, January of

8   '17.

9      Q    Okay.  Now you mentioned that -- if I

10  understood you correctly -- that ListenClear had

11  hired Performance which, in turn, hired or

12  subcontracted with Prospects, is that correct?

13     A    Correct.

14     Q    Can you tell me in whatever detail you

15  recall how that happened in terms of the

16  logistics or?

17     A    I have no -- I wouldn't -- I mean -- I

18  just know that from just knowing about the

19  timelines.  I have no firsthand knowledge of any

20  of those relationships.

21     Q    And why did ListenClear hire

22  Performance?

23     A    We -- I mean we hire -- I tried lots of

24  different marketing companies just, you know,

25  the pay-per-call companies and stuff just to get



TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                          20

1    -- basically transfer calls in.

2        Q     When you say pay-per-call what do you

3    mean by call?

4        A     You pay for a transferred call into our

5    sales center.

6        Q     Okay.  So if a call is not transferred

7    there is no charge?

8        A     Correct.

9        Q     Okay.  Are there any flat-fee rates or

10   monthly rates other is it just for the

11   transfers?

12       A     Just for the transfers.

13       Q     And so was ListenClear paying

14   Performance for transfers at some point anyway?

15       A     Well I mean we were paying Performance

16   Media but, you know, they're probably just a

17   broker, you know.  I don't think they were

18   transferred anything calls.  I think they were

19   subcontracting it.

20       Q     But was ListenClear at some point also

21   paying Prospects for transfers?

22       A     After our -- after that.

23       Q     After what?

24       A     After our relationship with

25   Performance.  I mean I think Blair set it up so



TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                    21

1    he could kind of go around them, you know.

2         Q    So was that -- other than for economic

3    reasons was there any reason why ListenClear as

4    you say went around Performance?

5         A    No.  It was --

6         Q    Do you know about when that occurred?

7         A    Probably three or four months into the

8    contract.

9         Q    So approximately when would this have

10   been?

11        A    March, April of '17.

12        Q    Okay.  Did Prospects charge less per

13   transfer than Performance?

14        A    Yes.

15        Q    How much did Prospects charge per

16   transfer?

17        A    $13.75.

18        Q    And did that number ever change?

19        A    It hasn't, no.

20        Q    How much did Performance charge per

21   transfer --

22        A    I have no idea.  I just know I've

23   always --

24        Q    Just let me finish the question.

25        A    Oh sure.

 **COASTAL COURT REPORTING & VIDEO SERVICES**
800-791-1100        www.coastalcourt.com

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                    23

1    A    Just like a -- it's like when some --
2  you call up a customer service place or anything
3  and it says, you know, press 1 for here, press 2
4  for here, press 3 for here.  It's just a routing
5  system for phones.
6    Q    And when it says pres 1 or press 2 or
7  something like that, is that a recording?
8    A    Yes, I would assume.
9    Q    As opposed to a live person who would
10 just say, hi Joe or something, press 1 or press
11 2?
12   A    Correct.
13   Q    Okay.  And you also mentioned an
14 avatar.  What is that?
15   A    Just a different type of technology
16 along the same lines where it's not a live
17 person.  It sounds more like a live person.
18   Q    But it's a recording nonetheless?
19   A    Correct.
20   Q    Okay.  Did Prospects ever make, as far
21 as you know, live calls to people?
22   A    Well it's a recording in the fact -- it
23 is a recording but there's somebody live at the
24 computer pressing the answers.
25   Q    Okay.  So is it correct that when



**COASTAL COURT REPORTING & VIDEO SERVICES**
800-791-1100      www.coastalcourt.com

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                    24

1    someone -- when anyone would pickup the phone in

2    response to one of the calls we're discussing

3    there would not be a live person to actually

4    talk with as in the way you and I are speaking

5    right now?

6         A    As far as I know, no.

7         Q    What's the basis of your statement that

8    there was a live person pressing buttons or the

9    like with this avatar technology?

10        A    That's how avatar technology works.

11        Q    Who told you that avatar technology was

12   being used?

13        A    Josh.

14        Q    Was that ever put in writing either in

15   a contract or if there was something less formal

16   like an e-mail or something?

17        A    I'm sure it's probably in an e-mail.  I

18   mean he's mentioned it on the phone, so.

19        Q    Did you ever take any measures to

20   determine whether he was telling you the truth

21   when he said that there were live people

22   pressing buttons or something like that?

23        A    No.  I mean that's just how the

24   technology works.  You can pretty much tell when

25   a sales call comes in when you're listening to



TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                              26

1    Landfall Data?

2        A    Yes.

3        Q    And what is that?

4        A    I guess a data company that Josh -- I

5    don't know if he bought data from there or he

6    bought data from somebody who bought data from

7    there but it came up -- I don't remember the

8    case maybe it was when the Hennie case came up

9    but I just heard about it I don't -- that was

10   pretty much the extent of my knowledge.

11       Q    Does ListenClear currently use any

12   third party to engage in either avatar or IVR

13   calls or something similar?

14       A    Yes.

15       Q    And who -- what companies does

16   ListenClear use for that right now?

17       A    As far as the avatar or stuff, I don't

18   know how all these guys do their stuff.  I mean,

19   you know, Prospects DM they use.

20       Q    Currently?

21       A    Yes.  Fluent and Revi Media.

22       Q    And what media?

23       A    Revi Media.

24       Q    How do you spell?

25       A    R-e-v-i M-e-d-i-a.

 **COASTAL COURT REPORTING & VIDEO SERVICES**
800-791-1100      www.coastalcourt.com

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                           36

1      Q      Do you know if anyone asked him from
2    ListenClear?
3      A      I have no clue on that one.
4      Q      Do you know what determined whether a
5    given person was transferred to ListenClear
6    versus some other company?
7      A      No.
8      Q      Was there any -- ever a period of time
9    during which, as far as you know, that transfers
10   were being made exclusively to ListenClear?
11     A      Not that I'm aware of.
12     Q      Do you know how many other companies
13   also were receiving transfers?
14     A      I have no idea.
15     Q      Were there a geographical area from
16   which ListenClear wanted transfers?
17     A      Just the U.S.A.
18     Q      All 50 states?
19     A      Yes.
20     Q      Other than transfers, did Prospects
21   ever provide the name of a lead for Prospects
22   to -- for ListenClear to either call or e-mail
23   or reach out to?
24     A      No.
25     Q      Did you ever hear the recorded material



TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                              53

1      Prospects?

2          A     Correct.

3          Q     But you're not sure if that actually

4      was done?

5          A     Correct.

6          Q     Okay.  Was there any particular number

7      or range of transfers that ListenClear requested

8      per month or any period of time?

9          A     I literally told them just as many

10     calls as you want to send us or can send us

11     we've got the capacity, so just send us the

12     calls.

13         Q     And approximately in an average month

14     how many transfers were received from Prospects?

15         A     When it's ranked up, you know, over

16     time started out probably a few hundred a day

17     back then.

18         Q     And what about now?

19         A     1,400, 1,600.

20         Q     Per day?

21         A     Yeah.

22         Q     Does ListenClear maintain some kind of

23     record of each of those calls?

24         A     Yes.

25         Q     And how long -- how far back do those



TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                          54

1    records go?

2         A    Since our inception, 2015.

3         Q    And when you say our inception what do

4    you mean?

5         A    ListenClear.

6         Q    Okay.  So ListenClear's been a company

7    since 2015?

8         A    I think it was maybe -- 2014 or 2015.

9         Q    Did Prospects ever have any kind of

10   access to ListenClear's computers or computer

11   systems?

12        A    No.

13        Q    Or software?

14        A    No.

15        Q    Now you mentioned earlier that over

16   some period of time Prospects forwarded more

17   calls on a daily basis than previous?

18        A    Correct.

19        Q    And what -- how did that come about?

20        A    As far as I know it was back when Blair

21   was doing it.  I mean it's always been -- ever

22   since I had the relationship with Prospects I

23   just told them, send whatever you can and I'll

24   tell you when the -- basically we're at capacity

25   and not send anymore and we've got so many reps



TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                    55

1    that it's never really reached that point, so.

2         Q    So it wasn't a matter of just specific

3    numbers like, for example, send a hundred a day

4    and then all of a sudden send 150 it was just

5    more, hey, keep them coming?

6         A    Yeah.  And then, you know, he said like

7    anything it takes a little -- takes time to ramp

8    up and stuff and we'll send you whatever we can.

9         Q    Well in order to transfer more calls to

10   ListenClear I'm assuming that it would either

11   mean that Prospects would have to make more

12   calls all together or transfer a greater

13   proportion of the calls they do make to

14   Prospects, is that logical at least?

15        A    Uh-huh.

16        Q    Or a combination thereof?

17        A    Uh-huh.

18        Q    Okay.  Do you know which of those or

19   combination occurred?

20        A    I don't know.  It's weird.  Some months

21   it's really strong on calls.  Some weeks it's --

22   it's just you never know.

23        Q    Do you know if there's any correlation

24   between the number of calls in a given month,

25   number of transfers in a given month that



**COASTAL COURT REPORTING & VIDEO SERVICES**
800-791-1100        www.coastalcourt.com

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                    80

1                C E R T I F I C A T E

2

3    STATE OF GEORGIA:

4    CHATHAM COUNTY:

5

6            I, Kyle J. Saniga, Court Reporter and

7    Notary Public in and for the above county and

8    state, do hereby certify that the foregoing

9    testimony was taken before me at the time and

10   place herein-before set forth; that the witness

11   was by me first duly sworn to testify to the

12   truth, the whole truth, and nothing but the

13   truth, that thereupon the foregoing testimony

14   was later reduced by computer transcription; and

15   I certify that this is a true and correct

16   transcript of my stenographic notes so taken.

17            I further certify that I am not of

18   counsel to either party, nor interested in the

19   event of this cause.

20

21           *Kyle J. Saniga*

22

23            Kyle J. Saniga, CCR

24            Notary Public, B-2038

25            Savannah, Georgia

 **COASTAL COURT REPORTING & VIDEO SERVICES**
                        **800-791-1100      www.coastalcourt.com**

# EXHIBIT "B"

**Plaintiff's Response to Defendants'
First Set of Interrogatories**

**July 26, 2018**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>-against-<br><br>ICOT HOLDINGS, LLC, and ICOT HEARING SYSTEMS, LLC,<br><br>*Defendants.*<br>_____<br>ICOT HEARING SYSTEMS, LLC,<br><br>*Third-Party Plaintiff*,<br><br>-against-<br><br>PROSPECTS DM INC.,<br><br>*Third-Party Defendant.* | Case 1:18-cv-02554-AMD-PK<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' FIRST SET OF <u>INTERROGATORIES</u>** |

Plaintiff, Todd C. Bank ("Bank"), pursuant to Fed. R. Civ. P. 33, hereby responds to the First Set of Interrogatories by Defendants, ICOT Holdings, LLC, and ICOT Hearing Systems, LLC.

## <u>GENERAL STATEMENTS</u>

1.      In responding to these Interrogatories, Plaintiff does not waive any rights to object to any order related to discovery in this action.

2.      Plaintiff continues to search for information responsive to Defendants' Interrogatories, and therefore reserves the right to supplement its responses to each Interrogatory with information as such information becomes available, subject to all applicable objections.

3.      By responding to any Interrogatory, Plaintiff does not concede the materiality of the subjects to which it refers. The Responses made herein are made expressly subject to, and without

1

waiving or intending to waive, any questions or objections as to competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose in any proceeding including trial of this action.

4.      Inadvertent disclosure of any information that is privileged, or is otherwise immune from discovery, shall not constitute a waiver of any privilege or of any other ground for objecting to discovery with respect to such information, or Plaintiff's right to object to the use of any such information during any proceeding in this litigation or otherwise.

5.      Plaintiff incorporates, by reference, every General Objection set forth below into each specific Response whether or not a Response repeats a General Objection for any reason.

## **GENERAL OBJECTIONS**

1.      Plaintiff objects to each instruction, definition, and Interrogatory to the extent that it purports to impose any requirement or obligation greater, or different, than those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.      Plaintiff objects to each instruction, definition, and Interrogatory to the extent that it seeks information that is not relevant to the subject matter of this lawsuit.

3.      Plaintiff objects to each instruction, definition, and Request to the extent that it seeks information that is not calculated to lead to the discovery of admissible evidence.

4.      Plaintiff objects to each instruction, definition, and Request to the extent that it is ambiguous, vague, or otherwise incomprehensible.

5.      Plaintiff objects to each instruction, definition, and Interrogatory to the extent that it is overly broad.

6.      Plaintiff objects to each instruction, definition, and Interrogatory to the extent that it is unduly burdensome.

7.      Plaintiff objects to each instruction, definition, and Interrogatory to the extent that it is argumentative.

8.      Plaintiff objects to each instruction, definition, and Interrogatory to the extent that it seeks information that is unreasonably cumulative or duplicative.

9.      Plaintiff objects to each instruction, definition, and Interrogatory to the extent that it seeks information that is reasonably accessible to the propounding party.

10.      Plaintiff objects to each instruction, definition, and Interrogatory to the extent that it seeks information that, if it exists, is obtainable from some other source that is more convenient, less burdensome, or less expensive.

11.      Plaintiff objects to each instruction, definition, and Interrogatory to the extent that it seeks information that, if it exists, is obtainable from a publicly available source to which access would not be unduly burdensome upon the propounding party.

12.      Plaintiff objects to each instruction, definition, and Interrogatory to the extent that it seeks information that is subject to the attorney-client privilege, which is broadly construed and extends to "factual information" and "legal advice" and includes trial-preparation material and material that reflects the legal reasoning and theories of Plaintiff 's contentions.

13.      Plaintiff objects to each instruction, definition, and Interrogatory to the extent that it seeks confidential, proprietary, or trade-secret information.

14.      Plaintiff objects to each instruction, definition, and Interrogatory to the extent that it seeks documents.

15.      Plaintiff objects to each Interrogatory to the extent that it exceeds the limit of interrogatories, including all discrete sub-parts, as provided by Fed. R. Civ. P. 33(a)(1).

16.      Plaintiff objects to each Interrogatory to the extent that it has already been

propounded.

## RESPONSES AND OBJECTIONS

**Interrogatory No. 1:**

In paragraph 22 of the Amended Complaint, you allege that you received "numerous telephone calls that were placed to the same residential telephone line in or about May and June of 2017 whose Caller ID information was identical to that set forth in [paragraph 21 of] the Complaint." You reference such calls as the "Additional Bank Calls."

For each and every Additional Bank Call,

a.      State the date and time of each Additional Bank Call,

b.      The telephone number assigned to the telephone unit(s) that received each Additional Bank Call (the "Receiving Phone"),

c.      For each Additional Bank Call, state whether the Receiving Phone(s) was a cell/mobile phone, internet or line phone,

d.      The telephone service provider of each such Receiving Phone(s),

e.      Whether you or a third party on your behalf recorded one or more Additional Bank Call(s) and identify each recorded call by date and time,

f.      Identify all lists, logs, records, memoranda, reports, spreadsheets or other documents that record the receipt of the Additional Bank Calls, and

g.      Identify the custodian of such recording(s) and document(s).

**Response to Interrogatory No. 1:**

a.      I do not possess responsive information.

b.      (516) 489-0961

c.      A line phone, assuming that Defendants mean "land line"

d.      Verizon

e.      Assuming that the word "state" was intended to be the first word, the answer is no.

f.      I am unable to make any such identifications.

g.      Assuming that "such recording(s) and document(s)" refer to the recordings and documents that are described in parts "a" through "f" of the Interrogatory, there is no custodian.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth herein are true and correct.

 *s/ Todd C. Bank*
Todd C. Bank
Executed on July 26, 2018

Dated: July 26, 2018

For the Objections:

 *s/ Todd C. Bank*
TODD C. BANK,
 ATTORNEY AT LAW, P.C.
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125
By: Todd C. Bank

*Counsel to Plaintiff*

TO:     FREEMAN MATHIS & GARY, LLP
        1800 John F. Kennedy Blvd.
        Suite 1500
        Philadelphia, PA  19103-7401
        (267) 758-6009

        *Counsel to Defendants*

# EXHIBIT "C"

**Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories**

**August 27, 2018**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ICOT HOLDINGS, LLC and ICOT HEARING SYSTEMS, LLC,<br><br>Defendants.<br>_____<br><br>ICOT HEARING SYSTEMS, LLC,<br><br>Third-Party Plaintiff,<br>v.<br><br>PROSPECTS DM INC.,<br><br>Third-Party Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION FILE<br><br>NO. 1:18-cv-02554-AMD-PK |

**DEFENDANTS ICOT HEARING SYSTEMS, LLC'S RESPONSES AND OBJECTIONS
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

**INTRODUCTION**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant ICOT Hearing Systems, LLC. ("ICOT") serves these Responses and Objections to Plaintiff's First Set of Interrogatories.

**GENERAL OBJECTIONS**

A.    ICOT objects to each request to the extent that it seeks discovery regarding information that is not relevant to the subject matter of the claim or defense of any party or not proportionate to the needs of the case.

B.      ICOT objects to each request to the extent that it is overly broad as to time and/or in scope.

C.      ICOT objects to each request to the extent that it is vague and ambiguous.

D.      ICOT objects to each and every one of the requests on the basis that it seeks to impose any duties or requirements upon it beyond those required by the Federal Rules of Civil Procedure.

E.      ICOT objects to the definitions and instructions sections of the requests to the extent that they are vague and ambiguous or seek information beyond that required by the Federal Rules of Civil Procedure.

F.      ICOT objects to each request to the extent that it is unduly burdensome or designed to be harassing.

G.      ICOT objects to each request to the extent that it seeks discovery regarding information that is neither in the possession nor the control of Defendant, and/or is already in the possession of Plaintiff.

H.      ICOT objects to each request to the extent that it seeks to compel Defendants to produce a document that does not already exist.

I.      ICOT objects to each request to the extent that it calls for a legal conclusion.

J.      ICOT objects to each request to the extent that it seeks discovery regarding information that is protected from discovery by the attorney-client privilege or the work-product doctrine or which constitutes or discloses the mental impressions, conclusions, opinions or legal theories of an attorney in this or any other litigation, or which is protected from disclosure by any other privilege or immunity.

K.      These responses, while based on diligent exploration by ICOT reflect only the current state of its knowledge, understanding, and belief with respect to the matters addressed herein.  These responses are neither intended as, nor shall they in any way be deemed, admissions or representations that further information or documents do not exist.  Without in any way obligating itself to do so, ICOT reserves the right to modify or supplement its responses with such pertinent information as may be subsequently discovered.  Furthermore, these responses are given without prejudice to ICOT's right to use or rely on at any time, including trial, subsequently discovered information or documents, or information or documents omitted from these answers as a result of, among other things, mistake, error, oversight, or inadvertence.

L.      The information supplied in these responses is not based solely on the knowledge of ICOT, but includes knowledge of ICOT, its agents, representatives, and attorneys, unless privileged.

M.      The word usage and sentence structure may be that of the attorneys assisting in the preparation of the responses, and does not purport to be the precise language of the executing party.

N.      ICOT reserves the right to supplement these responses pursuant to the Federal Rules of Civil Procedure.

These General Objections, and each objection herein, apply to each and every response as set forth below and those responses are subject to and in conjunction with these General Objections.

## SPECIFIC OBJECTIONS AND ANSWERS

## INTERROGATORIES

### INTERROGATORY 1.

State whether any Promotional Telephone Calls were placed to Bank's Telephone Number; and, if so, the number of such calls and the dates and/or times of each such Promotional Telephone Call.

### RESPONSE:

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous. Subject to and without waiving this objection, ICOT states that it is not aware of any telephone calls that meet Plaintiff's definition of "Promotional Telephone Call." ICOT understands that Prospects DM Inc. transferred two calls to ICOT on June 30, 2017 and May 30, 2018 after Plaintiff expressed an interest in obtaining hearing aids. During the June 30, 2017 call, Plaintiff identified himself as Joseph Carne and again expressed an interest in obtaining hearing aids. Similarly, during the May 30, 2018 call, Plaintiff identified himself as Joseph Klarne and again expressed an interest in obtaining hearing aids.

### INTERROGATORY 2.

State whether any Promotional Telephone Calls were placed to any Additional Telephone Numbers; and, if so, the number of such calls and the dates and/or times of each such Promotional Telephone Call.

### RESPONSE:

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous. Subject to and without waiving this objection, ICOT states that it is not aware of any telephone calls that meet Plaintiff's definition of "Promotional Telephone Call." ICOT understands that Prospects DM Inc. transferred two calls to ICOT on June 30, 2017 and May 30, 2018 after Plaintiff expressed an interest in obtaining hearing aids. During the June 30, 2017 call,

Plaintiff identified himself as Joseph Carne and again expressed an interest in obtaining hearing aids. Similarly, during the May 30, 2018 call, Plaintiff identified himself as Joseph Klarne and again expressed an interest in obtaining hearing aids.

**INTERROGATORY 3.**

Identify any evidence of consent to place any Promotional Telephone Calls to Bank's Telephone Number.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous. Subject to and without waiving this objection, ICOT states that it is not aware of any telephone calls that meet Plaintiff's definition of "Promotional Telephone Call." ICOT further states that it retained Prospects DM Inc. to perform certain marketing procedures for ICOT and that Prospects DM Inc. represented to ICOT that any calls made would be based on prior written consent obtained from online opt-in data. Additionally, Plaintiff expressed an interest in obtaining hearing aids during its calls with ICOT.

**INTERROGATORY 4.**

Identify any evidence of consent to place any Promotional Telephone Calls to any Additional Telephone Numbers.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous. ICOT further objects to the term "Additional Telephone Numbers," as this term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT states that it is not aware of any telephone calls that meet Plaintiff's definition of "Promotional Telephone Call." ICOT further states that it retained Prospects DM Inc. to perform certain marketing procedures for ICOT and that Prospects DM Inc. represented to ICOT

that any calls made would be based on prior written consent obtained from online opt-in data. ICOT reserves the right to supplement this response as it obtains additional information.

**INTERROGATORY 5.**

Identify any person who placed any Promotional Telephone Calls to Bank's Telephone Number.

**RESPONSE:**

ICOT objects to the definition of "Promotional Telephone Call," as such definition is vague and ambiguous. Subject to and without waiving this objection, ICOT states that it is not aware of any telephone calls that meet Plaintiff's definition of "Promotional Telephone Call." ICOT further states that it retained Prospects DM Inc. to perform certain marketing procedures for ICOT and that Prospects DM Inc. represented to ICOT that any calls made would be based on prior written consent obtained from online opt-in data. ICOT understands that Prospects DM Inc. transferred two calls to ICOT on June 30, 2017 and May 30, 2018 after Plaintiff expressed an interest in obtaining hearing aids.

**INTERROGATORY 6.**

Identify any person who placed any Promotional Telephone Calls to any Additional Telephone Numbers.

**RESPONSE:**

ICOT objects to the definition of "Promotional Telephone Call," as such definition is vague and ambiguous. ICOT further objects to the term "Additional Telephone Numbers," as this term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT states that it is not aware of any telephone calls that meet Plaintiff's definition of "Promotional Telephone Call." ICOT further states that it retained Prospects DM Inc. to perform certain marketing procedures for ICOT and that Prospects DM Inc. represented to ICOT that any calls made would be based on prior written consent obtained from online opt-in data.

## INTERROGATORY 7

Quote, or, if unable to quote, describe, the script of each Promotional Telephone Call that was placed.

## RESPONSE:

ICOT objects to the definition of "Promotional Telephone Call," as such definition is vague and ambiguous. Subject to and without waiving this objection, ICOT states that it is not aware of any telephone calls that meet Plaintiff's definition of "Promotional Telephone Call." ICOT further states that it retained Prospects DM Inc. to perform certain marketing procedures for ICOT and that Prospects DM Inc. would have the script for any calls it made.

## INTERROGATORY 8

State what would occur as a result of each requested keypad or voice response that might occur following the answering of each Promotional Telephone Call that was placed.

## RESPONSE:

ICOT objects to the definition of "Promotional Telephone Call," as such definition is vague and ambiguous. ICOT further objects to the use of the terms "requested keypad or voice response" as such terms are not defined and are otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT states that it is not aware of any telephone calls that meet Plaintiff's definition of "Promotional Telephone Call." ICOT further states that it retained Prospects DM Inc. to perform certain marketing procedures for ICOT and that Prospects DM Inc. would have made any such calls such that this information, if it exists, would be in the possession of Prospects DM.

## INTERROGATORY 9

State the manner by, and any source from which, Bank's Telephone Number was obtained so as to enable the placing of any Promotional Telephone Calls to such number.

**RESPONSE:**

ICOT objects to the definition of "Promotional Telephone Call," as such definition is vague and ambiguous. Subject to and without waiving this objection, ICOT states that it is not aware of any telephone calls that meet Plaintiff's definition of "Promotional Telephone Call." ICOT further states that it retained Prospects DM Inc. to perform certain marketing procedures for ICOT and that Prospects DM Inc. represented to ICOT that any calls made would be based on prior written consent obtained from online opt-in data.

**INTERROGATORY 10**

State whether Bank had maintained a relationship with the Responding Party on or prior to May 31, 2018.

**RESPONSE:**

ICOT objects to the use of the term "relationship" as such term is not defined and is otherwise vague and ambiguous. Subject to and without waiving this objection, ICOT states that, prior to May 31, 2018, Plaintiff had maintained a relationship with ICOT by expressing an interest in ICOT's hearing aids.

**INTERROGATORY 11**

State the purpose for which any Promotional Telephone Call was placed.

**RESPONSE:**

ICOT objects to the definition of "Promotional Telephone Call," as such definition is vague and ambiguous. Subject to and without waiving this objection, ICOT states that it is not aware of any telephone calls that meet Plaintiff's definition of "Promotional Telephone Call." ICOT further states that it retained Prospects DM Inc. to perform certain functions to market ICOT's hearing aids and that Prospects DM Inc. represented to ICOT that any calls made would be based on prior written consent obtained from online opt-in data.

**INTERROGATORY 12**

Describe any relationship between the Responding Party and a Lead Generator.

**RESPONSE:**

ICOT objects to the definition of "Lead Generator," as such definition is vague and ambiguous. ICOT further objects to the use of the term "relationship" as such term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT states that it retained Prospects DM Inc. to perform certain marketing procedures for ICOT and that Prospects DM Inc. represented to ICOT that any calls made would be based on prior written consent obtained from online opt-in data.

**INTERROGATORY 13**

Identify, and describe the substance of, any agreement or contract that relates, in part or in full, to Telemarketing.

**RESPONSE:**

ICOT objects to Interrogatory No. 13 on the basis that it is overly broad and unduly burdensome in that it seeks to have ICOT identify any agreement concerning "Telemarketing," regardless of whether that entity was involved in any call to Plaintiff. ICOT further objects to the definition of "Telemarketing," as such definition is vague and ambiguous, including because it incorporates the term "Promotional Telephone Call," another vague and ambiguous term. Subject to and without waiving these objections, ICOT states that it retained Prospects DM Inc. to perform certain marketing procedures for ICOT and that it has been unable to locate a written agreement with Prospects DM Inc. However, when ICOT started working with Prospects DM Inc., ICOT had an agreement with another vendor, Performance Media Strategies, which subcontracted with Prospects DM Inc.

**INTERROGATORY 14**

Identify, and describe the substance of any record of any invoices relating to Telemarketing.

**RESPONSE:**

ICOT objects to Interrogatory No. 14 on the basis that it is overly broad and unduly burdensome in that it seeks to have ICOT identify and "describe the substance of any record of any invoices relating to Telemarketing," regardless of whether that record related to any call to Plaintiff. ICOT further objects to the definition of "Telemarketing," as such definition is vague and ambiguous, including because it incorporates the term "Promotional Telephone Call," another vague and ambiguous term. ICOT also objects to the extent that it seeks information that is not relevant to any claim or defense in this matter and is not proportional to the needs of the case.

**INTERROGATORY 15**

Identify, and describe the substance of any communications, agreements, or contracts between the Responding Party and a Lead Generator.

**RESPONSE:**

ICOT objects to Interrogatory No. 15 on the basis that it is overly broad and unduly burdensome in that it seeks to have ICOT identify and "describe the substance of any communications, agreements, or contracts between the Responding Party and a Lead Generator, regardless of whether they relate to the subject matter of this case. ICOT objects to the definition of "Lead Generator," as such definition is vague and ambiguous. ICOT also objects to the extent that it seeks information that is not relevant to any claim or defense in this matter and is not proportional to the needs of the case. Subject to and without waiving these objections, ICOT states that it has no written agreement with Prospects DM and, pursuant to Rule 33(d), ICOT will produce relevant communications upon the parties' agreement to search terms and custodians.

## INTERROGATORY 16

Identify, and describe the substance of any record of payments to any Lead Generator.

## RESPONSE:

ICOT objects to Interrogatory No. 16 on the basis that it is overly broad and unduly burdensome in that it seeks to have ICOT identify and "describe the substance of any record of payments to any Lead Generator," regardless of whether it relates to the subject matter of this case. ICOT objects to the definition of "Lead Generator," as such definition is vague and ambiguous. ICOT objects to Interrogatory No. 14 on the basis that it is overly broad and unduly burdensome in that it seeks to have ICOT identify and "describe the substance of any record of any invoices relating to Telemarketing," regardless of whether that record related to any call to Plaintiff. ICOT further objects to the definition of "Telemarketing," as such definition is vague and ambiguous, including because it incorporates the term "Promotional Telephone Call," another vague and ambiguous term. ICOT also objects to the extent that it seeks information that is not relevant to any claim or defense in this matter and is not proportional to the needs of the case. Subject to and without waiving these objections, ICOT states that, pursuant to Rule 33(d), ICOT will produce a summary of payments made to Prospects DM Inc. from which the answer to this interrogatory can be obtained.

## INTERROGATORY 17

Identify any persons that any Lead Generator transferred, or referred to the Responding Party, as an actual or potential customer of the Responding Party.

## RESPONSE:

ICOT objects to Interrogatory No. 16 on the basis that it is overly broad and unduly burdensome in that it seeks to have ICOT identify and "describe the substance of any record of

payments to any Lead Generator," regardless of whether it relates to the subject matter of this case, including calls transferred by Prospects DM Inc. ICOT objects to the definition of "Lead Generator," as such definition is vague and ambiguous. ICOT also objects to the extent that it seeks information that is not relevant to any claim or defense in this matter and is not proportional to the needs of the case. Subject to and without waiving these objections, ICOT states that, pursuant to Rule 33(d), ICOT will produce a spreadsheet containing transfers from Prospects DM Inc. from which the answer to this interrogatory can be obtained.

**INTERROGATORY 18**

State the type of goods and/or services of the Responding Party that Promotional Telephone Calls were seeking to promote, advertise, sell, or provide.

**RESPONSE:**

ICOT objects to the definition of "Promotional Telephone Call," as such definition is vague and ambiguous. Subject to and without waiving this objection, ICOT states that it is not aware of any telephone calls that meet Plaintiff's definition of "Promotional Telephone Call." ICOT further states that it retained Prospects DM Inc. to perform certain marketing procedures for ICOT related to its hearing aids and that Prospects DM Inc. represented to ICOT that any calls made would be based on prior written consent obtained from online opt-in data.

**INTERROGATORY 19**

Identify, and describe the substance of any statement that was taken from any person concerning the allegations set forth in the Complaint, whether such statement was taken by the Responding Party or any other person.

**RESPONSE:**

ICOT objects to the use of the term "statement" to the extent that it seeks information that is protected by the attorney-client privilege, the work-product doctrine, or any other available privilege. Subject to and without waiving this objection, pursuant to Rule 33(d), it will make

available an affidavit submitted by Prospects DM Inc. from which the answer to this interrogatory can be obtained.

**INTERROGATORY 20**

Identify, and describe the substance of any investigation concerning the allegations set forth in the Complaint, whether such investigation was made by the Responding Party or any other person.

**RESPONSE:**

ICOT objects to Interrogatory No. 20 on the basis that it seeks information that is protected by the attorney-client privilege, the work-product doctrine, or any other available privilege. Subject to and without waiving this objection, ICOT states that it investigated the calls alleged in the Complaint. ICOT states that it will supplement this response if it obtains additional information.

**INTERROGATORY 21**

Identify, and describe the substance of any statement that was taken from any person concerning the allegations set forth in any Promotional Telephone Call Action, whether such statement was taken by the Responding Party or any other person.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call Action," which is undefined and is otherwise vague and ambiguous. ICOT further objects to the use of the term "statement" to the extent that it seeks information that is protected by the attorney-client privilege, the work-product doctrine, or any other available privilege. Subject to and without waiving this objection, pursuant to Rule 33(d), it will make available an affidavit submitted by Prospects DM Inc. from which the answer to this interrogatory can be obtained.

**INTERROGATORY 22**

Identify, and describe the substance of any investigation concerning the allegations set forth in any Promotional Telephone Call Action, whether such investigation was made by the Responding Party or any other person.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call Action," which is undefined and is otherwise vague and ambiguous. ICOT further objects to Interrogatory No. 22 on the basis that it seeks information that is protected by the attorney-client privilege, the work-product doctrine, or any other available privilege. Subject to and without waiving this objection, ICOT states that it investigated the calls alleged in the Complaint. ICOT states that it will supplement this response if it obtains additional information.

**INTERROGATORY 23**

Identify, and describe the substance of any documents exchanged in discovery in any Promotional Telephone Call Action.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call Action," which is undefined and is otherwise vague and ambiguous. ICOT also objects to the extent that it seeks information that is not relevant to any claim or defense in this matter and is not proportional to the needs of the case.

**INTERROGATORY 24**

Identify, and describe the substance of any transcripts of a deposition in any Promotional Telephone Call Action.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call Action," which is undefined and is otherwise vague and ambiguous. ICOT also objects to the extent that it seeks

information that is not relevant to any claim or defense in this matter and is not proportional to the needs of the case.  Subject to and without waiving these objections, ICOT states that there are no such deposition transcripts.

**INTERROGATORY 25**

Identify everyone who represented the Responding Party to any Lead Generator.

**RESPONSE:**

ICOT objects to Interrogatory No. 25 on the basis that the phrase "represented the Responding Party to any Lead Generator" is vague and ambiguous.  ICOT cannot determine the information Plaintiff seeks in this interrogatory and requests clarification.

**INTERROGATORY 26**

Identify, and describe the substance of any documents, that pertain to any communications with any person regarding the allegations set forth in the Complaint, including for each such communication, documents that evidence:

    a.    the name and position of the person(s) with whom communication occurred;

    b.    the date on which communications with such person(s) occurred;

    c.    the substance of the communications with such person(s);

    d.    the names and positions of the participants in all such communications; and

    e.    whether there is a written report of the same.

**RESPONSE:**

ICOT objects to Interrogatory No. 26 on the basis that it seeks information that is protected by the attorney-client privilege, the work-product doctrine, or any other available privilege.  Subject to and without waiving this objection, ICOT states that, pursuant to Rule 33(d), it will make available certain communications after the parties agree on relevant search terms and custodians.

**FREEMAN MATHIS & GARY, LLP**

Jill R. Johnson (*Pro Hac Vice*)
Georgia Bar No. 602155
Matthew N. Foree (*Pro Hac Vice*)
Georgia Bar No. 268702
100 Galleria Parkway; Suite 1600
Atlanta, GA 30339-5948
jjohnson@fmglaw.com
mforee@fmglaw.com

Mark C. Stephenson
Federal Bar No. MS2518
1800 John F. Kennedy Blvd.
Suite 1500
Philadelphia, PA 19103-7401
Telephone: (267) 758-6009
mstephenson@fmglaw.com

*Attorneys for Defendants ICOT Hearing
Systems, LLC and ICOT Holdings, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ICOT HOLDINGS, LLC and ICOT HEARING SYSTEMS, LLC, | ) ) ) |
| Defendants. | ) ) ) |
| | ) |
| ICOT HEARING SYSTEMS, LLC, | ) ) |
| Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| PROSPECTS DM INC., | ) ) |
| Third-Party Defendant. | ) ) |

**CIVIL ACTION FILE**

**NO. 1:18-cv-02554-AMD-PK**

## VERIFICATION

Personally appeared before the undersigned officer, duly authorized to administer oaths, Matthew Whelan, who after first being duly sworn, deposes and states that the information supplied in the foregoing Defendant ICOT Hearing Systems, LLC and Defendant ICOT Holdings, LLC's Responses and Objections to Plaintiff's First Set of Interrogatories is true and correct to the best of his knowledge and he is competent to so testify.

This **27** day of August, 2018

_____
Matthew Whelan

Sworn to and subscribed
before me on this **27ᵗʰ**day
of ___August___ 2018.

Notary Public

My Commission Expires:
___07 | 12 | 2021___

Carrie Lynn Lee
Notary Public
Chatham County, Georgia
My Comm. Expires 07/12/2021

# EXHIBIT "D"

**ICOT Hearing Systems, LLC's
Responses and Objections to
Plaintiff's First Set of Interrogatories**

**October 12, 2018**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. 1:18-cv-02554-AMD-PK |
| ICOT HOLDINGS, LLC and ICOT HEARING SYSTEMS, LLC, | ) ) ) | |
| Defendants. | ) ) ) | |
| ICOT HEARING SYSTEMS, LLC, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| PROSPECTS DM INC., | ) ) | |
| Third-Party Defendant. | ) ) | |

**DEFENDANTS ICOT HEARING SYSTEMS, LLC'S RESPONSES AND OBJECTIONS
TO PLAINTIFF'S AMENDED FIRST REQUESTS FOR ADMISSION**

**INTRODUCTION**

Pursuant to Federal Rules of Civil Procedure ("Rules") 36 and 33, Defendant ICOT Hearing Systems, LLC ("ICOT") serves these Responses and Objections to Plaintiff's Amended First Set of Requests for Admission.

**GENERAL OBJECTIONS**

A.   ICOT objects to each request to the extent that it seeks discovery regarding information that is not relevant to the subject matter of the claim or defense of any party or not proportionate to the needs of the case.

B.      ICOT objects to each request to the extent that it is overly broad as to time and/or in scope.

C.      ICOT objects to each request to the extent that it is vague and ambiguous.

D.      ICOT objects to each and every one of the requests on the basis that it seeks to impose any duties or requirements upon it beyond those required by the Federal Rules of Civil Procedure.

E.      ICOT objects to the definitions and instructions sections of the requests to the extent that they are vague and ambiguous or seek information beyond that required by the Federal Rules of Civil Procedure.

F.      ICOT objects to each request to the extent that it is unduly burdensome or designed to be harassing.

G.      ICOT objects to each request to the extent that it seeks discovery regarding information that is neither in the possession nor the control of Defendant, and/or is already in the possession of Plaintiff.

H.      ICOT objects to each request to the extent that it seeks to compel Defendants to produce a document that does not already exist.

I.      ICOT objects to each request to the extent that it calls for a legal conclusion.

J.      ICOT objects to each request to the extent that it seeks discovery regarding information that is protected from discovery by the attorney-client privilege or the work-product doctrine or which constitutes or discloses the mental impressions, conclusions, opinions or legal theories of an attorney in this or any other litigation, or which is protected from disclosure by any other privilege or immunity.

K.     These responses, while based on diligent exploration by ICOT reflect only the current state of its knowledge, understanding, and belief with respect to the matters addressed herein. These responses are neither intended as, nor shall they in any way be deemed, admissions or representations that further information or documents do not exist. Without in any way obligating itself to do so, ICOT reserves the right to modify or supplement its responses with such pertinent information as may be subsequently discovered. Furthermore, these responses are given without prejudice to ICOT's right to use or rely on at any time, including trial, subsequently discovered information or documents, or information or documents omitted from these answers as a result of, among other things, mistake, error, oversight, or inadvertence.

L.     The information supplied in these responses is not based solely on the knowledge of ICOT, but includes knowledge of ICOT, its agents, representatives, and attorneys, unless privileged.

M.     The word usage and sentence structure may be that of the attorneys assisting in the preparation of the responses, and does not purport to be the precise language of the executing party.

N.     ICOT reserves the right to supplement these responses pursuant to the Federal Rules of Civil Procedure.

These General Objections, and each objection herein, apply to each and every response as set forth below and those responses are subject to and in conjunction with these General Objections.

## SPECIFIC OBJECTIONS AND ANSWERS

## REQUESTS FOR ADMISSION

## REQUEST FOR ADMISSION 1.

A Promotional Telephone Call was placed to Bank's Telephone Number on June 30, 2017.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT admits that a call with telephone number (516) 489-0961 was transferred through Prospects DM Inc. to ICOT on June 30, 2017.

**REQUEST FOR ADMISSION 2.**

A Promotional Telephone Call was placed to Bank's Telephone Number on May 30, 2018.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT admits that a call with telephone number (516) 489-0961 was transferred through Prospects DM Inc. to ICOT on May 30, 2018.

**REQUEST FOR ADMISSION 3.**

At least 100 Promotional Calls were placed to Additional Telephone Numbers.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. ICOT further objects to the use of the term "Additional Telephone Numbers" as that term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT cannot truthfully admit or deny Request for Admission 3 because calls were made by third parties, but ICOT admits that Prospects DM's call log produced in the *Charvat* matter identifies more than 100 telephone calls.

**REQUEST FOR ADMISSION 4.**

At least 1,000 Promotional Calls to Additional Telephone Numbers.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. ICOT further objects to the use of the term "Additional Telephone Numbers" as that term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these

objections, ICOT cannot truthfully admit or deny Request for Admission 4 because calls were made by third parties, but ICOT admits that Prospects DM's call log produced in the *Charvat* matter identifies more than 1,000 telephone calls.

**REQUEST FOR ADMISSION 5.**

At least 10,000 Promotional Calls to Additional Telephone Numbers.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. ICOT further objects to the use of the term "Additional Telephone Numbers" as that term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT cannot truthfully admit or deny Request for Admission 5 because calls were made by third parties, but ICOT admits that Prospects DM's call log produced in the *Charvat* matter identifies more than 10,000 telephone calls.

**REQUEST FOR ADMISSION 6.**

At least 100,000 Promotional Calls to Additional Telephone Numbers.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional

Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. ICOT further objects to the use of the term "Additional Telephone Numbers" as that term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT cannot truthfully admit or deny Request for Admission 6 because calls were made by third parties, but ICOT admits that Prospects DM's call log produced in the *Charvat* matter identifies more than 100,000 telephone calls.

**REQUEST FOR ADMISSION 7**

At least 1,000,000 Promotional Calls to Additional Telephone Numbers.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. ICOT further objects to the use of the term "Additional Telephone Numbers" as that term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT cannot truthfully admit or deny Request for Admission 7 because calls were made by third parties, but ICOT admits that Prospects DM's call log produced in the *Charvat* matter identifies more than 1,000,000 telephone calls.

**REQUEST FOR ADMISSION 8**

You have no evidence of consent to place any Promotional Telephone Calls to Bank's Telephone Number.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT denies Request for Admission 8.

**REQUEST FOR ADMISSION 9**

You have no evidence of consent to place any Promotional Telephone Calls to any Additional Telephone Numbers.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. ICOT further objects to the use of the term "Additional Telephone Numbers" as that term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT denies Request for Admission 9.

**REQUEST FOR ADMISSION 10**

The source from which, Bank's Telephone Number was obtained so as to enable the placing of any Promotional Telephone Calls to such number did not identify that number as a business number.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT cannot truthfully admit or deny Request for Admission 10, as it is not currently aware of the source from which "Bank's Telephone Number" was obtained, as it was obtained by a third-party.

**REQUEST FOR ADMISSION 11**

The source from which, Bank's Telephone Number was obtained so as to enable the placing of any Promotional Telephone Calls to such number identified that number as a residential number.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT cannot truthfully admit or deny

Request for Admission 11, as it is not currently aware of the source from which "Bank's Telephone Number" was obtained, as it was obtained by a third-party.

## REQUEST FOR ADMISSION 12

The source from which, Bank's Telephone Number was obtained so as to enable the placing of any Promotional Telephone Calls to such number did not identify that number as a residential number.

## RESPONSE:

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT cannot truthfully admit or deny Request for Admission 12, as it is not currently aware of the source from which "Bank's Telephone Number" was obtained, as it was obtained by a third-party.

## REQUEST FOR ADMISSION 13

The source from which, Bank's Telephone Number was obtained so as to enable the placing of any Promotional Telephone Calls to such number identified that number as a business number.

## RESPONSE:

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to

Plaintiff on June 30, 2017 and May 30, 2018.  As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff.  Subject to and without waiving these objections, ICOT cannot truthfully admit or deny Request for Admission 13, as it is not currently aware of the source from which "Bank's Telephone Number" was obtained, as it was obtained by a third-party.

**REQUEST FOR ADMISSION 14**

You have no evidence showing that Bank had maintained a relationship with the Responding Party on or prior to May 31, 2018.

**RESPONSE:**

ICOT objects to the use of the term "relationship" as that term is not defined and is otherwise vague and ambiguous.  Subject to and without waiving these objections, ICOT denies Request for Admission 14.

**REQUEST FOR ADMISSION 15**

You have no evidence showing that any person associated with any Additional Telephone Numbers to which any Promotional Telephone Calls were placed had maintained a relationship with the Responding Party prior to the placement of such calls.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties.  ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018.  As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff.  ICOT further objects to the use of the term "Additional Telephone Numbers" as that term is not defined and is otherwise vague and ambiguous.  ICOT further objects to the use of the

term "relationship" as that term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT denies Request for Admission 15.

**REQUEST FOR ADMISSION 16**

A Promotional Telephone Call was placed to Bank in order to obtain a customer or potential customer of the Responding Party.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT cannot truthfully admit or deny Request for Admission 16, as it is not currently aware of the identity of the caller or the purpose of the calls, but ICOT admits that the calls with Plaintiff on June 30, 2017 and May 30, 2018 were transferred to ICOT through Prospects DM Inc. in an attempt to obtain a customer or potential customer for ICOT.

**REQUEST FOR ADMISSION 17**

Any Promotional Telephone Calls that were placed to any Additional Telephone Numbers were placed in order to obtain a customer or potential customer of the Responding Party.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional

Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. ICOT further objects to the use of the term "Additional Telephone Numbers" as that term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT cannot truthfully admit or deny Request for Admission 17, as it is not currently aware of the identity of the caller or the purpose of the calls, but ICOT admits that some calls were transferred to ICOT through Prospects DM Inc. in an attempt to obtain a customer or potential customer for ICOT.

**REQUEST FOR ADMISSION 18**

A Promotional Telephone Call was placed to Bank as a result of a written agreement with a Lead Generator.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving this objection, ICOT denies Request for Admission 18.

**REQUEST FOR ADMISSION 19**

Promotional Telephone Calls were placed to Additional Telephone Numbers as a result of a written agreement with a Lead Generator.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. ICOT further objects to the use of the term "Additional Telephone Numbers" as that term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT denies Request for Admission 19.

**REQUEST FOR ADMISSION 20**

A Promotional Telephone Call was placed to Bank as a result of one or more written agreements with two Lead Generators.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT denies Request for Admission 20.

**REQUEST FOR ADMISSION 21**

Promotional Telephone Calls were placed to Additional Telephone Numbers as a result of one or more written agreements with two Lead Generators.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. ICOT further objects to the use of the term "Additional Telephone Numbers" as that term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT denies Request for Admission 21.

**REQUEST FOR ADMISSION 22**

Any Bank Promotional Calls were placed in accordance with an agreement or contract.

**RESPONSE:**

ICOT objects to the use of the term "Bank Promotional Telephone Call" as that term is not defined and is otherwise vague and ambiguous. ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls

made as those terms are defined by Plaintiff.  Subject to and without waiving these objections, ICOT denies Request for Admission 22.

**REQUEST FOR ADMISSION 23**

Any Additional Promotional Calls were placed in accordance with an agreement or contract.

**RESPONSE:**

ICOT objects to the use of the term "Additional Promotional Calls" as that term is not defined and is otherwise vague and ambiguous.  Subject to and without waiving these objections, ICOT denies Request for Admission 23.

**REQUEST FOR ADMISSION 24**

On August 28, 2018, Sandra Toomer called Bank's Telephone Number.

**RESPONSE:**

Admitted.

**FREEMAN MATHIS & GARY, LLP**

Jill R. Johnson (*Pro Hac Vice*)
Georgia Bar No. 602155
Matthew N. Foree (*Pro Hac Vice*)
Georgia Bar No. 268702
100 Galleria Parkway; Suite 1600
Atlanta, GA 30339-5948
jjohnson@fmglaw.com
mforee@fmglaw.com

Mark C. Stephenson
Federal Bar No. MS2518
1800 John F. Kennedy Blvd.
Suite 1500
Philadelphia, PA 19103-7401
Telephone: (267) 758-6009
mstephenson@fmglaw.com

*Attorneys for Defendants ICOT Hearing Systems, LLC and ICOT Holdings, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically served the within and foregoing **Defendant ICOT Hearing Systems, LLC's Responses and Objections to Plaintiff's Amended First Set of Requests for Admission** via electronic mail to the following counsel of record:

>Todd C. Bank
>Todd C. Bank Attorney at Law, P.C.
>119-40 Union Turnpike
>Fourth Floor
>Kew Gardens, New York 11415

This _12_ day of October, 2018.

>**FREEMAN MATHIS & GARY, LLP**
>
>Matthew N. Foree
>Georgia Bar No. 268702

# EXHIBIT "E"

**ICOT Hearing's Responses and Objections to Plaintiff's Amended First Set of Interrogatories**

**October 12, 2018**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

TODD C. BANK, Individually and on )
Behalf of All Others Similarly Situated, )
                      )
                 Plaintiff, )    **CIVIL ACTION FILE**
                      )
v.                       )    **NO. 1:18-cv-02554-AMD-PK**
                      )
ICOT HOLDINGS, LLC and ICOT )
HEARING SYSTEMS, LLC, )
                      )
              Defendants. )
                      )
_____ )

ICOT HEARING SYSTEMS, LLC, )
                      )
         Third-Party Plaintiff, )
v.                       )
                      )
PROSPECTS DM, )
                      )
        Third-Party Defendant. )
_____ )

**DEFENDANTS ICOT HEARING SYSTEMS, LLC'S RESPONSES AND OBJECTIONS**
**TO PLAINTIFF'S AMENDED FIRST SET OF INTERROGATORIES**

**INTRODUCTION**

      Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant ICOT Hearing Systems, LLC. ("ICOT") serves these Responses and Objections to Plaintiff's Amended First Set of Interrogatories.

**GENERAL OBJECTIONS**

      A.     ICOT objects to each request to the extent that it seeks discovery regarding information that is not relevant to the subject matter of the claim or defense of any party or not proportionate to the needs of the case.

B.      ICOT objects to each request to the extent that it is overly broad as to time and/or in scope.

C.      ICOT objects to each request to the extent that it is vague and ambiguous.

D.      ICOT objects to each and every one of the requests on the basis that it seeks to impose any duties or requirements upon it beyond those required by the Federal Rules of Civil Procedure.

E.      ICOT objects to the definitions and instructions sections of the requests to the extent that they are vague and ambiguous or seek information beyond that required by the Federal Rules of Civil Procedure.

F.      ICOT objects to each request to the extent that it is unduly burdensome or designed to be harassing.

G.      ICOT objects to each request to the extent that it seeks discovery regarding information that is neither in the possession nor the control of Defendant, and/or is already in the possession of Plaintiff.

H.      ICOT objects to each request to the extent that it seeks to compel Defendants to produce a document that does not already exist.

I.      ICOT objects to each request to the extent that it calls for a legal conclusion.

J.      ICOT objects to each request to the extent that it seeks discovery regarding information that is protected from discovery by the attorney-client privilege or the work-product doctrine or which constitutes or discloses the mental impressions, conclusions, opinions or legal theories of an attorney in this or any other litigation, or which is protected from disclosure by any other privilege or immunity.

K.      These responses, while based on diligent exploration by ICOT reflect only the current state of its knowledge, understanding, and belief with respect to the matters addressed herein.  These responses are neither intended as, nor shall they in any way be deemed, admissions or representations that further information or documents do not exist.  Without in any way obligating itself to do so, ICOT reserves the right to modify or supplement its responses with such pertinent information as may be subsequently discovered.  Furthermore, these responses are given without prejudice to ICOT's right to use or rely on at any time, including trial, subsequently discovered information or documents, or information or documents omitted from these answers as a result of, among other things, mistake, error, oversight, or inadvertence.

L.      The information supplied in these responses is not based solely on the knowledge of ICOT, but includes knowledge of ICOT, its agents, representatives, and attorneys, unless privileged.

M.      The word usage and sentence structure may be that of the attorneys assisting in the preparation of the responses, and does not purport to be the precise language of the executing party.

N.      ICOT reserves the right to supplement these responses pursuant to the Federal Rules of Civil Procedure.

These General Objections, and each objection herein, apply to each and every response as set forth below and those responses are subject to and in conjunction with these General Objections.

## SPECIFIC OBJECTIONS AND ANSWERS

### INTERROGATORIES

**INTERROGATORY 1.**

State whether any Promotional Telephone Calls were placed to Bank's Telephone Number; and, if so, the number of such calls and the dates and/or times of each such Promotional Telephone Call.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT retained Prospects DM Inc. ("Prospects DM") to conduct certain marketing procedures for ICOT. Prospects DM assured ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call. ICOT understands that two calls were transferred through Prospects DM to ICOT on June 30, 2017 and May 30, 2018 after Plaintiff expressed an interest in obtaining hearing aids. During the June 30, 2017 call, Plaintiff identified himself as Joseph Carne and again expressed an interest in obtaining hearing aids. Similarly, during the May 30, 2018 call, Plaintiff identified himself as Joseph Klarne and again expressed an interest in obtaining hearing aids.

**INTERROGATORY 2.**

State whether any Promotional Telephone Calls were placed to any Additional Telephone Numbers; and, if so, the number of such calls and the dates and/or times of each such Promotional Telephone Call.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call. ICOT understands that two calls were transferred through Prospects DM to ICOT on June 30, 2017 and May 30, 2018 after Plaintiff expressed an interest in obtaining hearing aids. During the June 30, 2017 call, Plaintiff identified himself as Joseph Carne and again expressed an interest in obtaining hearing aids. Similarly, during the May 30, 2018 call, Plaintiff identified himself as Joseph Klarne and again expressed an interest in obtaining hearing aids.

**INTERROGATORY 3.**

Identify any evidence of consent to place any Promotional Telephone Calls to Bank's Telephone Number.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention"

of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff.  Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call.  Additionally, Plaintiff expressed an interest in obtaining hearing aids during the calls at issue.

**INTERROGATORY 4.**

Identify any evidence of consent to place any Promotional Telephone Calls to any Additional Telephone Numbers.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties.  ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018.  As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff.  ICOT further objects to the term "Additional Telephone Numbers," as this term is not defined and is otherwise vague and ambiguous.  Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call.  ICOT further identifies the consent data provided by Prospects DM in the *Philip Charvat v. ICOT Hearing Systems, LLC, d/b/a ListenClear, ICOT Holdings, LLC,  Waverly Consulting Group, Inc., and Allan Perlow* matter in the U.S. District Court for the Southern District of Georgia, Case No. CV417-245 (the "Charvat matter").

**INTERROGATORY 5.**

Identify any person who placed any Promotional Telephone Calls to Bank's Telephone Number.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. ICOT further objects to the term "Additional Telephone Numbers," as this term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call. ICOT understands that two calls were transferred through Prospects DM to ICOT on June 30, 2017 and May 30, 2018 after Plaintiff expressed an interest in obtaining hearing aids. During the June 30, 2017 call, Plaintiff identified himself as Joseph Carne and again expressed an interest in obtaining hearing aids. Similarly, during the May 30, 2018 call, Plaintiff identified himself as Joseph Klarne and again expressed an interest in obtaining hearing aids.

**INTERROGATORY 6.**

Identify any person who placed any Promotional Telephone Calls to any Additional Telephone Numbers.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties.  ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018.  As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff.  ICOT further objects to the term "Additional Telephone Numbers," as this term is not defined and is otherwise vague and ambiguous.  Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call.  Based on information and belief, ICOT understands that Prospects DM made telephone calls.  Additionally, in the *Charvat* matter, ICOT learned that Prospects DM contracted with Waverly Consulting Group, Inc. to make certain calls.

**INTERROGATORY 7**

Quote, or, if unable to quote, describe, the script of each Promotional Telephone Call that was placed.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties.  ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018.  As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by

Plaintiff. Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call. ICOT further states that Prospects DM would have the script for any calls it made.

**INTERROGATORY 8**

State what would occur as a result of each requested keypad or voice response that might occur following the answering of each Promotional Telephone Call that was placed.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call. This information, if it exists, would be in the possession of Prospects DM.

**INTERROGATORY 9**

State the manner by, and any source from which, Bank's Telephone Number was obtained so as to enable the placing of any Promotional Telephone Calls to such number.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it

is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call. ICOT states that, at this time, it is unaware of the manner or source from which Plaintiff's telephone number was obtained.

**INTERROGATORY 10**

State whether Bank had maintained a relationship with the Responding Party on or prior to May 31, 2018.

**RESPONSE:**

ICOT objects to the use of the term "relationship" as such term is not defined and is otherwise vague and ambiguous. Subject to and without waiving this objection, ICOT states that, prior to May 31, 2018, Plaintiff had maintained a relationship with ICOT by expressing an interest in ICOT's hearing aids.

**INTERROGATORY 11**

State the purpose for which any Promotional Telephone Call was placed.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to

Plaintiff on June 30, 2017 and May 30, 2018.  As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff.  Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT's hearing aids and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call.

**INTERROGATORY 12**

Describe any relationship between the Responding Party and a Lead Generator.

**RESPONSE:**

ICOT objects to the definition of "Lead Generator," as such definition is vague and ambiguous.  The term "Lead Generator" incorporates the term "Promotional Telephone Call," which has a definition that is vague and ambiguous, because it includes telephone calls made by unknown parties.  ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018.  As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff.  ICOT further objects to the use of the term "relationship" as such term is not defined and is otherwise vague and ambiguous.  Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call.

**INTERROGATORY 13**

Identify, and describe the substance of, any agreement or contract that relates, in part or in full, to Telemarketing.

**RESPONSE:**

ICOT objects to Interrogatory No. 13 on the basis that it is overly broad and unduly burdensome in that it seeks to have ICOT identify any agreement concerning "Telemarketing," regardless of whether that entity was involved in any call to Plaintiff. ICOT further objects to the definition of "Telemarketing," which incorporates the term "Promotional Telephone Call," which has a definition that is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. ICOT further objects to the use of the term "relationship" as such term is not defined and is otherwise vague and ambiguous. Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call. ICOT has been unable to locate a written agreement with Prospects DM. However, when ICOT started working with Prospects DM, ICOT had an agreement with another vendor, Performance Media Strategies, which subcontracted with Prospects DM. Pursuant to Rule 33(d), ICOT will produce the agreement with Performance Media Strategies and relevant communications upon the parties' agreement to search terms and custodians, from which the answer to this interrogatory can be obtained.

**INTERROGATORY 14**

Identify, and describe the substance of any record of any invoices relating to Telemarketing.

**RESPONSE:**

ICOT objects to Interrogatory No. 14 on the basis that it is overly broad and unduly burdensome in that it seeks to have ICOT identify and "describe the substance of any record of any invoices relating to Telemarketing," regardless of whether that record relates to any call to Plaintiff or the subject matter of this case. ICOT also objects to the extent that it seeks information that is not relevant to any claim or defense in this matter and is not proportional to the needs of the case. ICOT further objects to the definition of "Telemarketing," as such definition is vague and ambiguous, including because it incorporates the term "Promotional Telephone Call," which has a definition that is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call. ICOT states that, pursuant to Rule 33(d), ICOT will produce a summary of payments made to Prospects DM from which the answer to this interrogatory can be obtained.

**INTERROGATORY 15**

Identify, and describe the substance of any communications, agreements, or contracts between the Responding Party and a Lead Generator.

**RESPONSE:**

ICOT objects to Interrogatory No. 15 on the basis that it is overly broad and unduly burdensome in that it seeks to have ICOT identify and "describe the substance of any communications, agreements, or contracts between the Responding Party and a Lead Generator, regardless of whether they relate to the subject matter of this case. ICOT further objects to the definition of "Lead Generator," as such definition is vague and ambiguous, including because it incorporates the term "Promotional Telephone Call," which has a definition that is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call. ICOT states that it has been unable to locate a written agreement with Prospects DM. However, when ICOT started working with Prospects DM, ICOT had an agreement with another vendor, Performance Media Strategies, which subcontracted with Prospects DM. Pursuant to Rule 33(d), ICOT will produce the agreement with Performance Media Strategies and relevant communications upon the parties' agreement to search terms and custodians, from which the answer to this interrogatory can be obtained.

**INTERROGATORY 16**

Identify, and describe the substance of any record of payments to any Lead Generator.

**RESPONSE:**

ICOT objects to Interrogatory No. 16 on the basis that it is overly broad and unduly burdensome in that it seeks to have ICOT identify and "describe the substance of any record of payments to any Lead Generator," regardless of whether it relates to the subject matter of this case. ICOT also objects to the extent that it seeks information that is not relevant to any claim or defense in this matter and is not proportional to the needs of the case. ICOT further objects to the definition of "Lead Generator," as such definition is vague and ambiguous, including because it incorporates the term "Promotional Telephone Call," which has a definition that is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call. ICOT states that, pursuant to Rule 33(d), ICOT will produce a summary of payments made to Prospects DM from which the answer to this interrogatory can be obtained.

**INTERROGATORY 17**

Identify any persons that any Lead Generator transferred, or referred to the Responding Party, as an actual or potential customer of the Responding Party.

**RESPONSE:**

ICOT objects to Interrogatory No. 17 on the basis that it is overly broad and unduly burdensome in that it seeks to have ICOT identify and "describe the substance of any record of

payments to any Lead Generator," regardless of whether it relates to the subject matter of this case, including calls transferred by Prospects DM.  ICOT further objects to the definition of "Lead Generator," as such definition is vague and ambiguous, including because it incorporates the term "Promotional Telephone Call," which has a definition that is vague and ambiguous, because it includes telephone calls made by unknown parties.  ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018.  As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff.  Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call.  ICOT states that, pursuant to Rule 33(d), ICOT will produce a spreadsheet containing transfers from Prospects DM from which the answer to this interrogatory can be obtained.

**INTERROGATORY 18**

State the type of goods and/or services of the Responding Party that Promotional Telephone Calls were seeking to promote, advertise, sell, or provide.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call," as its definition is vague and ambiguous, because it includes telephone calls made by unknown parties.  ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018.  As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by

Plaintiff.   Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT regarding its hearing aids and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call.

## INTERROGATORY 19

Identify, and describe the substance of any statement that was taken from any person concerning the allegations set forth in the Complaint, whether such statement was taken by the Responding Party or any other person.

## RESPONSE:

ICOT objects to the use of the term "statement" to the extent that it seeks information that is protected by the attorney-client privilege, the work-product doctrine, or any other available privilege.   Subject to and without waiving this objection, pursuant to Rule 33(d), it will make available an affidavit submitted by Prospects DM in the *Charvat* matter from which the answer to this interrogatory can be obtained.

## INTERROGATORY 20

Identify, and describe the substance of any investigation concerning the allegations set forth in the Complaint, whether such investigation was made by the Responding Party or any other person.

## RESPONSE:

ICOT objects to Interrogatory No. 20 on the basis that it seeks information that is protected by the attorney-client privilege, the work-product doctrine, or any other available privilege. Subject to and without waiving this objection, ICOT states that it investigated the calls alleged in the Complaint.

## INTERROGATORY 21

Identify, and describe the substance of any statement that was taken from any person concerning the allegations set forth in any Promotional Telephone Call Action, whether such statement was taken by the Responding Party or any other person.

## RESPONSE:

ICOT objects to the use of the term "Promotional Telephone Call Action," which is vague and, including because it incorporates the term "Promotional Telephone Call," which has a definition that is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. ICOT further objects to the use of the term "statement" to the extent that it seeks information that is protected by the attorney-client privilege, the work-product doctrine, or any other available privilege. Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call. Pursuant to Rule 33(d), ICOT will make available an affidavit submitted by Prospects DM in the *Charvat* matter, from which the answer to this interrogatory can be obtained.

## INTERROGATORY 22

Identify, and describe the substance of any investigation concerning the allegations set forth in any Promotional Telephone Call Action, whether such investigation was made by the Responding Party or any other person.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call Action," which is vague and ambiguous, including because it incorporates the term "Promotional Telephone Call," which has a definition that is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. ICOT further objects to the use of the term "statement" to the extent that it seeks information that is protected by the attorney-client privilege, the work-product doctrine, or any other available privilege. ICOT further objects to Interrogatory No. 22 on the basis that it seeks information that is protected by the attorney-client privilege, the work-product doctrine, or any other available privilege. Subject to and without waiving these objections, ICOT retained Prospects DM to conduct certain marketing procedures for ICOT and that Prospects DM represented to ICOT that it only calls based on TCPA compliant opt-in data where the consumer has provided consent to call. ICOT states that it investigated the calls alleged in the Complaint. ICOT states that it will supplement this response if it obtains additional information.

**INTERROGATORY 23**

Identify, and describe the substance of any documents exchanged in discovery in any Promotional Telephone Call Action.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call Action," which is vague and, including because it incorporates the term "Promotional Telephone Call," which has a definition that is vague and ambiguous, because it includes telephone calls made by unknown

parties.  ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018.  As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff.  ICOT also objects to the extent that it seeks information that is not relevant to any claim or defense in this matter and is not proportional to the needs of the case.  Subject to and without waiving these objections, pursuant to Rule 33(d), ICOT will produce certain documents exchanged in the *Charvat* matter that are relevant to this case from which the answer to this interrogatory can be obtained.

**INTERROGATORY 24**

Identify, and describe the substance of any transcripts of a deposition in any Promotional Telephone Call Action.

**RESPONSE:**

ICOT objects to the use of the term "Promotional Telephone Call Action," which is vague and, including because it incorporates the term "Promotional Telephone Call," which has a definition that is vague and ambiguous, because it includes telephone calls made by unknown parties.  ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018.  As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff.  ICOT also objects to the extent that it seeks information that is not relevant to any claim or defense in this matter and is not proportional to the needs of the case.  Subject to and without waiving these objections, ICOT states that there are no such deposition transcripts.

**INTERROGATORY 25**

Identify each individual who, while acting in the capacity of an employee or other type of hiree of the Responding Party, communicated, or other dealt, with any Lead Generator.

**RESPONSE:**

ICOT objects to Interrogatory No. 15 on the basis that it is overly broad and unduly burdensome in that it seeks to have ICOT identify and "describe the substance of any communications, agreements, or contracts between the Responding Party and a Lead Generator, regardless of whether they relate to the subject matter of this case. ICOT further objects to the definition of "Lead Generator," as such definition is vague and ambiguous, including because it incorporates the term "Promotional Telephone Call," which has a definition that is vague and ambiguous, because it includes telephone calls made by unknown parties. ICOT states that it is not aware of any telephone calls to Plaintiff that meet Plaintiff's definition of "Promotional Telephone Call," because ICOT is unaware of the identity of the caller that made the calls to Plaintiff on June 30, 2017 and May 30, 2018. As such, ICOT does not know what the "intention" of the caller was, nor does it know the "purpose" of the calls made as those terms are defined by Plaintiff. Subject to and without waiving these objections, ICOT identifies its former Marketing Director, Blair Jesswein, who was the primary point of contact with Prospects DM.

**INTERROGATORY 26**

Identify, and describe the substance of any documents, that pertain to any communications with any person regarding the allegations set forth in the Complaint, including for each such communication, documents that evidence:

      a.      the name and position of the person(s) with whom communication occurred;

      b.      the date on which communications with such person(s) occurred;

      c.      the substance of the communications with such person(s);

d.      the names and positions of the participants in all such communications; and

e.      whether there is a written report of the same.

**RESPONSE:**

ICOT objects to Interrogatory No. 26 on the basis that it seeks information that is protected by the attorney-client privilege, the work-product doctrine, or any other available privilege. Subject to and without waiving this objection, ICOT states that, pursuant to Rule 33(d), it will make available certain communications after the parties agree on relevant search terms and custodians.

**FREEMAN MATHIS & GARY, LLP**

Jill R. Johnson (*Pro Hac Vice*)
Georgia Bar No. 602155
Matthew N. Foree (*Pro Hac Vice*)
Georgia Bar No. 268702
100 Galleria Parkway; Suite 1600
Atlanta, GA 30339-5948
jjohnson@fmglaw.com
mforee@fmglaw.com

Mark C. Stephenson
Federal Bar No. MS2518
1800 John F. Kennedy Blvd.
Suite 1500
Philadelphia, PA 19103-7401
Telephone: (267) 758-6009
mstephenson@fmglaw.com

*Attorneys for Defendants ICOT Hearing Systems, LLC and ICOT Holdings, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically served the within and foregoing **Defendant**

**ICOT Hearing Systems, LLC's Responses and Objections to Plaintiff's Amended First Set of**

**Interrogatories** via electronic mail to the following counsel of record:

> Todd C. Bank
> Todd C. Bank Attorney at Law, P.C.
> 119-40 Union Turnpike
> Fourth Floor
> Kew Gardens, New York 11415

This 12th day of October, 2018.

**FREEMAN MATHIS & GARY, LLP**

Matthew N. Foree
Georgia Bar No. 268702

# EXHIBIT "F"

**Subpoena for Documents upon
Prospects DM, Inc.**

**November 20, 2020**

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the

TODD C. BANK, Individually and on
Behalf of All Others Similarly Situated

*Plaintiff*

v.

ICOT HOLDINGS, LLC, and
ICOT HEARING SYSTEMS, LLC

*Defendant*

)
)
)
)
)
)
)

Civil Action No. 1:18-cv-02554-AMD-PK

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Prospects DM, LLC
603 Seagaze Dr. # 817
Oceanside CA  92054

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **See Exhibit "A"**

| Place: 119-40 Union Turnpike, Fourth Floor<br>Kew Gardens, New York 11415 | Date and Time:<br>December 14, 2020, at 10:00 a.m. |
| --- | --- |

❐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
| --- | --- |
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  November 30, 2020

CLERK OF COURT

s/ *Ryan O'Neil-Berven* (Deputy Clerk)                          OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Todd C. Bank
, who issues or requests this subpoena, are:

Todd C. Bank, 119-40 Union Tpke, 4th FL, Kew Gardens, NY 11415; (718) 520-7125; tbank@toddbanklaw.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT "A"

## INSTRUCTIONS

a.      In the event that any document called for by a Request is withheld on the basis of a claim of privilege, identify that document by stating its author(s), addressee(s), indicated or blind-copy recipient(s), date, subject matter, number of pages, attachments or appendices, all persons to whom the documents was distributed, shown or explained, present custodian, and the nature of the claimed privilege.

b.      If any document requested was, but no longer is, in your possession or subject to your control, state: (a) the date of its disposition; (b) the manner of its disposition (*e.g.*, lost, destroyed, or transferred to any third party); and (c) an explanation of the circumstances surrounding the disposition of the document.

c.      Any Requests for documents pertaining to dates may be responded with documents showing a range of dates if more precise dates are not available.

d.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

e.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

f.      The use of the singular form of any word includes the plural and vice versa.

g.      Unless otherwise indicated, each Request shall be answered with respect to the Relevant Period.

## DEFINITIONS

a.      "Prospects DM" means: (a) (1) Prospects DM, LLC, which is or was a California corporation whose principal place of business is, or was, in Oceanside, California, and, (2) any predecessor or successor thereof; (b) (1) any corporate parent, corporate subsidiary, or division of Prospects DM, and (2) predecessor or successor thereof; and (c) any agents and subcontractors of Prospects DM acting as a result of a business relationship to which ICOT is, or was, a party.

b.      "ICOT" means: (a) ICOT Hearing Systems, LLC d/b/a ListenClear ("ListenClear"), and any

predecessor or successor thereof; and (b) any corporate parent, corporate subsidiary, or division of ListenClear, or predecessor or successor thereof.

     c.       The terms "you" and "Responding Party" means Prospects DM.

     d.       The term "any" means "each" and "all."

     e.       The term "Relevant Period" means the period from December 31, 2017, to the present.

     f.       The term "document" means any written or graphic material, whether in a hard format such as paper of an electronically format stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations. A draft or non-identical copy is a separate document.

     g.       The term "indicate" means to directly or indirectly do any of the following: show, reflect, refer to, or describe.

     h.       The term "identify," with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

     i.       The term "identify," with respect to documents, means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

     j.       The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

     k.       The term "concerning" means relating to, referring to, describing, evidencing or constituting.

l.      The term "telephone" means a device that coverts sound and electrical waves into audible relays.

m.     The term "receiving number" means a ten-digit number consisting of a three-digit Numbering Plan Area (NPA) code, commonly called an area code, followed by a seven-digit local number.

n.     The term "telephone call" means the transmission of any communication that is: (i) connected, directly or indirectly, to a public switched-telephone network (PSTN), and/or a voice-over-internet-protocol (VOIP) network, and/or any other network, and (ii) transmitted to a receiving number regardless of how the transmission is enabled and regardless of how many, if any, of the numbers of the receiving number are utilized in the process that enables the transmission.

o.     The term "contract" means: (i) any agreement, including any attachments or appendices thereto.

p.     The term "telephone" means a device that coverts sound and electrical waves into audible relays.

q.     The term "telephone call" means the transmission of any communication that is: (i) connected, directly or indirectly, to a public switched-telephone network (PSTN), and/or a voice-over-internet-protocol (VOIP) network, and/or any other network, and (ii) transmitted to a receiving number regardless of how the transmission is enabled and regardless of how many, if any, of the numbers of the receiving number are utilized in the process that enables the transmission.

r.     The term "telephone call" does not include a telephone call to a cellular telephone.

s.     The term "Caller Identification" means information, whether accurate or not, that: (i) is displayed on either a telephone or other equipment that is connected to a telephone line to which a telephone call is placed, and (ii) pertains to the origin of the call, and typically includes (1) the telephone number of the caller's telephone line, and/or (2) the name that is associated with caller's telephone line, and/or (3) the name of the city and/or state associated with the caller's telephone line, and/or (4) the term "cell phone."

t.     The term "answering system" means a physical device or electronic-storage system that can enables a person, when making a telephone call that is not answered by a live person, to leave a message that can be heard

thereafter.

u.      With respect to a telephone call, the term "answer," as both a verb and noun, refers the answering of a telephone call by at least one of the following methods: (i) a person; (ii) an answering system; or (iii) a person and an answering system (as occurs, for example, when a call is answered by an answering system and then also answered by a person, or vice-versa ).

v.      The term "Promotional Telephone Call" means a telephone call that is made by, or at the direction of, Prospects DM and: (i) was made with the intention that, if such call is answered by one, or either, of the methods described in Paragraph "u," previously recorded material will be played to a person if a person answers the telephone call, or to an answering system if an answering system answers the telephone call, or to a person or answering machine if either one answers the telephone call; (ii) was placed pursuant to, or as a result of, a contract or business relationship to which ICOT was a party; (iii) would result in a charge to, and/or payment from, ICOT if, either considered alone of among other factors, the call was transferred to ICOT; and (iv) was placed during the Relevant Period.

## SCHEDULE "A"

1.      Complete copies of any and all documents that indicate the telephone number to which any Promotional Telephone Call was placed.

2.      Complete copies of any and all documents that indicate the number of Promotional Telephone Calls that were placed to any telephone number to which at least one Promotional Telephone Call was placed.

3.      Complete copies of any and all documents that indicate the date on which any Promotional Telephone Call was placed.

4.      Complete copies of any and all documents that indicate the name of the person that was associated with a telephone number to which any Promotional Telephone Call was placed.

# EXHIBIT "G"

**Redacted Excerpt of Document Served
by Prospects DM, Inc., upon Plaintiff**

**December 28, 2020**

| Campaign ID | Campaign name | Client name | Phone number | DID | Call timestamp | Transfer timestamp | Total duration (seconds) | Post-transfer duration (seconds) | Lead ID | First name | Last name |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 91036 | 9103704481 | 2/27/2019 1:02 | 2/27/2019 1:02 | 581.23917 | 534 | 7021531 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 31426 | 3142935156 | 2/27/2019 1:32 | 2/27/2019 1:33 | 580.048598 | 529 | 7022780 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 31765 | 3173428534 | 2/27/2019 1:36 | 2/27/2019 1:37 | 537.095713 | 489 | 7022914 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 51294 | 5128172939 | 2/27/2019 1:49 | 2/27/2019 1:50 | 1660.383926 | 1612 | 7023383 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 25645 | 2562420611 | 2/27/2019 1:57 | 2/27/2019 1:57 | 1126.170356 | 1077 | 7023685 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 90330 | 9034297261 | 2/27/2019 1:59 | 2/27/2019 2:00 | 1320.395937 | 1272 | 7023775 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 80472 | 8042037610 | 2/27/2019 2:13 | 2/27/2019 2:14 | 202.322144 | 149 | 7024379 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 76538 | 7652384695 | 2/27/2019 2:20 | 2/27/2019 2:21 | 505.529555 | 446 | 7024666 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 93130 | 9312872696 | 2/27/2019 2:39 | 2/27/2019 2:40 | 337.935952 | 288 | 7025512 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 41732 | 4172618924 | 2/27/2019 3:28 | 2/27/2019 3:29 | 181.927815 | 129 | 7027575 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 91070 | 9106360729 | 2/27/2019 3:32 | 2/27/2019 3:33 | 632.644233 | 581 | 7027749 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 87057 | 8702244563 | 2/27/2019 3:39 | 2/27/2019 3:40 | 274.001684 | 223 | 7028031 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 82855 | 8283768112 | 2/27/2019 3:56 | 2/27/2019 3:57 | 950.779403 | 902 | 7028804 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 90372 | 9033079291 | 2/27/2019 11:02 | 2/27/2019 11:03 | 664.314549 | 608 | 7016320 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 41080 | 4104497172 | 2/27/2019 11:22 | 2/27/2019 11:23 | 871.980521 | 803 | 7017256 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 67850 | 6782574057 | 2/28/2019 1:03 | 2/28/2019 1:04 | 1785.429685 | 1730 | 7043853 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 33046 | 3305295348 | 2/28/2019 1:38 | 2/28/2019 1:39 | 1445.522066 | 1399 | 7045229 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 20571 | 2053033655 | 2/28/2019 2:51 | 2/28/2019 2:52 | 726.951999 | 682 | 7048129 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 81664 | 8162398552 | 2/28/2019 2:52 | 2/28/2019 2:53 | 375.223194 | 333 | 7048167 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 54068 | 5404181737 | 2/28/2019 2:56 | 2/28/2019 2:56 | 862.691256 | 824 | 7048327 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 81551 | 8153254873 | 2/28/2019 2:57 | 2/28/2019 2:57 | 535.546189 | 495 | 7048368 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 40583 | 4055782693 | 2/28/2019 3:02 | 2/28/2019 3:03 | 856.101609 | 797 | 7048602 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 94052 | 9401333168 | 2/28/2019 3:13 | 2/28/2019 3:14 | 564.520844 | 526 | 7049021 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 70688 | 7063728266 | 2/28/2019 3:14 | 2/28/2019 3:15 | 1465.200881 | 1419 | 7049065 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 47079 | 4707897832 | 2/28/2019 9:23 | 2/28/2019 9:24 | 857.715857 | 816 | 7034944 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 44056 | 4403164088 | 2/28/2019 9:40 | 2/28/2019 9:41 | 203.858226 | 131 | 7035452 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 20572 | 2052730823 | 2/28/2019 10:29 | 2/28/2019 10:30 | 219.012575 | 167 | 7037223 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 81628 | 8162089671 | 2/28/2019 10:32 | 2/28/2019 10:33 | 461.117347 | 420 | 7037337 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 57258 | 5725802297 | 2/28/2019 10:35 | 2/28/2019 10:36 | 810.434488 | 764 | 7034691 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 57484 | 5742070664 | 2/28/2019 11:33 | 2/28/2019 11:34 | 1278.104792 | 1224 | 7039432 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 43455 | 4342666795 | 2/28/2019 11:43 | 2/28/2019 11:44 | 853.159154 | 816 | 7040023 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 75723 | 7576936883 | 2/28/2019 12:36 | 2/28/2019 12:37 | 445.920606 | 408 | 7040479 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 67899 | 6783450120 | 2/28/2019 12:36 | 2/28/2019 12:37 | 759.160186 | 697 | 7042810 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 22596 | 2252699248 | 3/1/2019 10:44 | 3/1/2019 10:44 | 651.523144 | 586 | 7042813 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 90157 | 9012508791 | 3/1/2019 10:45 | 3/1/2019 10:46 | 405.210607 | 369 | 7057928 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 76573 | 7652320582 | 3/1/2019 10:08 | 3/1/2019 1:20 | 461.376665 | 409 | 7059457 | | |
| 721 | Hearing Aid AD Internal Real Time (CPL)(David/Daniel) | Acquis to Listen Clear Client #2 | 51752 | 5175834863 | 3/4/2019 1:19 | 3/4/2019 1:20 | 357.941655 | 309 | 7087848 | | |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing document is being filed electronically on January 29, 2021, via the Court's electronic-case-filing (ECF) system. Notice of this filing will be sent by the Court's ECF system to all parties, and copies will be mailed to those parties, if any, that are not served in such manner.

Dated: January 29, 2021

  s/ *Todd C. Bank*
Todd C. Bank