UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated, | 1:18-cv-02554-AMD-PK |
| *Plaintiff*, | |
| -against- | |
| ICOT HOLDINGS, LLC, and ICOT HEARING SYSTEMS, LLC, | |
| *Defendant*s. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR CLASS CERTIFICATION**

TODD C. BANK,
 ATTORNEY AT LAW, P.C.
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York  11415
(718) 520-7125
By Todd C. Bank

*Counsel to Plaintiff*

**TABLE OF CONTENTS**

<b>Page</b>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATUTES AND RULES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

REGULATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

AGENCY AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

OVERVIEW OF STANDARDS GOVERNING
A MOTION FOR CLASS CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FACTS AND RELEVANT PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.      THE PREREQUISITES OF RULE 23(a) OF THE FEDERAL
        RULES OF CIVIL PROCEDURE ARE SATISFIED  . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.      Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.      Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        C.      Typicality  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        D.      Adequacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        E.      Ascertainability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.     THE PREREQUISITES OF RULE 23(b)(2) OF THE FEDERAL
        RULES OF CIVIL PROCEDURE ARE SATISFIED  . . . . . . . . . . . . . . . . . . . . . . . . 17

        A.      Predominance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        B.      Superiority  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

**Page**

**STATUTES AND RULES**

47 U.S.C. § 227 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

N.Y. GBL § 399-p(3)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

**REGULATIONS**

47 C.F.R. § 64.1200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14

**CASES**

*Allard v. SCI Direct, Inc.*,
    No. 16-cv-1033, 2017 WL 3236448
    (M.D. Tenn. July 31, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 18-19

*Amgen Inc. v. Connecticut Retirement Plans
    & Trust Funds*,
    568 U.S. 455 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Atakhanova v. Home Family Care, Inc.*,
    No. 16-cv-6707, 2020 WL 4207437
    (E.D.N.Y. July 22, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

*Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*,
    222 F.3d 52 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*B & R Supermarket, Inc. v. MasterCard Int'l Inc.*,
    No. 17-cv-02738, 2021 WL 234550
    (E.D.N.Y. Jan. 19, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 20

*Batalla Vidal v. Wolf*,
    No. 16-cv-4756, --- F. Supp. 3d ---,
    2020 WL 6695076 (E.D.N.Y. Nov. 14, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Page

**Table of Authorities; Cases (*cont'd*)**

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Charron v. Pinnacle Grp, N.Y. LLC*,
  269 F.R.D. 221 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Charvat v. Home Depot U.S.A., Inc.*,
  No. 17-cv-01446, 2017 WL 11495275
  (N.D. Ga. Nov. 6, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Consol. Rail Corp. v. Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cortigiano v. Oceanview Manor Home for Adults*,
  227 F.R.D. 194 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*D'Alauro v. GC Servs. Ltd. P'ship*,
  168 F.R.D. 451 (E.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Duran v. La Boom Disco, Inc.*,
  955 F.3d 279 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Freeland v. AT & T Corp.*,
  238 F.R.D. 130 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gen. Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15

*George v. Shamrock Saloon II LLC*,
  No. 17-cv-6663, 2020 WL 133621
  (S.D.N.Y. Jan. 13, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 17, 18, 19, 20, 21

*Gortat v. Capala Broths., Inc.*,
  No. 07-cv-3629, 2010 WL 1423018
  (E.D.N.Y. Apr. 9, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hasemann v. Gerber Prod. Co.*,
  331 F.R.D. 239 (E.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Page

**Table of Authorities; Cases (*cont'd*)**

*Herrera v. Navient Corporations*,
   No. 19-cv-06583, 2020 WL 3960507
   (E.D.N.Y. July 13, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hill v. City of New York*,
   No. 13-cv-6147, 2019 WL 1900503
   (E.D.N.Y. Apr. 29, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hill v. City of New York*,
   136 F. Supp. 3d 304 (E.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Agent Orange Prod. Liab.*,
   818 F.2d 145 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-md-1175, 2014 WL 7882100
   (E.D.N.Y. Oct. 15, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Flag Telecom Holdings Securities Litig.*,
   574 F.3d 29 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Initial Pub. Offerings Securities Litig.*,
   471 F.3d 24 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Methyl Tertiary Butyl Ether ("MTBE")*
   *Prod. Liab. Litig.*,
   209 F.R.D. 323 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Payment Card Interchange Fee and*
   *Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*In re Petrobras Securities*,
   862 F.3d 250 (2d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16

*In re Restasis (Cyclosporine Ophthalmic Emulsion)*
   *Antitrust Litig.*,
   335 F.R.D. 1 (E.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14-15, 15-16

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Jensen v. Cablevision Systems Corp.*,
   372 F. Supp. 3d 95 (E.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Page

**Table of Authorities; Cases (*cont'd*)**

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12, 18

*Lewis v. Alert Ambulette Serv. Corp.*,
   No. 11-cv-442, 2012 WL 170049
   (E.D.N.Y. Jan. 19, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mace v. Van Ru Credit Corp.*,
   109 F.3d 338 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Marisol A. ex rel. Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13

*Mazzei v. The Money Store*,
   829 F.3d 260 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*McBean v. City of N.Y.*,
   260 F.R.D. 120 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mendez v. MCSS Restaurant Corp.*,
   No. 16-cv-2746, 2019 WL 2504613
   (E.D.N.Y. June 17, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

*Newkirk v. Pierre*,
   No. 19-cv-4283, 2020 WL 5035930
   (E.D.N.Y. Aug. 26, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Scott v. Mexican Grill, Inc.*,
   954 F.3d 502 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Sirota v. Solitron Devices, Inc.*,
   673 F.2d 566 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Page

**Table of Authorities; Cases (*cont'd*)**

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

*Teamsters Local 445 Freight Div.*
 *Pension Fund v. Bombardier, Inc.*,
   546 F.3d 196 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Trenz v. On-line Adm'rs, Inc.*,
   No. 15-cv-8356, 2017 WL 6539019
   (C.D. Cal. Sept. 25, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Vogel v. City of New York*,
   No. 14-cv-9171, 2017 WL 4712791
   (S.D.N.Y. Sept. 19, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Waggoner v. Barclays PLC*,
   875 F.3d 79 (2d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Weber v. Goodman*,
   9 F. Supp. 2d 163 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Wexler v. AT&T Corp.*,
   No. 15-cv-0686, 2019 WL 4874746
   (E.D.N.Y. Sept. 30, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 12, 15

*Zeidel v. A&M, LLC*,
   No. 13-cv-6989, 2017 WL 1178150
   (N.D. Ill. Mar. 30, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20


**AGENCY AUTHORITIES**

*In the Matter of Rules & Regulations Implementing*
 *the Tel. Consumer Prot. Act of 1991*,
   27 F.C.C. Rcd. 1830 (FCC Feb. 15, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 13-14

*In the Matter of Rules & Regulations Implementing*
 *the Tel. Consumer Prot. Act. of 1991*,
   23 F.C.C Rcd. 559 (FCC Jan. 4, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## INTRODUCTION

Plaintiff, Todd C. Bank ("Bank"), submits this memorandum of law in support of Bank's motion for an Order, pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying the following three classes against Defendants, ICOT Hearing Systems, LLC ("ICOT Hearing"), and ICOT Holdings, LLC ("ICOT Holdings") (together, "ICOT"):

> (i) Federal Robocall Class: all persons to whose residential or cellular telephone number one or more telephone calls, from April 30, 2014, through April 9, 2020, were placed by ICOT through Prospects DM, Inc., that ICOT has not affirmatively shown to have been placed with proper consent, except to the extent that the claims of such persons were released in *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.);

> (ii) Federal Do-Not-Call Class: all persons to whose telephone number, while having been on the National Do Not Call Registry for 31 days or more, at least two telephone calls, during any 12-month period from April 30, 2014, through April 9, 2020, were placed by ICOT through Prospects DM, Inc., that ICOT has not affirmatively shown to have been placed with proper consent, except to the extent that the claims of such persons were released by *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.); and

> (iii) New York Class: all persons to whose New York State area-code telephone numbers one or more telephone calls, from April 30, 2015, through April 9, 2020, were placed by ICOT through Prospects DM, Inc., except to the extent that the claims of such persons were released by *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.).

Bank's motion also seeks an Order, pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Bank as class representative, and appointing Daniel A. Osborn as class counsel.

Bank's motion also seeks an Order granting Bank any additional relief that is just and proper.

## OVERVIEW OF STANDARDS GOVERNING
## A MOTION FOR CLASS CERTIFICATION

As recently summarized:

> To qualify for certification, a class must meet the prerequisites outlined in Federal Rule of Civil Procedure 23(a), including numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *see, e.g.*, *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). Numerosity requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Commonality means that "there are questions of law or fact common to the class." *Id.* 23(a)(2). "Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members," and "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010). Commonality and typicality "tend to merge into one another, so that similar considerations animate analysis of both." *Id.* The adequacy prerequisite ensures that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

> In addition to the Rule 23(a) prerequisites, "certification of the class must also be deemed appropriate under one of the three subdivisions of Rule 23(b)." *Brown*, 609 F.3d at 476. Finally, the Second Circuit has "recognized an implied requirement of ascertainability in Rule 23, which demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017).

> Where a suit "satisf[ies] the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation)," including the implied ascertainability requirement, and "fit[s] into one of the three categories described in subdivision (b)," then a plaintiff may maintain a class action in federal court. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). "The moving party must demonstrate compliance with these rules by a preponderance of the evidence." *Hill v. City of New York*, 136 F. Supp. 3d 304, 352 (E.D.N.Y. 2015).

*Batalla Vidal v. Wolf*, No. 16-cv-4756, --- F. Supp. 3d ---, 2020 WL 6695076, *10 (E.D.N.Y. Nov. 14, 2020).

As noted in *Newkirk v. Pierre*, No. 19-cv-4283, 2020 WL 5035930, *5 (E.D.N.Y. Aug. 26, 2020), "it is proper for a district court to accept allegations in the complaint as true for a class[-]certification motion," *Id.* at *5, citing *Waggoner v. Barclays PLC*, 875 F.3d 79, 85 n.5 (2d Cir. 2017), "and to refrain from conducting 'a preliminary inquiry into the merits' of the case." *Id.*, quoting *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974). "Indeed, plaintiffs seeking class certification are not required to establish the merits of their underlying substantive claims: 'a class plaintiff who otherwise meets the demands of 23(a) and (b) should not be found to be disqualified solely by an advance determination that his claim is predictably not a winning claim.'" *Id.*, quoting *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982). However, class-certification "analysis may 'entail some overlap with the merits of the plaintiff's underlying claim,'" *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 11 (E.D.N.Y. 2020), quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), "[b]ut . . . 'only to the extent [that the merits] are relevant to' the application of Rule 23." *Id.*, quoting *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013). Thus, "'a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement.'" *In re Restasis*, 335 F.R.D. at 26, n.33, quoting *In re Initial Pub. Offerings Securities Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

Finally:

> [A] [c]ourt's analysis of whether the relevant requirements of Rule 23 have been met must be "rigorous." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). Nevertheless, the Second Circuit has emphasized that Rule 23 should be given a "liberal rather than restrictive construction." *Marisol A.* [*ex rel. Forbes v. Giuliani*], 126 F.3d [372] at 377 [(2d Cir. 1997)] (internal quotation marks and citation omitted). "[T]o deny a class action simply because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle would destroy much of the utility of Rule 23." *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005) (internal quotation marks and citation omitted). "Therefore, it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class

certification." *Id.* (internal quotation marks and citation omitted); *see also Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 254 (E.D.N.Y. 2019).

*Newkirk*, 2020 WL 5035930 at *5.

## FACTS AND RELEVANT PROCEDURAL BACKGROUND

On April 30, 2018, Bank commenced this putative class action by filing a Complaint (Dkt. No. 1), and ultimately filed a second amended complaint ("SAC") on November 22, 2019 (Dkt. No. 133), which, like the two previous versions, asserts three causes of action, the first two of which are for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), *i.e.*, (i) of Section 227(b)(1), which prohibits the placing, to a residential or cellular telephone number, of an unsolicited telephone call that is placed by an automatic dialer and/or that plays pre-recorded material when the call is answered, and (ii) of the TCPA regulation, *i.e.*, 47 C.F.R. Section 64.1200(c)(2), which prohibits the placing of a telephone solicitation to a residential telephone number that is on the national do-not-call registry. The third cause of action is for violations of New York General Business Law ("GBL") Section 399-p(3)(a), which requires that a telephone call that is placed with an automatic dialer and plays pre-recorded material upon being answered include, in the pre-recorded material, the disclosure of certain information.

Bank alleges that, "[o]n or about June 30, 2017, Bank received, on his residential telephone line, a telephone call whose Caller Identification ('Caller ID') information comprised the telephone number 516-217-3754 and the name 'Cold Spring Harbor' (the 'First Telephone Call')," SAC, ¶ 26; that, "[t]he First Telephone Call was one of numerous telephone calls that were placed to the same residential telephone line in or about May and June of 2017 whose Caller ID information was identical to that set forth in the preceding paragraph (collectively, such additional calls are hereinafter referred to as the 'Additional Bank Calls')," *id.*, ¶ 27; that, "[o]n or about May 30, 2018, Bank received, on his residential telephone line, a telephone call whose . . . Caller ID . . . information comprised the

4

telephone number 518-375-3298 and the name 'Albany, NY' (the 'Second Telephone Call,' and, collectively with the First Telephone Call, 'Bank's Telephone Calls')," *id.*, ¶ 34; that the Caller ID information of Bank's Telephone Calls and the Additional Bank Calls "did not reflect the actual source of such calls, but, instead, was fabricated in order to hide the actual source in an effort to prevent any member of the called household from learning who had made such calls," *id.*, ¶¶ 28, 35; that Bank answered each of Bank's Telephone Calls, *see id.*, ¶¶ 29, 36, "[u]pon [which] a prerecorded voice on the caller's end promoted hearing aids (the '. . . Prerecorded Material')," *id.*, ¶¶ 30, 37; that, "[f]ollowing the playing of the . . . Prerecorded Material, Bank was transferred to a live person who . . . identified himself as an employee of 'Listen Clear,'" *id.*, ¶¶ 32-33, 38-39; that, "[a]t the time that Bank's Telephone Calls and the Additional Bank Calls were made, the telephone number to which they were made [was] on the National Do Not Call Registry for 31 days or more," *id.*, ¶ 42; that, "Bank's Telephone Calls and the Additional Bank Calls were made with equipment that was capable of storing telephone numbers to be called and that was used, either alone or in conjunction with other equipment, to disseminate a prerecorded message to the telephone numbers that were called without the use of an operator," *id.*, ¶ 43; that, "Bank's Telephone Calls and the Additional Bank Calls were made without the prior express written consent of any person who had the legal right to provide such consent," *id.*, ¶ 47; that, "the . . . Prerecorded Material . . . [did not] state[e] the name of the person on whose behalf [the] telephone calls were placed," *id.*, ¶ 44, the "address" of that person, *id.*, ¶ 45, or "the telephone number" of that person, *id.*, ¶ 46; and that, "Bank alleges that, "Bank's Telephone Calls were among thousands of telephone calls were factually identical or materially similar to Bank's Telephone Calls." *Id.*, ¶ 50.

ICOT Hearing does business as ListenClear. *See* Transcript of Deposition ICOT's Rule 30(b)(6) witness, Jacob Zellweger, dated Aug. 8, 2019, 11:13-21 (a copy of the cited pages herein is annexed as Exhibit "A" to the accompanying Declaration of Todd C. Bank). ICOT Holdings is the

parent company of ICOT Hearing. *See* Rule 7.1 statement of ICOT Hearing (Dkt. No. 16-1), PageID #: 153 (filed in connection with ICOT Hearing's third-party complaint (the complaint is addressed below).

The telephone number to which Bank's Telephone Calls were made was (516) 489-xxxx ("Bank's Telephone Number"). *See* Bank's Response to ICOT's First Set of Interrogatories, No. 1(b) (a copy of the responses is annexed as Exhibit "B" to the accompanying Declaration of Todd C. Bank).

Mr. Zellweger was ICOT's "Director of Sales and Marketing" since March, 2018, *see* Bank Dec., Exh. "A," at 11:13 - 13:6. Mr. Zellweger testified that:

> (i) ICOT had begun utilizing the services of Prospects DM, Inc. ("Prospects DM" or " Prospects"), in late 2016 or early 2017, *see id.* at 17:11-19; 19:4-8;

> (ii) the calls that Prospects made played pre-recorded material when answered, *see id.* at 23:20 - 24:6;

> (iii) the calls were made nationwide, *see id.* at 36:15-19;

> (iv) ICOT, after utilizing Prospects' services through a third party, *see id.* at 17:20 - 18:5, 19:9-13, began, in approximately March, 2018 (or, perhaps, in 2017), to utilize Prospects' services directly, *see id.* at 18:21 - 19:3; 19:21 - 21:11, a change that was made by Blair Jesswein, *see id.* at 20:20 - 21:1, who was ICOT's "Director of Marketing," *id.* at 14:8, and was the first person who had dealt with Prospects on ICOT's behalf, *see id.* at 14:3-5; 54:15 - 55:1;

> (v) between the time that ICOT first engaged Prospects until the date of the deposition, the number of transferred calls had gone from "probably a few hundred a day," *id.* at 53:16, to about "1,400, 1,600" per day, *id.* at 53:19, an increase that had resulted from ICOT's having "literally told [Prospects] [to transfer] just as many calls as you want to send us or can send us[.] [W]e've got the capacity, so just send us the calls." *id.* at 53:9-12;

> (vi) "ever since I had the relationship with Prospects I just told them, send whatever you can and I'll tell you when the -- basically we're at capacity and not send anymore and we've got so many reps that it's never really reached that point," *id.* at 54:21 - 55:1; and

6

(vii) as of the date of the deposition, ICOT was still making the same type of telephone calls that the present action concerns, and was doing so through Prospects. *See id.* at 26:11-21.

With respect to Bank's Telephone Calls, ICOT stated:

ICOT understands that Prospects DM Inc. transferred two calls to ICOT on June 30, 2017 and May 30, 2018 after Plaintiff expressed an interest in obtaining hearing aids. During the June 30, 2017 call, Plaintiff identified himself as Joseph Carne and again expressed an interest in obtaining hearing aids. Similarly, during the May 30, 2018 call, Plaintiff identified himself as Joseph Klarne and again expressed an interest in obtaining hearing aids.

ICOT Hearing Systems, LLC's Responses and Objections to Bank's First Set of Interrogatories, No. 1, dated Aug. 27, 2018 (a copy of the responses is annexed as Exhibit "C" to the accompanying Declaration of Todd C. Bank (although the title of the document refers only to ICOT Hearing, the verification shows that the responses were on behalf of both Defendants)). Contrary to ICOT's unfounded assertion, "Bank's Telephone Calls and the Additional Bank Calls were made without the prior express written consent of any person who had the legal right to provide such consent,." SAC, ¶ 47, including Bank.

ICOT Hearing "admit[ted] that the calls with Plaintiff on June 30, 2017 and May 30, 2018 were transferred to ICOT through Prospects DM Inc. in an attempt to obtain a customer or potential customer for ICOT," ICOT Hearing Systems, LLC's Responses and Objections to Bank's First Set of Requests for Admission, No. 16 (a copy of the responses is annexed as Exhibit "D" to the accompanying Declaration of Todd C. Bank); "admit[ted] that some calls were transferred to ICOT through Prospects DM Inc. in an attempt to obtain a customer or potential customer for ICOT," *id.*, No. 18, and "admit[ted] that Prospects DM's call log produced in the *Charvat* matter identifies more than 1,000,000 telephone calls." *Id.*, No. 7. The "*Charvat* matter" is *Philip Charvat v. ICOT Hearing Systems, LLC, d/b/a ListenClear, ICOT Holdings, LLC, Waverly Consulting Group, Inc., and Allan Perlow* (S.D.Ga. No. 4:17-cv-00245). *See* ICOT Hearing's Responses and Objections to Bank's

7

Amended First Set of Interrogatories, No. 4 (a copy of the responses is annexed as Exhibit "E" to the accompanying Declaration of Todd C. Bank).

On June 12, 2018, ICOT Hearing filed, against Prospects DM, a third-party complaint (Dkt. No. 11) that stated that, "[i]f Plaintiff sustained any injuries and/or damages as a result of calls that were not compliant with the TCPA or state law, it was due to the fault of Prospects DM, and not of ICOT Hearing [Systems, LLC]." *Id.*, ¶ 14. ICOT withdrew the third-party complaint on March 22, 2019. *See* Dkt. No. 58 (stipulation).

On August 19, 2019, ICOT produced a spreadsheet (ICOT 164) of records of telephone calls that were made by Prospects and transferred to ICOT.

On August 27, 2019, ICOT produced a spreadsheet (ICOT 165) of records of payments that ICOT had made to Prospects.

On September 27, 2019, Bank filed a motion (Dkt. No. 119) for permission to file a second amended complaint. Bank, in his memorandum of law in support of that motion, stated:

> In *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga. [filed May 9, 2018]), Defendants settled class claims arising out of the same telephone calls at issue in the present case. Michele Bank, who was a class member and whose telephone number is the number that was called each time that Bank answered [Bank's Telephone Calls], excluded that number from the settlement. The settlement releases Defendants of liability for calls that were not excluded from the settlement and that were made on or before December 31, 2018. *See id.*, Class[-]Action Settlement Agreement (Dkt. No. 24-1) at 4; Preliminary[-]Approval Order (Dkt. No. 25) at 2.

Dkt. No. 121 at 4; *see also* Memorandum Decision and Order dated September 29, 2020, denying ICOT's motion to dismiss the class allegations of the Second Amended Complaint (Dkt. No. 140) at 2 (noting same).

On November 18, 2019, the Northern District of Georgia issued final approval of the *Hennie* settlement. *See* (in the present case) Dkt. No. 130-2, which is a copy of the *Hennie* court's Final[-

]Approval Order and Judgment (the "*Hennie* Order").

On November 20, 2019, the Court, in a text order, granted Bank's motion to file a second amended complaint.

On November 22, 2019, Bank filed the Second Amended Complaint (Dkt. No. 133), which is currently the operative complaint. It defines the TCPA and GBL class periods as those statutes' respective statute-of-limitations periods leading up to and including August 7, 2019. That date was based upon Bank's having learned during the Rule 30(b)(6) deposition that the type of telephone calls at issue had continued after the end of the *Hennie* settlement period, *i.e.*, continued after December 31, 2018, through the day of (or, at least, the day before) the deposition. However, the call-record spreadsheet that ICOT had provided ( ICOT 164) did not include records pertaining to any calls made on or after January 1, 2018. By contrast, as noted above, ICOT had provided information (in ICOT 165) of the payments that it had made to Prospects through August 12, 2019.

On December 16, 2019, ICOT filed a motion (Dkt. No. 135) seeking, *inter alia*, to dismiss the class allegations of the Second Amended Complaint.

On September 29, 2020, the Court issued a Memorandum Decision and Order (Dkt. No. 140) denying ICOT's motion.

On October 7, 2020, Bank filed a motion (Dkt. No. 141) (i) to compel ICOT to supplement its production of documents, and (ii) for a brief extension of the fact-discovery deadline in order to conduct limited discovery. ICOT partly consented (albeit not explicitly) to the motion (*see* Dkt. No. 142), in that ICOT opposed Bank's request for the extension and for an order compelling the production of documents, but stated that, "Defendants will produce records sufficient to show all payments to Prospects DM from August 12, 2019 to present," which ICOT subsequently did.

On October 21, 2020, the Court, following that day's oral argument on Bank's motion, issued a text minute entry that stated, in part:

9

> Plaintiff clarified that his motion to compel seeks only Defendants'
> records of payments and phone calls that are subject to their
> continuing obligation to supplement discovery. Defendants stated that
> they intend to produce the payment records. With regard to the
> records of phone calls, Defendants stated that their production in
> [August] 2019 did not include records past the end of 2017 because
> those were the only records in their possession, custody, or control.
> According to Plaintiff, the request for production does not contain an
> end date. Based on the Plaintiff's letter and the parties'
> representations during the hearing, the Court granted Plaintiff's
> motion to compel, insofar as it seeks payment and call records subject
> of Defendants' continuing obligation to supplement discovery. The
> Court denied the remainder of Plaintiff's motion, which sought an
> extension of the discovery deadline that has long passed.

On October 23, 2020, ICOT produced a non-Bates-numbered document showing that ICOT had paid more than $721,795.50 to Prospects between August 19, 2019, and October 11, 2019. When this amount is added to the payments that, according to ICOT 165, ICOT had made to Prospects between January 15, 2019, and August 12, 2019, *i.e.*, payments adding to $2,635,695.99, the total amount of money that ICOT paid to Prospects for telephone-call transfers made in 2019 became $3,357,491.49.

On November 2, 2020, one of ICOT's attorneys, Walter (Chad) Blackham, stated, in an email to Bank: "Jake Zelwegger of ICOT relayed to us that ICOT is not in possession of the [call-transfer] records, and that ProspectsDM was maintaining them. Eric Allen, attorney for ProspectsDM, sta[t]ed to us that ProspectsDM would not voluntarily disclose the records."

On November 5, 2020, Bank filed a motion (Dkt. No. 151) for permission to serve a subpoena for documents upon Prospects, in response to which ICOT notified the Court that "Defendants do not oppose the Motion." Dkt. No. 152.

On November 5, 2020, the Court issued a text order granting Bank's motion.

On December 4, 2020, Bank served, by email upon Mr. Allen with Mr. Allen's consent, a subpoena for documents (a copy of which is annexed as Exhibit "G" to the accompanying Declaration

of Todd C. Bank).

On December 28, 2020, a colleague of Mr. Allen emailed, to Bank, records that itemize 186,072 transfers of calls from Prospects to ICOT from January 2, 2019, through April 9, 2020 (a redacted excerpt of which is annexed as Exhibit "G" to the accompanying Declaration of Todd C. Bank).

## ARGUMENT

## POINT I

## THE PREREQUISITES OF RULE 23(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE ARE SATISFIED

**A.   Numerosity**

As explained in *Mendez v. MCSS Restaurant Corp.*, No. 16-cv-2746, 2019 WL 2504613 (E.D.N.Y. June 17, 2019):

> "Numerosity is presumed at a level of 40 members." *Vogel v. City of New York*, No. 14-CV-9171 (RMB), 2017 WL 4712791, at *3 (S.D.N.Y. Sept. 19, 2017) (quoting *Consol. Rail. Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (alteration adopted)). The precise number of class members need not be established, "so long as [the] [p]laintiffs reasonably estimate the number to be substantial." *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-CV-442 (JBW), 2012 WL 170049, at *9 (E.D.N.Y. Jan. 19, 2012) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).

*Id.* at 1101. Here, numerosity is indisputably satisfied.

**B.   Commonality**

As explained in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11 (E.D.N.Y. 2019):

> "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." [*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338] at 349-50 [(2011)]. "The claims for relief need not be identical for them to be common[.]" [I]nstead, "Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members. Where

the same conduct or practice by the same defendant gives rise to the
same kind of claims from all class members, there is a common
question." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d
Cir. 2015) (citations and quotation marks omitted). "Even a single
common legal or factual question will suffice" to prove commonality.
*Dukes*, 564 U.S. at 357; *Freeland v. AT & T Corp.*, 238 F.R.D. 130,
140 (S.D.N.Y. 2006) (citing *In re Agent Orange Prod. Liab.*, 818
F.2d 145, 166–67 (2d Cir. 1987) ).

*Id.* at 52. In *George v. Shamrock Saloon II LLC*, No. 17-cv-6663, 2020 WL 133621 (S.D.N.Y. Jan.

13, 2020), the court "certif[ied] a [TCPA] class consisting of the 67,630 individuals (1) to whom

[the] defendants sent promotional text messages between March 26, 2015 and September 1, 2017

using an automated dialing system and (2) from whom [the] defendants cannot affirmatively show

that they received prior express written consent to receive such text messages." *Id.* at *1 (as the

Second Circuit noted, "[i]t is undisputed that '[a] text message to a cellular telephone ... qualifies as

a "call" within the compass of [the TCPA].'" *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280, n.4

(2d Cir. 2020), quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016)). In *George*, the

court found that "common facts – that [the] [d]efendants sent promotional texts to the individual class

members using an ATDS [(*i.e.*, an 'automatic telephone dialing system,' defined at 47 U.S.C. §

227(a)(1))] – and law – whether [the] [d]efendants had the requisite consent – are present." *Id.* at *8

("[u]nder the TCPA , 'prior express consent' is an affirmative defense for which the defendant bears

the burden of proof." *Herrera v. Navient Corporations*, No. 19-cv-06583, 2020 WL 3960507, *6,

n.10 (E.D.N.Y. July 13, 2020), citing *In the Matter of Rules & Regulations Implementing the Tel.

Consumer Prot. Act. of 1991*, 23 F.C.C Rcd. 559, 565 (FCC Jan. 4, 2008)). The same is true in the

present case with respect to ICOT's telephone calls. Thus, in *George*, "each class member suffered

the same injury – the receipt of [TCPA-violating communications]," *id.* (citation and quotation marks

omitted); again, just as in the present case. Furthermore, "[a]lthough the putative class members'

factual circumstances might differ slightly, such as in the number of texts an individual received, there

is a unifying thread among the members' claims that warrant[s] class treatment." *Id.* (citation and quotation marks omitted). Again, the same is true here with respect to ICOT's calls (in *George*, which involved "67,630 putative class members," *id.* at *7, the court found that "[s]uch a large putative class easily satisfies [the numerosity requirement]." *Id.*).

## C.  Typicality

As explained in *Batalla Vidal v. Wolf*, No. 16-cv-4756, --- F. Supp. 3d ---, 2020 WL 6695076 (E.D.N.Y. Nov. 14, 2020), "'[w]hen each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability,' typicality is satisfied." *Id.* at *11, quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Thus, "[t]o satisfy that requirement, 'the named plaintiffs must possess the same interests and suffer the same injuries as the class members." *Id.*

Here, Bank's claims, and all of the claims of the putative members of the three classes arise from ICOT's robocalling campaign and are identical to the claims of the other members of the respective classes. Therefore, the typicality requirement is clearly satisfied.

In *George*, the court found that the typicality requirement was satisfied because "[a] single inquiry applies to the entire class: whether [the] [d]efendants sent the 67,630 people a text message between March 26, 2015 and September 1, 2017 using an ATDS without receiving consent in accordance with the FCC's 2012 order," *i.e.*, *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830 (FCC Feb. 15, 2012) ("*2012 TCPA Order*"). *George*, 2020 WL 133621 at *6. That type of consent was, the court explained, the same type of consent that ICOT had been required to obtain, *i.e.*, consent under "the 'prior express written consent' standard established in the FCC's 2012 Order," *id.* at *4 (footnote omitted), in which the FCC "revise[d] [its] rules to require prior express written consent for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *2012 TCPA Order*, 27 F.C.C. Rcd. at

1831, ¶ 2 (footnotes omitted). These rules are codified at 47 C.F.R. Section 64.1200(a)(2) and (3).

With respect to the claims of the Federal Do-Not-Call Class, the type of calls involved, *i.e.*, "'telephone solicitation[s]' as defined in 47 C.F.R. § 64.1200(f)(14)," SAC, ¶ 48, are prohibited from being made to a telephone number that has been on the national do-not-call registry for at least 31 days, *see* 47 C.F.R. §§ 64.1200(c)(2), 64.1200(c)(2)(i)(D), unless, in relevant part, the call is made "to any person with that person's prior express invitation or permission, [or] to any person with whom the caller has an established business relationship," 47 U.S.C. §§ 227(a)(4)(A) and (B) (the existence of an established business relationship as a basis of consent is an affirmative defense. *See Charvat v. Home Depot U.S.A., Inc.*, No. 17-cv-01446, 2017 WL 11495275, *2 (N.D. Ga. Nov. 6, 2017)). The former type of consent must be in writing. *See* 47 C.F.R. § 64.1200(c)(2)(ii). Such calls may also be made where "[t]he telemarketer making the call has a personal relationship with the recipient of the call," 47 C.F.R. § 64.1200(c)(2)(iii), a "personal relationship" meaning a relationship in which the recipient is "a[] family member, friend, or acquaintance of the telemarketer making the call." 47 C.F.R. § 64.1200(f)(16). However, with respect to the claims of the Federal Robocall Class, the type of calls at issue in the present case, *i.e.*, ATDS and/or pre-recorded calls, may, as set forth above, be made *only* where there has been prior express written consent. Finally, the question of consent (of any type) does not bear on the claims of the New York Class.

**D.     Adequacy**

**(i)     Plaintiff**

As explained in *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1 (E.D.N.Y. 2020):

> Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." To determine if this requirement is met, courts must inquire into whether a "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and

> able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotation marks omitted). "This process 'serves to uncover conflicts of interest between named parties and the class they seek to represent.' " *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

*Id.* at 13.

As further explained in *Jensen v. Cablevision Systems Corp.*, 372 F. Supp. 3d 95 (E.D.N.Y. 2019):

> In *Dukes*, the Supreme Court suggested that the inquiry into whether the named plaintiff's interest[s] are antagonistic to the interests of other class members also tends to merge with the requirements of commonality and typicality. *See Dukes*, 564 U.S. at 349 n. 5 ("[Typicality and commonality ] ... also tend to merge with the adequacy-of-representation requirement, 'although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.' " (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157–158, n. 13 (1982) ) ).

*Id.* at 124.

Finally, "plaintiff[s] cannot adequately represent a class if they 'have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'" *Wexler v. AT&T Corp.*, No. 15-cv-0686, 2019 WL 4874746, *2 (E.D.N.Y. Sept. 30, 2019), quoting *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 61 (2d Cir. 2000).

Bank's interests are aligned with, not antagonistic to, the interests of the other putative class members, and he clearly has more than sufficient knowledge of the case. Thus, Bank easily satisfies the first part of the adequacy requirement.

**(ii)    Class Counsel**

As noted in *In re Restasis*, Rule 23(g) "requires [a court] to appoint class counsel at the time of certification," *In re Restasis*, 335 F.R.D. at 40; and, in appointing class counsel, the court "must consider '(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.'" *Id.*, quoting Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). The Declaration of Daniel A. Osborn, and Exhibit "A" thereto, clearly show that he is qualified to be class counsel.

**E.      Ascertainability**

As noted in *B & R Supermarket, Inc. v. MasterCard Int'l Inc.*, No. 17-cv-02738, 2021 WL 234550 (E.D.N.Y. Jan. 19, 2021), "[i]n addition to the explicit requirements of Rule 23, the class must satisfy the implied requirement of ascertainability." *Id.* at *8, citing *In re Petrobras Securities*, 862 F.3d 250, 266 (2d Cir. 2017). In greater detail:

> Rule 23(a) contains an implied requirement of ascertainability. *In re Petrobras Sec.*, 862 F.3d at 266 ("Most circuit courts of appeals have recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable, often characterized as an 'ascertainability' requirement."). Unlike other circuits, the Second Circuit does not have a "heightened" requirement of ascertainability — it requires only that a "class be defined using objective criteria that establish a membership with definite boundaries," and does not require "administrative feasibility" of identifying each class member based on that objective criteria. *Id.* (distinguishing the Second Circuit's approach to ascertainability from the circuits with a heightened ascertainability requirement); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) ("The standard for ascertainability is 'not demanding' and is 'designed only to prevent the certification of a class whose membership is truly indeterminable.' " (quoting *Gortat v. Capala Bros., Inc.*, [No. 07-cv-3629][,] 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010))); *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) ("To be ascertainable, the class must be 'readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling.' " (quoting *McBean v. City of N.Y.*, 260 F.R.D. 120, 132–33 (S.D.N.Y. 2009))); *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002). "The ascertainability requirement, as defined in this Circuit, asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d at 269.

*Id.* at \*15.

In *George*, the court found that the proposed class was ascertainable, explaining: "[a]lthough [the] [p]laintiff proposes a large class, there are 'objective criteria that are administratively feasible' to identify the class members. *Charron v. Pinnacle Grp, N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010). That is, namely, each individual's cell phone number can be found on a list, which [the] [p]laintiff's expert used in creating his report." *George*, 2020 WL 133621 at \*8. Here, the call records that Prospects produced list each telephone number that was called.

## POINT II

### THE PREREQUISITES OF RULE 23(b)(3) OF THE FEDERAL RULES OF CIVIL PROCEDURE ARE SATISFIED

As noted in the Overview of Standards Governing a Motion for Class Certification, *supra*, class certification requires the satisfaction of at least one of the three subdivisions of Rule 23(b). Here, Bank seeks certification under Rule 23(b)(3), which "requires both that (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and that (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *B & R Supermarket*, 2021 WL 234550 at \*8 (E.D.N.Y. Jan. 19, 2021), quoting Fed. R. Civ. P. 23(b)(3).

### A.     Predominance

As explained in *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020):

> The "predominance" requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also Myers* [*v. Hertz Corp.*], 624 F.3d [537] at 547 [(2d Cir. 2010)].

17

> A court examining predominance must assess (1) "the elements of the claims and defenses to be litigated," (2) "whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief," and (3) "whether the common issues can profitably be tried on a class[-] wide basis, or whether they will be overwhelmed by individual issues." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015).

*Id.* at 512.

In *George*, "[the] [d]efendants suggest[ed] that predominance could not be met 'because individual issues with respect to whether each class member gave the requisite consent to receive text messages would require an individual analysis of each class member's claim.'" *George*, 2020 WL 133621 at *4. The court rejected this argument:

> "To establish typicality under Rule 23(a)(3), the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.' " *In re Flag Telecom Holdings Ltd., Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citation omitted). Here, that is true. A single inquiry applies to the entire class: whether [the] [d]efendants sent the 67,630 people a text message between March 26, 2015 and September 1, 2017 using an ATDS without receiving consent in accordance with the FCC's 2012 order. It was certainly not clear error [by the magistrate judge's report and recommendation], therefore, to conclude that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015).

*Id.* at *6. The court further explained:

> Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof." *Mazzei v. [The] Money Store*, 829 F.3d 260, 272 (2d Cir. 2016). "[I]ndividual questions need not be absent," but "[t]he rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Sykes*, 780 F.3d at 81. The purpose of this inquiry is to ensure that "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

*Id.* at *7. The court then explained why it found that the predominance requirement was satisfied;

indeed, one of the defendants' arguments, which the court rejected, *i.e.*, concerning a 2013 change

to the requirements regarding consent, is not even at issue in the present case:

> Before [the magistrate judge], [the] [d]efendants argued that the class should not be certified because individualized inquiries into (1) whether a class member gave consent and, if so, (2) what consent standard applied, would predominate. But as [the magistrate judge] noted, "[the] [d]efendants' argument is predicated on the assumption that the court would need to apply the pre-2013 express consent standard to some class members and the more stringent prior express written consent standard to other class members." [R&R] at 21-22. This "assumption," the Court reiterates, is incorrect. *Id.*

> "There is," therefore, "no need for an individualized inquiry concerning the issue of consent." *Id.* at 23. The proposed class was purposefully defined to avoid individualized inquiries by only including individuals who were contacted by [the] [d]efendants after the FCC's 2012 Order. Moreover, [the] [d]efendants have not offered any affirmative evidence – despite already engaging in discovery – that casts doubt on [the] [p]laintiff's assertion that they lacked consent from any of the putative class members. *See id.* at 25 (finding [the] [d]efendants' contention that it had consent from some putative class members "too speculative to defeat a finding of predominance"); *see also Trenz* [*v. On-line Adm'rs, Inc.*][,] [No. 15-cv-8356], 2017 WL 6539019, at *8 [(C.D. Cal. Sept. 25, 2017)] (certifying a TCPA class over the defendants' objection to predominance because "[t]he Court ... need[s] significantly more evidence from [the] [d]efendants in order to find that these potential individualized inquiries actually predominated over the common questions").

> With one consent standard applicable to the whole class, only a generalized inquiry as to consent would be necessary. Predominance is therefore established. *See e.g., Allard v. SCI Direct, Inc.*, No. 16-CV-1033, 2017 WL 3236448, at *5 (M.D. Tenn. July 31, 2017) ("[W]hether [the defendant] had a practice of obtaining consent in a way sufficient to satisfy 'prior express written consent' is a *common question that predominates in this action*."); *Zeidel v. A&M, LLC*, No. 13-CV-6989, 2017 WL 1178150, at *5 (N.D. Ill. Mar. 30, 2017) ("Common questions of law and fact related to ]the] [d]efendant's alleged uniform practice of sending substantially similar text messages to the class members ... and alleged lack of written consent predominate over any individualized issues.").

*Id.*

The *George* court further explained: "[e]ven if the Court agreed with [the] [d]efendants'

argument about what consent standard appl[ies], it would still fail under clear[-]error review. [The]

[d]efendants have not established that they ever received consent – written or oral – from [the]

[p]laintiff prior to the FCC's 2012 Order, and thus it would make no difference what consent standard

applied." *Id.* at *6, n.9. As in *George*, ICOT has produced no evidence of consent by any class

members.

## B.      Superiority

Rule 23(b)(3) provides that '[t]he matters pertinent to th[e] findings [regarding superiority]

include: (A) the class members' interests in individually controlling the prosecution or defense of

separate actions; (B) the extent and nature of any litigation concerning the controversy already begun

by or against class members; (C) the desirability or undesirability of concentrating the litigation of the

claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ.

P. 23(b)(3). As explained in *B & R Supermarket*:

> To satisfy the superiority requirement, the moving party must show
> that the class action presents economies of "time, effort and expense,
> and promote[s] uniformity of decision." *In re U.S. Foodservice Inc.
> Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013). The superiority
> requirement is designed to avoid "repetitious litigation and possibility
> of inconsistent adjudications." *In re Air Cargo Shipping Servs.
> Antitrust Litig.*, [No. 06-md-1175][,] 2014 WL 7882100, at *64
> [(E.D.N.Y. Oct. 15, 2014)] (citing *D'Alauro v. GC Servs. Ltd.
> P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996)).

*B & R Supermarket*, 2021 WL 234550 at *33.

As noted in *Atakhanova v. Home Family Care, Inc.*, No. 16-cv-6707, 2020 WL 4207437

(E.D.N.Y. July 22, 2020), "'[a]t bottom, the superiority analysis requires (1) consideration of the

alternative methods of adjudication available for the claims, (2) a comparison of the fairness to all

whose interests are implicated between any alternative methods and a class action, and (3) a

comparison of the efficiency of each method in adjudicating the claims.'" *Id.* at *9, quoting 1 Joseph

M. McLaughlin, *McLaughlin on Class Actions*, § 5:63 (16th ed. 2019).

In *George*, the court explained:

> There is no indication – either identified by [the] [d]efendants
> or to be found in the record – that any class member has a unique
> individual interest in controlling this litigation or has already brought
> an action against [the] [d]efendants. Moreover, with [the]
> [d]efendants' business located in the Southern District of New York,
> this is the desirable forum to litigate this matter. Nor is there an
> identifiable difficulty in managing this class action. Finally, the Court
> notes that, because each claim asserted individually is statutorily
> limited to $500, *see* 47 U.S.C. § 227(b)(3)(B), these TCPA individual
> claims are unlikely to be brought or successful. In this instance,
> therefore, the class[-]action mechanism is a superior method. *See
> Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 294 (S.D.N.Y.
> 2012).

*George*, 2020 WL 133621 at *9.

As in *George*, each of the superiority considerations favors certification. Subdivision (A) weighs in favor because there is no indication of any that any of the class members has an interest in individually controlling the prosecution of a separate action. For the same reason, subdivision (B) weighs in favor. Subdivision (C) also weighs in favor of certification because the Court is familiar with the history of this case, having ruled on a variety of motions and discovery disputes. Additionally, certification would eliminate the risk of inconsistent judgments and would be beneficial with regard to judicial resources. Subdivision (D) weighs in favor of certification because, in light of the predominance requirement having been met, it does not seem likely that questions regarding individual class members' knowledge, statutes of limitations, or any other issue would render a class action unmanageable.

The alternative to class certification, as in *George*, is that the class members would be left to pursue individual actions, which few, if any, would likely pursue, given the relatively small amount of statutory damages. *See also Hill v. City of New York*, No. 13-cv-6147, 2019 WL 1900503, *10 (E.D.N.Y. Apr. 29, 2019) (superiority is strengthened where "[e]ach class member's claim is too

small to warrant bringing an individual lawsuit"). Furthermore, the notion that each class member

could bring an individual action "'assumes that the [class member] will be aware of [his] rights,

willing to subject [him]self to the burdens of suing and able to find an attorney willing to take [his]

case. These are considerations that cannot be dismissed lightly in assessing whether a class action or

a series of individual lawsuits would be more appropriate for pursuing [the statute]'s objectives.'"

*Weber v. Goodman*, 9 F. Supp. 2d 163, 170 (E.D.N.Y. 1998), quoting *Mace v. Van Ru Credit Corp.*,

109 F.3d 338, 344 (7th Cir. 1997).

**CONCLUSION**

Plaintiff respectfully requests that this Court, pursuant to Rule 23 of the Federal Rules of Civil

Procedure, certify the following three classes:

> (i) Federal Robocall Class: all persons to whose residential or cellular telephone number one or more telephone calls, from April 30, 2014, through April 9, 2020, were placed by ICOT through Prospects DM, Inc., that ICOT has not affirmatively shown to have been placed with proper consent, except to the extent that the claims of such persons were released in *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.);

> (ii) Federal Do-Not-Call Class: all persons to whose telephone number, while having been on the National Do Not Call Registry for 31 days or more, at least two telephone calls, during any 12-month period from April 30, 2014, through April 9, 2020, were placed by ICOT through Prospects DM, Inc., that ICOT has not affirmatively shown to have been placed with proper consent, except to the extent that the claims of such persons were released by *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.); and

> (iii) New York Class: all persons to whose New York State area-code telephone numbers one or more telephone calls, from April 30, 2015, through April 9, 2020, were placed by ICOT through Prospects DM, Inc., except to the extent that the claims of such persons were released by *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.).

Plaintiff also respectfully requests that this Court, pursuant to Rule 23 of the Federal Rules

of Civil Procedure, appoint Bank as class representative, appoint Daniel A. Osborn as class counsel,

22

and grant Bank any additional relief that is just and proper.

Dated: January 29, 2021

Respectfully submitted,

__ *s/ **Todd C. Bank**__

TODD C. BANK,
  ATTORNEY AT LAW, P.C.
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York  11415
(718) 520-7125
By Todd C. Bank

*Counsel to Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document is being filed electronically on January 29, 2021, via the Court's electronic-case-filing (ECF) system. Notice of this filing will be sent by the Court's ECF system to all parties, and copies will be mailed to those parties, if any, that are not served in such manner.

Dated: January 29, 2021

_s/ **Todd C. Bank**_
Todd C. Bank