**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | No. 1:18-cv-025540-AMD-PK |
| ICOT HOLDINGS, LLC AND ICOT HEARING SYSTEMS, LLC | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

i

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 2

   A.   Plaintiff's individual claims ..................................................................... 2

   B.   Plaintiff's class allegations ...................................................................... 3

III. LAW AND ARGUMENT ................................................................................. 7

   A.   Standard of review .................................................................................. 7

   B.   Class certification is improper for the fundamental reason that Plaintiff is not a
   member of the very classes that he proposes. ........................................................ 8

   C.   Plaintiff is an atypical and inadequate class representative because the calls were
   placed to Michele Bank's residential telephone number. ....................................... 10

      1.   Unique defenses against a named plaintiff defeat the adequacy, typicality, and
      commonality prongs of Rule 23(a). .......................................................... 10

      2.   Plaintiff is uniquely subject to a statutory standing defense under the controlling "called
      party" definition contained within the TCPA. ........................................... 11

      3.   Plaintiff has not shown, and cannot show, that he is within the zone of interests that
      the TCPA protects. ............................................................................ 14

   D.   The proposed classes are not readily ascertainable. .............................. 16

      1.   Plaintiff failed to provide a basis how to ascertain classes that carveout individuals
      "excluded from the Hennie settlement" – i.e., any class members whose claims predate the
      Dec. 31, 2018 end of the *Hennie* release. ................................................ 17

      2.   Plaintiff has also failed to meet his burden to show the existence of an ascertainable
      class for individuals that allegedly received calls after the *Hennie* release. ......... 19

   E.   Plaintiff also fails to meet his burden of proof to show numerosity. ........ 21

      1.   Plaintiff cannot show numerosity for class members that received calls prior to the
      *Hennie* Release. ............................................................................. 21

      2.   Plaintiff cannot establish numerosity with respect to the post-*Hennie* calls
      purportedly contained in the Additional Records. ........................................ 22

   F.   Certification of the two proposed nationwide classes is precluded because personal
   jurisdiction is lacking over putative class members that lack a connection to the forum
   state. ............................................................................................. 23

IV. CONCLUSION ................................................................................................ 25

ii

## TABLE OF AUTHORITES

**Cases**

*Amador v. Andrews*, 655 F.3d 89 (2d Cir. 2011) ........................................................................ 14

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ............................. 18

*Baffa v. Donaldson*, 222 F.3d 52 (2d Cir. 2000) ........................................................................ 11

*Balverde v. Lunella Ristorante, Inc.*, 2017 U.S. Dist. LEXIS 59778 (S.D.N.Y. Apr. 19, 2017) . 12

*Banarji v. Wilshire Consumer Capital, LLC*, Case No. 14-cv-2967, 2016 U.S. Dist. LEXIS 18015 (S.D. Cal. Feb. 12, 2016) .............................................................................................. 14

*Beck v. Status Game Corp.*, Case No. 89 Civ. 2923, 1995 U.S. Dist. LEXIS 9978 (S.D.N.Y. July 13, 1995) ..................................................................................................................................... 13

*Bentley v. Verizon Bus. Glob., LLC*, Case No. 07 Civ. 9590, 2010 U.S. Dist. LEXIS 32880 (S.D.N.Y. Mar. 31, 2010) ............................................................................................................. 9

*Bowling v. Johnson & Johnson*, Case No. 17-cv-3982 (AJN), 2019 U.S. Dist. LEXIS 67795 (S.D.N.Y. Apr. 21, 2019) .......................................................................................................... 13

*Brecher v. Republic of Arg.,* 806 F.3d 22, 24 (2d Cir. 2015) ...................................................... 8

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) ........................................ 24

*Butto v. Collecto, Inc.*, 290 F.R.D. 372 (E.D.N.Y. 2013) ............................................................ 9

*Chizniak v. Certainteed Corp.*, Case No. 1:17-cv-1075, 2020 U.S. Dist. LEXIS 17020 (N.D.N.Y. 2020) ........................................................................................................................................ 25

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ...................................... 22

*Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240 (5th Cir. 2020) .......................................... 24

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ............................................................................ 24

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ............................................................................................................... 10, 11

*Gazzillo v. Ply Gem Indus.*, Case No. 1:17-CV-1077, 2018 U.S. Dist. LEXIS 180303 (N.D.N.Y. 2018) ....................................................................................................................................... 25

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) ............................................................ 8

*George v. Shamrock Saloon II LLC*, Case No. 17-CV-6663, 2020 U.S. Dist. LEXIS 5646 (S.D.N.Y. Jan. 13, 2020) .......................................................................................................... 19

*Gonzalez v. Costco Wholesale Corp.*, No. 16 Civ. 2590, 2018 U.S. Dist. LEXIS 171000 (E.D.N.Y. 2018) ........................................................................................................................ 23

*Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193 (S.D.N.Y. 2015) .............................. 11

*Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.) ............................... 1, 5, 18

*In re Petrobras* Sec. Litig., 862 F.3d 250 (2nd Cir. 2017) .......................................................... 8

*Lee v. loanDepot.com, LLC*, Case No. 14-CV-01084-EFM, 2016 U.S. Dist. LEXIS 110100, at *12-13 (D. Kan. Aug. 17, 2016) .............................................................................................. 12

iii

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ............................ 15

*Leyse v. Bank of Am. Nat'l Ass'n* 804 F.3d 316 (3d Cir. 2015)................................................... 16

*Leyse v. Lifetime Entm't Servs.*, 2015 U.S. Dist. LEXIS 139100 (S.D.N.Y. Sep. 22, 2015) ....... 12

*Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp.3d 226 (S.D.N.Y. 2020) ...................... 23

*Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138 (S.D.N.Y. 2019)........................ 10

*Midtown Valuation, Inc. v. Capital Alliance Grp.*, Case No. 14-cv-1586, 2015 U.S. Dist. LEXIS 117191 (E.D.N.Y. Aug. 11, 2015) ......................................................................................... 21

*Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293 (D.C. Cir. 2020) .................................... 24

*Mussat v. Iqvia, Inc.*, 953 F.3d 441 (7th Cir. 2020).................................................................... 25

*Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66 (E.D.N.Y. 2000) ............................ 7

*Pennsylvania Pub. Sch. Emp.'s Ret. Sys. v. Morgan Stanley & Co., In*c., 772 F.3d 111 (2d Cir. 2014)........................................................................................................................................... 7

*Rivera v. Harvest Bakery, Inc.*, 312 F.R.D. 254 (E.D.N.Y. 2016) ............................................. 11

*Southwell v. Mortg. Inv'rs Corp. of Ohio*, Case No. C13-1289, 2014 U.S. Dist. LEXIS 112362 (W.D. Wash. Aug. 12, 2014).................................................................................................... 20

*Spagnola v. Chubb Corp.*, 264 F.R.D. 76 (S.D.N.Y. 2010) ...................................................... 17

*Spratley v. FCA US LLC*, Case No. 3:17-CV-62, 2017 U.S. Dist. LEXIS 147492 (N.D.N.Y. 2017)......................................................................................................................................... 25

*Wai Hoe Liew v. Cohen & Slamowitz, LLP*, 265 F. Supp. 3d 260 (E.D.N.Y.2017).................... 18

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................ 7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................................ 5

**Statutes**

47 U.S.C. § 227(b)(3) ................................................................................................................. 17

47 U.S.C. § 227(c)(5)................................................................................................................. 17

**Rules**

Fed. R. Civ. P. 12(b)(2)............................................................................................................. 29

Fed. R. Civ. P. 23(a) ..................................................................................................... 9, 18, 24

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling & Order No. 15-72, 30 FCC Rcd. 7961, 8000-01 (F.C.C. July 10, 2015) 13

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Defendants ICOT Holdings, LLC and ICOT Hearing Systems, LLC (collectively "Defendants" or "ICOT") hereby submit their Memorandum in Opposition to Plaintiff Todd C. Bank's ("Plaintiff" or "Mr. Bank") Motion for Class Certification (ECF No. 163).

## I.   INTRODUCTION

Plaintiff moves the Court for an Order certifying a class action as to the three defined classes of persons: (1) a Federal Robocall Class; (2) a Federal Do-Not-Call Class: and (3) a New York Class.  Each of Plaintiff's class definitions specifically carve out an exception to the class definitions to exclude the claims of such persons were released by *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.)("*Hennie*"), discussed more fully below.

Plaintiff fails to even come close to meet his burden to show he is eligible to serve as a class representative in this case.  Plaintiff's claims are premised on his misrepresentations to the Court that "Bank received, *on his residential line*" the two calls upon which he bases his claims. (Mot. for Class Cert. at PageID#1437-38 (citing SAC ¶¶26, 34).)  However, in his deposition and even in filings before this Court, he concedes that those very alleged phone calls were actually placed to his mother's residential landline, at her home where Mr. Bank does not live.  (*E.g.*, Pl.'s Mot. for Leave to File 2d Am. Compl. (ECF No. 121), at PageID#788 ("Michele Bank, … whose telephone number is the number that was called each time that Bank answered….").)

These unique facts disqualify Plaintiff as a class representative.  First, the classes – defined as those "whose telephone numbers received" the alleged calls – do not include Plaintiff because he received the alleged calls on his mother's residential landline (serving her home, where Plaintiff does not reside).  Second, this unique circumstance defeats commonality, typicality, and adequacy

1

because it subjects him to unique defenses that (i) he lacks statutory standing, and/or (ii) he is not within the zone of interests that congress enacted the TCPA to protect.

In addition, Plaintiff completely fails to make even a *de minimis* showing, let alone meeting the "rigorous standard" necessary at the class certification stage, to demonstrate the existence of an ascertainable class. First, Plaintiff defines the classes in the negative by carving out individuals that were allegedly excluded from the *Hennie* class settlement. However, Plaintiff provides no predicate basis to explain how or which individuals were excluded from the *Hennie* settlement and release. Second, for post-*Hennie* calls, Plaintiff relies on unauthenticated calls records that wholly lack foundation or any analysis to demonstrate membership in any of the three proposed classes. These fundamental deficiencies also demonstrate a failure to meeting a showing of numerosity. Indeed, Plaintiff fails to come forward with even one other identifiable class member.

Furthermore, ICOT respectfully submits that, to the extent that two of Plaintiff's proposed classes encompass persons residing outside of New York, the Court lacks personal jurisdiction to adjudicate those claims. For these reasons, ICOT respectfully requests the Court deny Plaintiff's Motion.

## II.     STATEMENT OF FACTS

### A.     Plaintiff's individual claims

ICOT are companies located in Savanna and Tulsa, Georgia which manufacture and sell hearing aids. (Zellweger Dep. 45:1-18.)[1] At one time, ICOT maintained call centers accepting inbound transfers from Prospects DM and other media marketing companies.[2] (*Id*.) Mr. Bank is a lawyer licensed to practice in New York, who has maintained his own law practice for the past twenty

---

[1] Cited depositions are being filed contemporaneously with the Court, and cited pages are appended as <u>Exhibit A</u>.
[2] ICOT presently has only 14 employees and maintains only one office. ICOT no longer actively markets hearing aids.

years. (T. Bank Dep. 6:4-22.)

Plaintiff's Second Amended Complaint alleges that Mr. Bank received calls that were transferred by Prospects DM to ICOT on June 30, 2017 and May 30, 2018, which Mr. Bank answered. (ECF No. 131 ("SAC"), at ¶¶26, 28, 33, 35.) Mr. Bank further alleges that both of the calls featured a pre-recorded voice. (*Id.* at ¶¶29, 36.)  Although Mr. Bank alleges that he received "Additional Calls" that were transferred to him, the SAC fails to identify the dates, times, or content of those alleged Additional Calls. (*See*, *generally* SAC.)

Contrary to Plaintiff's pled allegations, the calls at issue were placed to the landline number of 516-489-xxxx, which is a residential landline number at the home of Michele Bank, not Mr. Bank's residence.  (T. Bank Dep. 13:10-25, 14:1-12.)  Michele Bank is Mr. Bank's mother and is the sole resident at the home in Westbury, New York. (T. Bank Dep. 16:1-5; M. Bank Dep. 5:15, 7:10-11.) Ms. Bank is the account holder with Cablevision/Optimum for the telephone line and she pays all charges associated with the subscription. (M. Bank Dep. 6:22-25, 7:1-3.) Ms. Bank has been the subscriber to this number for a total of about forty-nine years, including the entire eleven years that she lived at this Westbury home. (M. Bank Dep. 6:11-19; T. Bank Dep. 21:13-17.)

Mr. Bank resides in Kew Gardens, New York in a residence separate and apart from his mother's home. (T. Bank Dep. 5:9-12.)  Mr. Bank visits his mother most weekends, using her telephone in a varying fashion.  (M. Bank Dep. 7:12-17.)  However, based on the frequency with which Mr. Bank visits his mother at her home, it is more likely than not that Mr. Bank does not answer her telephone. (T. Bank Dep. 21:3-9.)

### B.    Plaintiff's class allegations

Plaintiff defines three separate classes to correspond respectively with the three causes of action asserted in the SAC.  Plaintiff defines a "Federal Robocall Class," "Federal Do-Not-Call-

Class," and "New York Class" that each respectively consist of:

> [A]ll persons to whose residential or cellular telephone number one or more telephone calls, from April 30, 2014, through April 9, 2020, were placed by ICOT through Prospects DM, Inc., that ICOT has not affirmatively shown to have been placed with proper consent, except to the extent that the claims of such persons were released in *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv- 02045 (N.D. Ga.)

> [A]ll persons to whose telephone number, while having been on the National Do Not Call Registry for 31 days or more, at least two telephone calls, during any 12-month period from April 30, 2014, through April 9, 2020, were placed by ICOT through Prospects DM, Inc., that ICOT has not affirmatively shown to have been placed with proper consent, except to the extent that the claims of such persons were released by *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.); and

> [A]ll persons to whose New York State area-code telephone numbers one or more telephone calls, from April 30, 2015, through April 9, 2020, were placed by ICOT through Prospects DM, Inc., except to the extent that the claims of such persons were released by *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.).

(Mot. for Class Cert., PageID#1434.) Notably, all three classes appear to extend to the subscribers of the phone numbers receiving the alleged calls – "all persons to whose [] telephone number(s) received a call. (*Id*.) While the beginning terminus of each class has been extended to the full amount permitted by the respective statute of limitations, Plaintiff's Motion for Class Certification acknowledges that Prospects DM only began transferring calls to ICOT "in late 2016 or early 2017." (*Id*., PageID#1439.) As such, the beginning point of the classes can be no earlier than late 2016, as the classes are defined through calls transferred from Prospects DM to ICOT.

Each of the three proposed classes carve out individuals that released their claims against ICOT in the *Hennie* class action settlement approved in the Northern District of Georgia. The *Hennie* released parties consist of: "all called persons transferred to ICOT Hearing Systems, LLC d/b/a ListenClear from Prospects DM at any time between August 1, 2016 and December 31, 2018." (*Hennie v. ICOT Hearing Systems, LLC*, N.D. Ga. Case No. 18-cv-02045, 11/18/2019

Final Order Approving Settlement, "Hennie Final Order," ECF No. 38, attached as <u>Exhibit B</u>.)[3]

Plaintiff's proposed class definitions and Motion for Class Certification contain no criteria or objective basis to exclude *Hennie* releasees from his proposed classes – i.e., those individuals receiving a telephone call on or before December 2018.  Plaintiff received calls during the *Hennie* release time period and bases his exclusion from the release by virtue that his mother "excluded that number from the settlement." (Mot. for Class Cert., PageID#1441.)  Plaintiff has not identified whether any other individuals opted-out of the *Hennie* settlement, the number of any such opt-outs, or other grounds to exclude anyone who received a pre-2019 call from the *Hennie* release, and therefore should be excluded from his proposed class.

Plaintiff purports to support the existence of classes through two pieces of evidence, (i) a log of calls produced by ICOT (referred to as "ICOT164"), and (ii) records emailed to Plaintiff from "a colleague of Mr. Allen [an attorney for Prospects DM]" purported to contain "records that itemize 186,072 transfers of calls from Prospects to ICOT from January 2, 2019, through April 9, 2020 (the "Additional Records").  (*Id.*, PageID#1442, 1444.)

The call logs produced by ICOT in ICOT164 "did not include records pertaining to any calls made on or after January 1, 2018."  (*Id.*, PageID#1442.)  As such, the entirety of ICOT164 covers calls that fit within the time of the *Hennie* release (which covered calls through December 31, 2018.)  Again, Plaintiff has provided no factual support or argument as to how any of the phone calls identified in ICOT164 are excluded from the *Hennie* settlement.  The only semblance of an explanation of exclusion of the *Hennie* settlement is Plaintiff's reference to his own mother opting

---

[3] Although the *Hennie* litigation did not specifically involve claims arising under the New York General Business Law, it involved the very same calls during this time period and are barred under the factual predicate doctrine.  *E.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 108 (2d Cir. 2005) ("When considering the permissibility of a release, the overlap between elements of claims is not dispositive. Class actions may release claims, even if not pled, when such claims arise out of the same factual predicate as settled class claims.").

out her phone number from that settlement.  (*Id.*)

With respect to the Additional Records that were emailed to him by the colleague of an attorney for non-party Prospects DM, Plaintiff provides no information regarding this data other than his characterization that it lists 186,072 transfers from January 2019 through April 2020 along with the photograph of a computer screen that appears to have the file open:

(Ex. G to Decl. of Todd Bank, ECF No. 163-1, at PageID#1420.)

Anything else about the Additional Records remains a mystery.  There is no evidence to provide any foundation for the document (i.e., indicating what it purports to represent, whether it is a business record of Prospects DM, how, why, or when it was created, or any indicia of reliability).  In addition, while one would expect expert analysis regarding the potential class size and other aspects of a raw data file of purported call transfers, Plaintiff provides no analysis of the Additional Records other foundationless conclusions to the date range and number of transfers.

The foregoing purported calling lists (one which, at best contains a list of telephone calls for individuals that have already released their claims, and the other wholly lacking any foundation

or analysis) provides no basis for Plaintiff to set forth objective criteria to ascertain a class or even provide an estimate of the number of class members (be it 7, 35, or 200,000).

## III.    LAW AND ARGUMENT

### A.    Standard of review

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). Contrary to Plaintiff's contention, "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—i.e., *he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.*," which often require a court to "probe behind the pleadings." *Id.* at 390.

"Plaintiffs bear the burden of establishing each requirement under Rule 23 for class certification, and their failure to meet any one of Rule 23's requirements destroys the alleged class action." *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69-70 (E.D.N.Y. 2000).  Each element must be established by a preponderance of the evidence.  *Id.*; *Pennsylvania Pub. Sch. Emp.'s Ret. Sys. v. Morgan Stanley & Co., In*c., 772 F.3d 111, 119 (2d Cir. 2014).  "Where factual questions underlying a Rule 23 requirement overlap with merits questions, the court is obligated to decide them." *Id.*

First, Plaintiff must ensure that Plaintiff has met each of the four requirements set forth in Rule 23(a) – numerosity, commonality, typicality, and adequacy – "only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart*, 564 U.S. at 350-351.  This rigorous analysis is critical to protecting a defendant's right to defend itself under the applicable substantive law. *Wal-Mart*, 564 U.S. at 349.  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id.*

In addition, the Second Circuit adopts an implied requirement of ascertainability. *Brecher v. Republic of Arg.,* 806 F.3d 22, 24 (2d Cir. 2015)("[T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."); *see also In re Petrobras Sec. Litig.*, 862 F.3d 250, 269 (2d Cir. 2017)("The ascertainability requirement, as defined in this Circuit, asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries.")

As discussed below, Plaintiff fails to meet his burden of proof that class certification is warranted.

**B.    Class certification is improper for the fundamental reason that Plaintiff is not a member of the very classes that he proposes.**

A fundamental precept of Rule 23 class certification is that the class representative is, him- or herself, a member of the certified class.  Before addressing the four enumerated standards of numerosity, commonality, typicality, and adequacy, Rule 23 provides: "Prerequisites: *One or more members of a class may sue* or be sued as representative parties on behalf of all members only if…."  Fed. R. Civ. P. 23(a) (emphasis added); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("We have repeatedly held that *a class representative must be part of the class* and possess the same interest and suffer the same injury as the class members.") (internal quotations omitted) (emphasis added).

In determining class certification, the proposed class representative's failure to fall within the class definition has specifically been found to be a threshold issue that will destroy class certification irrespective of the enumerated class certification requirements. *Butto v. Collecto, Inc.*, 290 F.R.D. 372, 391 (E.D.N.Y. 2013) ("As noted, under the relevant precedents, a determination that the named plaintiff is not a member of the class is dispositive, and other class

8

certification requirements need not be considered."); *Bentley v. Verizon Bus. Glob., LLC*, Case No. 07 Civ. 9590, 2010 U.S. Dist. LEXIS 32880, *10 (S.D.N.Y. Mar. 31, 2010) ("A class representative must be a member of the class.").[4]

All three proposed classes are comprised of "all persons to whose [] telephone number(s)" received an alleged call, in violation of either the TCPA or the New York General Business Law, which requires certain disclosures in connection with calls placed using automated dialing equipment. (SAC, ¶¶2-4.)   While the SAC disingenuously pleads that he "received, on his residential telephone line…" the offending calls (*id.* ¶¶ 26, 34), Plaintiff has since conceded in discovery and in subsequent filings with the Court, that the phone calls were received on his mother's residential telephone line, approximately 20 miles away from Plaintiff's separate residence.   (*E.g.*, Pl.'s 2d Mot. for Leave, at PageID#788 ("Michele Bank, … whose telephone number is the number that was called each time that Bank answered….").) (*See also* T. Bank Dep. 5:9-12; M. Bank Dep. 4:10-11.)

As such, Plaintiff necessarily falls outside of the very classes he desires to represent because the calls were received at his mother's house, on her residential landline, for which she is the subscriber and pays the bills.  (M. Bank Dep. 6:11-19, 6:22-7:3).  Therefore, she is the individual "whose telephone number received an alleged call," and falls within the proposed class definitions, not Plaintiff.

To the extent that Plaintiff may argue that the class definitions should be redrafted or interpreted to constitute a class of individuals that happened to answer someone else's telephone,

---

[4] Alternatively, some courts have treated the named plaintiff's failure to fall within the defined class as a threshold adequacy issue.  *Irvin v. Harris*, 944 F.3d 63, 71 (2d Cir. 2019) (reversing district court grant of class certification, finding no adequacy of representation because "[t]he named plaintiffs in a class action cannot represent a class of whom they are not a part…."); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 100 (E.D.N.Y. 2012) ("As a threshold matter, a class representative is not 'adequate' unless it is a member of the class it purports to represent.").

Plaintiff has not, and cannot, show an objective basis to ascertain such a class.  As explained below, Plaintiff cannot even ascertain persons within the classes who were not released by the *Hennie* settlement.  Any further attempts to parse the class definitions to include persons answering someone else's phone is not feasible based on the call records upon which Plaintiff relies.

Because, as Plaintiff now freely concedes, the phone number that received the alleged calls belonged to his mother and not him, he is not a member of any of the three proposed classes of individuals "whose telephone number(s) received an alleged call."  For the fundamental reason that Plaintiff is not a member of any of the proposed classes, ICOT respectfully requests that the court deny certification as to all three proposed classes on this basis alone.

### C.  Plaintiff is an atypical and inadequate class representative because the calls were placed to Michele Bank's residential telephone number.

Plaintiff's admission that the alleged phone calls were received at his mother's house, where he does not live and only occasionally visits on weekends, make him atypical of, and inadequate to represent, the classes that he purports to represent.  As such, Plaintiff is subject to unique defenses that are dispositive of his claim that are not otherwise present for other putative class members, who allegedly received calls at phone numbers belonging to them.

### 1.  Unique defenses against a named plaintiff defeat the adequacy, typicality, and commonality prongs of Rule 23(a).

"[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990); *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 150 (S.D.N.Y. 2019) ("Where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation, certification of the class is not appropriate because the representative cannot act in the best interest of the class.") (internal quotation omitted); *Rivera v. Harvest Bakery, Inc.*, 312 F.R.D.

254, 272 (E.D.N.Y. 2016) (However, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.).

Courts in the Second Circuit hold that the issue of unique defenses applies to the adequacy, typicality, and commonality prongs of Rule 23(a). *Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 201 (S.D.N.Y. 2015) ("The issue of unique defenses is relevant not only to adequacy, but also to the typicality and commonality prongs of Rule 23(a)."); *Gary Plastic*, 903 F.2d at 180 ("Regardless of whether the issue is framed in terms of the typicality of the representative's claims, or the adequacy of its representation, there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.")(cleaned up).

At the class certification stage, the defendant need not show "that the unique defense will prevail, only that it is meritorious enough to require the plaintiff to devote considerable time to rebut the unique defense." *Gordon*, 92 F. Supp. 3d at 201 (internal quotations omitted).  "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson*, 222 F.3d 52, 59 (2d Cir. 2000).

2.   <u>Plaintiff is uniquely subject to a statutory standing defense under the controlling "called party" definition contained within the TCPA.</u>

Plaintiff's unique claim arising from him answering phone calls on his mother's phone, at his mother's house (where he does not live) places him squarely outside the class of individuals that the TCPA was enacted to protect.  A decision from this judicial district specifically identified that "only 'called parties' under the statute have standing to bring suit under the TCPA." *Leyse v. Lifetime Entm't Servs.*, 2015 U.S. Dist. LEXIS 139100, *9 (S.D.N.Y. Sep. 22, 2015); *See also Lee*

11

*v. loanDepot.com, LLC*, Case No. 14-CV-01084, 2016 U.S. Dist. LEXIS 110100, *12-13 (D. Kan. Aug. 17, 2016) (analyzing a plaintiff's statutory standing under the "called party" question).

While the TCPA does not define the term "called party," the Federal Communications Commission ("FCC") provided further guidance in a 2015 declaratory ruling by defined a called party as either (i) "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call," or (ii) or the non-subscriber customary user of a telephone number included in a family or business calling plan." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling & Order No. 15-72, 30 FCC Rcd. 7961, 8000-01 (F.C.C. July 10, 2015) ("2015 Ruling & Order"). Plaintiff is neither.

Properly rejecting his false and disingenuous pleading that the allegedly offending calls were received on "his residential telephone line" as the Court must do on a motion for class certification,[5] Plaintiff sets forth no evidence that he is the subscriber or customary user included in a family plan for his mother's residential landline. To the contrary, Plaintiff maintains a separate residence approximately 20 miles away, Ms. Bank has been the sole subscriber/payer for the phone line for at least the previous 11 years, and Plaintiff simply answers his mother's telephone from time to time when he happens to visit her on the weekend.

This can be contrasted with instances where Courts have found a sufficient connection with the phone line to find a plaintiff established sufficient facts to survive a summary judgment challenge. *Leyse v. Lifetime*, 2015 U.S. Dist. LEXIS 139100, at *9 ("Leyse testified that he lived at the apartment with that phone line for 13 years, and that he regularly paid the bill for the telephone line, although he was unable to produce any records confirming that testimony. Construing all facts in the light most favorable to Plaintiff, as I must on a summary judgment

---

[5] *Balverde v. Lunella Ristorante, Inc.*, 2017 U.S. Dist. LEXIS 59778, at *8-9 (S.D.N.Y. Apr. 19, 2017) ("the Court must resolve factual disputes relevant to satisfying each Rule 23 requirement.")

motion, I hold that Plaintiff is a called party under the TCPA, and therefore has statutory standing to bring the claim."); *Lee*, 2016 U.S. Dist. LEXIS 110100, at *13 ("Although Plaintiff is not the subscriber, he is the husband of the subscriber and the primary user of the wireless number ending in 2833. Therefore, the Court denies Defendant's motion for summary judgment on this basis.").

In addition to being factually distinguishable, the above cases also take a markedly different procedural posture than the question presented here. While those cases considered a defendant's entitlement to summary judgment (the absence of material issues of facts), on class certification "[t]he Court need not resolve whether a unique defense would ultimately succeed on the merits; rather, certification must be refused if the Court is confronted with a sufficiently clear showing of the defense's applicability to the representative plaintiff. *Bowling v. Johnson & Johnson*, Case No. 17-cv-3982 (AJN), 2019 U.S. Dist. LEXIS 67795, at *12 (S.D.N.Y. Apr. 21, 2019) (internal quotations omitted); *Beck v. Status Game Corp.*, Case No. 89 Civ. 2923, 1995 U.S. Dist. LEXIS 9978, at *10 (S.D.N.Y. July 13, 1995) ("regardless of whether the defenses [] were meritorious, the fact remained that each plaintiff would be required to devote considerable time to rebut the unique defenses and this allocation of plaintiffs' resources would prejudice absent class members.") (internal quotations omitted).

In other words, even assuming that Plaintiff could argue that statutory standing is a contested issue of fact, the distraction of litigating this unique issue to Plaintiff will detract from the interests of the absent class members. Moreover, the potential risk that Plaintiff's unique issue could subsequently destroy this action will undoubtedly prejudice the other class members. *Cf. Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011) ("Of course, a class action cannot be sustained without a named plaintiff who has standing.").

In an analogous scenario, another district court similarly held that "called party" issues

unique to a named plaintiff warrant the denial of class certification. *Banarji v. Wilshire Consumer Capital, LLC*, Case No. 14-cv-2967, 2016 U.S. Dist. LEXIS 18015, at *8-9 (S.D. Cal. Feb. 12, 2016). In *Banarji*, the proposed class representative's father provided her phone number to the defendant-caller. The court recognized the possibility of a defense unique to the named plaintiff because "based upon the circumstances of how the Banarji family looks after one another, Plaintiff's father may be a non-subscriber customary user of the phone line, which would give him the authority to consent to receiving robocalls on that line." *Id*. at *9. Tellingly, the court did not reach the merits of whether the defense would succeed ("Plaintiff's father *may* be a non-subscriber customary user"), to conclude that "the majority of the proposed class may suffer as Plaintiff will be engrossed with disputing [Defendant's] arguments regarding Plaintiff's individual case." *Id*.

The same issue exists here. Plaintiff's unique circumstance of answering phone calls on his mother's landline (where he does not live) will become the focal point of this litigation, to the detriment of the many class members that Plaintiff seeks to represent. The absent class members would suffer a great disservice to have their claims subsumed (and potentially terminated) based on a defense that applies only to Plaintiff. Accordingly, class certification should be denied because this unique defense to Plaintiff defeats the adequacy, commonality, and typicality requirements of Rule 23(a)

3. <u>Plaintiff has not shown, and cannot show, that he is within the zone of interests that the TCPA protects.</u>

In addition to the express authority holding that only a "called party" has statutory standing under the TCPA to maintain a claim, a related line of cases additionally hold that only plaintiffs within the "zone of interests" protected by the TCPA may maintain a claim. Applicable here, as the houseguest who answered a phone call at his mother's home, Plaintiff is not within the "zone of interests" protected by the TCPA.

14

The Supreme Court has repeatedly held "that a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014).  The plain statutory language of the TCPA does not expressly delineate who may bring a claim, and instead grants "a person" a private right of action to bring "an action based on a violation of this subsection." 47 U.S.C. § 227(b)(3); see also 47 U.S.C. § 227(c)(5) (granting a right of action for violations of the do-not-call registry for "an action based on a violation of the regulations prescribed under this subsection").

This lack of authority does not eliminate that a TCPA action can only be brought by a limited class of individuals, as the zone of interest limitation "applies unless it is expressly negated," and "as a practical matter, [] the limitation *always* applies and is never negated." *Lexmark*, 572 U.S. at 129.  Without clear statutory guidance, the zone of interest inquiry will require an in depth analysis of legislative history to determine the rights sought to be protected by the TCPA, and the application of those protections to an individual such as Plaintiff, who received a telephone call by virtue of visiting another's home.

Because the merits of this defense need not be resolved on this issue to decide class certification (rather the question is whether the determination of this unique defense will consume this litigation at the expense of unaffected class members), ICOT will not endeavor to undertake the detailed analysis in this Opposition.  While the unique facts of Plaintiff's circumstances would appear to make this an issue of first impression within the Second Circuit, a Third Circuit decision lays out the detailed analysis (including examining the congressional record to discern legislative intent), *Leyse v. Bank of Am. Nat'l Ass'n* 804 F.3d 316 (3d Cir. 2015), with that court concluding:

> Congress's repeated references to privacy convince us that a mere houseguest or visitor who picks up the phone would likely fall outside the protected zone of

15

> interests.  On the other hand, a regular user of the phone line who occupies the residence being called undoubtedly has the sort of interest in privacy, peace, and quiet that Congress intended to protect.

*Id.* at 326-27 (concluding that the subscriber's live-in roommate is a "regular user," who "had a privacy interest in avoiding telemarketing calls to their shared home).

While ICOT maintains that Plaintiff's individual claim would fail under the zone of interests test, at a minimum, the resolution of this novel issue unique to Plaintiff will detract from and interfere with the interests of the thousands of class plaintiffs that Plaintiff seeks to represent. Therefore, class certification is additionally improper based on this unique defense that defeats commonality, typicality, and adequacy pursuant to Rule 23(a).

### D. The proposed classes are not readily ascertainable.

Plaintiff utterly fails to meet his burden to provide evidence demonstrating that the putative class members are readily ascertainable.  The Second Circuit has "recognized an implied requirement of ascertainability in Rule 23" and "the touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  *Brecher v. Republic of Arg*., 806 F.3d 22, 24-25 (2d Cir. 2015.  Ascertainability requires reference to "objective criteria," and

> it cannot be the case that any objective criterion will do.  A class defined as those wearing blue shirts, while objective, could hardly be called sufficiently definite and readily identifiable; it has no limitation on time or context, and the ever-changing composition of the membership would make determining the identity of those wearing blue shirts impossible. In short, *the use of objective criteria cannot alone determine ascertainability when those criteria, taken together, do not establish the definite boundaries of a readily identifiable class*. (Emphasis added; citations and internal quotation marks omitted).

*Id*.  *See also In re Petrobras Sec. Litig.,* 862 F.3d 250, 269 (2d Cir. 2017) ("The ascertainability requirement, as defined in this Circuit, asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries."); *Spagnola*

*v. Chubb Corp*., 264 F.R.D. 76, 97 (S.D.N.Y. 2010) ("Class membership must be readily identifiable such that a court can determine who is in the class and bound by its ruling without having to engage in numerous fact-intensive inquiries.")

Plaintiff omits any explanation about how he will meet this critical requirement. To evaluate ascertainability, it is necessary to consider two aspects of Plaintiff's proposed classes. First, the proposed classes of individuals that received calls before the December 31, 2018 date of the *Hennie* settlement – i.e., how to ascertain the class of individuals "excluded" from the *Hennie* settlement during this co-terminus period. Second, whether Plaintiff sets forth an ascertainable class for calls after January 1, 2019 that are otherwise not subject to the *Hennie* release.[6] As set forth below, Plaintiff fails to provide objective criteria to ascertain a class during either period.

1. <u>Plaintiff failed to provide a basis how to ascertain classes that carveout individuals "excluded from the Hennie settlement" – i.e., any class members whose claims predate the Dec. 31, 2018 end of the *Hennie* release.</u>

For proposed class members that allegedly received calls prior to December 31, 2018, Plaintiff has proffered ICOT164, call records produced by ICOT to establish the defined class. However, as outlined above, these records reflect telephone calls occurring between late 2016 and January 1, 2018 and are temporally contained within the *Hennie* release, which covered August 1, 2016 and December 31, 2018. (*Hennie* Final Order.) Plaintiff nonetheless attempts to include the *Hennie* release period in his class (undoubtedly in an attempt to shoehorn himself into the class definition) through an unexplained effort to carveout from the class those excluded from the *Hennie* settlement.

---

[6] With respect to this second aspect, Plaintiff also is excluded from a class of individuals who may have received calls after January 1, 2019 because the calls Plaintiff alleges to have answered occurred in 2017 and 2018, respectively – not in 2019 or thereafter.

17

Plaintiff utterly fails to explain the existence of a class of individuals during this period that were excluded from the *Hennie* settlement, especially given the fact that the *Hennie* class and Plaintiff's proposed class are both based on an identical factual predicate – claims arising from calls transferred from Prospects DM to ICOT on or before December 31, 2018.  Plaintiff has not presented, nor is ICOT aware, of any factual basis to believe that there is a class of individuals in Plaintiff's proposed class during this period that is excluded from the Hennie release.  As such, ICOT164 is immaterial, and insufficient to ascertain a class of individuals that received calls before December 31, 2018 and are excluded from the *Hennie* settlement.

ICOT can only speculate that Plaintiff may argue that the pre-December 2018 class composition is comprised of individuals who opted-out (or whose mother opted-out) of the *Hennie* settlement and are therefore not subject to the release.  To the extent that Plaintiff may make this argument, the fact remains that five individuals opted out of the *Hennie* settlement. (*Hennie v. ICOT*, N.D. Ga. Case No. 1:18-cv-0245 ECF No. 33-1 at 24.)  Setting class parameters over five individuals fails to meet Rule 23(a) numerosity requirements, as outline below.  In any event, the five claims arising from those opt-outs are properly brought as individual claims, not as resurrected class claims.  *Wai Hoe Liew v. Cohen & Slamowitz, LLP*, 265 F. Supp. 3d 260, 275 (E.D.N.Y.2017) ("If opt-out plaintiffs wish to pursue their individual claims, they must do so individually, and not as a resurrected class asserting claims arising from factual predicates identical to those asserted in the prior class action from which they opted-out."); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 88 (S.D.N.Y. 2001) (class members "must be given an option: to gain the convenience of class membership, or opting-out and suing individually.").

Plaintiff has not – and cannot - provide any criteria to ascertain a class of individuals in his proposed classes whose claims are based on calls received prior to December 31, 2018 and ICOT respectfully requests that the Court deny class certification for all such claims.

> 2.   Plaintiff has also failed to meet his burden to show the existence of an ascertainable class for individuals that allegedly received calls after the *Hennie* release.

To the extent that Plaintiff's proposed classes extend after the December 31, 2018 cut-off, and are not excluded by, the *Hennie* release, Plaintiff similarly fails to provide any foundation to establish an ascertainable class. ICOT concedes that in typical circumstances a Plaintiff relies on call records to ascertain a TCPA class. However, Plaintiff's reliance on the Additional Records is anything but typical, as there has been absolutely no attempt to explain, analyze, or tie those records to an actionable class.

One need look no further than *George v. Shamrock Saloon II LLC*, Case No. 17-CV-6663, 2020 U.S. Dist. LEXIS 5646 (S.D.N.Y. Jan. 13, 2020), the case upon which Plaintiff relies to show ascertainability, to demonstrate the infirmities of Plaintiff's request. The *George* plaintiff relied upon an expert to analyze call records and "the expert found that 67,630 unique cell phone numbers received text messages [] from Defendants without consent." *George*, 2020 U.S. Dist. LEXIS 5646, at *6. The court's finding of ascertainability was specifically predicated on the expert's analysis of the underlying call records:

> That is, namely, each individual's cell phone number can be found on a list, *which Plaintiff's expert used in creating his report*. While Defendants dispute the scope of the class and that they lacked consent to send the messages, they have not otherwise contested the ability to identify the class.

*Id*. at *21 (emphasis added). *George*'s reliance on expert or other foundational analysis can be contrasted with situations where isolated call records fail to meet class certification standards. *See Southwell v. Mortg. Inv'rs Corp. of Ohio*, Case No. C13-1289, 2014 U.S. Dist. LEXIS 112362, at

*8 (W.D. Wash. Aug. 12, 2014) (denying class certification because "[b]eyond the bare fact of the numbers themselves, Plaintiffs present no proof (nor even any argument) that the numbers accurately represent what they purport them to represent.").

In contrast, Mr. Bank's post-*Hennie* class is wholly predicated on the Additional Records, which apparently consist of a spreadsheet emailed to him by an unidentified colleague of an attorney for third-party Prospects DM,[7] and is presented to the Court via a photograph of a computer screen.   Plaintiff's reliance on unauthenticated spreadsheets and records that fail to identify the classes determinatively in a fundamental way establish the existence of a class sufficiently definite to determine membership.

Plaintiff presents no colorable evidence as to what the Additional Records purport to show (other than his conclusory statements, unmoored from any foundation, regarding the date range and number of call transfers included), or how those records are tied to any of the three proposed classes for which he seeks certification.   For example, with respect to his "Do Not Call" class, Plaintiff fails to identify (i) the number of unique phone numbers dialed, (ii) which, if any, phone numbers are on the National Do-Not-Call List, (iii) whether any of the phone numbers are business numbers and not subject to Do-Not-Call rules, and (iv) which, if any, phone numbers received more than one telephone call.[8]   With respect to his New York statutory class, Plaintiff similarly fails to identify any basis to tie which telephone calls can be tied to New York residents that would be qualified to assert such a claim.   Plaintiff's omission of any basis whatsoever to ascertain membership in his three proposed classes is most strikingly underscored by his apparent inability

---

[7] While Plaintiff has indicated that he requested records from Prospects DM though a subpoena, he has tellingly failed to indicate whether Prospects DM formally responded to the subpoena.   Instead, Plaintiff vague indicates that "a colleague of Mr. Allen emailed, to Bank, [the Additional Records]".   (Mot. for Class Cert. at PageID#1444.)

[8] For TCPA Do-Not-Call Violations, only a person "who has received more than one telephone call within any 12-month period" may maintain a cause of action.   47 U.S.C. § 227(c)(5).

to specify or even estimate the size of each of his respective classes.  ICOT posits that Plaintiff cannot do so because there is no established framework to determine membership in the classes.

The Additional Records – lacking any evidentiary foundation, application, or analysis – fail to explain how any of the three proposed classes could be feasibly ascertained.  Simply stated, this failure of proof does not meet ascertainability requirement.[9]

### E.   Plaintiff also fails to meet his burden of proof to show numerosity.

Rule 23(a) requires that the proposed class be so numerous as to make joinder of all the class members 'impracticable. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  "Although evidence of exact size or identity of class members is not required, and the court can make reasonable inferences from available facts, a plaintiff cannot rely on pure speculation or bare allegations in order to demonstrate numerosity." *Midtown Valuation, Inc. v. Capital Alliance Grp*., Case No. 14-cv-1586, 2015 U.S. Dist. LEXIS 117191, *19 (E.D.N.Y. Aug. 11, 2015)(cleaned up).

To support his contention that numerosity is met, Mr. Bank merely states that "numerosity is indisputably satisfied."  (Mot. for Class Cert., PageID#1444.)  Nowhere does Mr. Bank identify or even estimate the number of individuals that may be in any of his three proposed classes.  Mr. Bank's bare allegation and reliance on unanalyzed records without foundation is not sufficient to satisfy the numerosity requirement.

### 1.   Plaintiff cannot show numerosity for class members that received calls prior to the *Hennie* Release.

As Plaintiff readily admits, ICOT has already entered in a settlement that released all claims related to phone calls that occurred on or before December 31, 2019.  (Hennie Final Order.)  Plaintiff's purported list of these class members is ICOT164, a list of telephone calls from 2016

---

[9] To the extent that Plaintiff argues further discovery or retention of an expert in the future could potentially identify putative class members, discovery is closed in this case after having been extended multiple times.  The Court extended Plaintiff a full and fair opportunity to complete discovery.

through January 1, 2018.[10]  However, this list is meaningless to establish the actual number of affected individuals because it does not purport to identify which of the phone calls were not released by the Hennie settlement, nor has Plaintiff provided any evidence that there is a large class of telephone calls that were otherwise excluded from the *Hennie* settlement.

Tellingly, while ICOT164 ends on January 2, 2018 almost a full year before the *Hennie* settlement, it appears that Plaintiff only sought the Additional Records for telephone calls after January 2, 2019.  Plaintiff's own apparent disinterest in obtaining calling records from this period demonstrate the lack of a measurable class.

Using the "exclusion" upon which Plaintiff relies to escape the *Hennie* settlement, opting-out from the settlement (through his mother), there would appear to be five class members pre-*Hennie* settlement.    *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").  Simply put, these five opt-outs are insufficient to exist as a class, and ICOT respectfully moves for a finding of a lack of numerosity to the extent that the class definition includes calls made prior to the Hennie settlement.  Excising these five Hennie opt-outs would remove Mr. Bank's attempt to shoehorn himself into the class, and class certification would be improper because he would no longer fit within the class definition for this additional reason.

    2.    <u>Plaintiff cannot establish numerosity with respect to the post-*Hennie* calls purportedly contained in the Additional Records.</u>

For all other calls, i.e., those post-dating the Hennie settlement, Plaintiff simply relies on the Additional Records.  But the fails to submit any credible evidence or affidavit authenticating the Additional Records or what they represent.  Instead, Plaintiff simply provides conclusory

---

[10] Again, while Plaintiff defines his class to the maximum extent permitted under the statute of limitations, he concedes that Prospects DM only began transferring calls to ICOT (a foundation requisite of his classes that consist of those who received such transferred calls) in late 2016.  (Mot. for Class Cert., PageID#1439.)

characterizations of the date range and number of transfers contained in the document.  Even accepting Plaintiff's speculation as true, Plaintiff's record on class certification is completely devoid of how many potential class members the Additional Records may evidence or tying that information to his class definitions and claims. *E.g., Southwell*, 2014 U.S. Dist. LEXIS 112362, at *8 (call records, without underlying proof or analysis, fail to establish numerosity).

The lack of any information or analysis tying an unauthenticated list to the purported class fails to provide any basis to establish or estimate the size of Plaintiff's proposed classes.  One would expect Plaintiff to have provided an expert or testimony from the custodian of the record to establish a meaningful foundation.  He has not.  The Court cannot now presume the existence of numerosity based on a photograph of a computer screen.

Simply stated, Mr. Bank cannot name, with competent evidence, anyone other than himself the number of individuals which would be in his proposed classes. Given this complete failure of proof, no reasonable inference of numerosity can be made from the evidence submitted by the Plaintiff.

**F.    Certification of the two proposed nationwide classes is precluded because personal jurisdiction is lacking over putative class members that lack a connection to the forum state.**

In addition to Plaintiff's failure to meet his burden of proof to show this matter is proper for class-based adjudication, Plaintiff also fails to establish personal jurisdiction as those putative class members residing outside of New York.  Federal courts within New York recognize that the issue of whether the court possesses specific jurisdiction over the claims of putative non-New York class members is appropriately considered at the class certification stage. *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp.3d 226, 235-236 (S.D.N.Y. 2020), citing *Gonzalez v. Costco Wholesale Corp.*, No. 16 Civ. 2590, 2018 U.S. Dist. LEXIS 171000 (E.D.N.Y. 2018).  In this case,

ICOT respectfully submits that this Court lacks jurisdiction over the claims of non-New York putative class members and those claims should be dismissed.

The Supreme Court's 2017 *Bristol-Myers* decision and its progeny have ruled that a defendant that is not subject to the general jurisdiction of the forum cannot be subject to claims from mass tort plaintiffs whose injuries occurred outside the forum. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1775 (2017). As such, for out-of-state defendants, personal jurisdiction only extends to plaintiffs where specific jurisdiction exists, i.e., the alleged questionable conduct has a connection with the forum state. In the TCPA context, this means that the phone call was directed to the state of New York.

Here, the Court lacks general personal jurisdiction over ICOT because it maintains its principal place of business and is incorporated in the state of Georgia. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (Absent an "exceptional case," "the place of incorporation and principal place of business are paradigm bases for general jurisdiction.") (internal quotations omitted). Specific jurisdiction will only exist for telephone calls directed to putative class members that received telephone calls within the state of New York. However, the proposed class definition extends to a nationwide class of individuals irrespective of any semblance of a connection to the forum state. Therefore, this Court lacks personal jurisdiction over ICOT with respect to the claims of non-New York putative class members.

ICOT recognizes that courts around the country are split on whether the *Bristol-Myers* standard, extends to bar national class actions against out-of-state defendants. *See Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293 (D.C. Cir. 2020) (extending Bristol-Meyers to Rule 23 class actions); *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240 (5th Cir. 2020) (same). *But see*

*Mussat v. Iqvia, Inc.*, 953 F.3d 441 (7th Cir. 2020) (refusing to extend Bristol-Myers to Rule 23 class actions).

However, ICOT respectfully submits that the proper legal reasoning leads to the conclusion that *Bristol-Myers* extends to nationwide class-based claims.  While the Second Circuit has not resolved the issue, district courts within New York recently issued persuasive holdings extending the *Bristol-Myers* holding in this exact manner. *Chizniak v. Certainteed Corp*., Case No. 1:17-cv-1075, 2020 U.S. Dist. LEXIS 17020 (N.D.N.Y. 2020) (dismissing claims of out-of-state plaintiffs due to a lack of connection to New York); *see also Spratley v. FCA US LLC*, Case No. 3:17-CV-62, 2017 U.S. Dist. LEXIS 147492 (N.D.N.Y. 2017); *Gazzillo v. Ply Gem Indus.*, Case No. 1:17-CV-1077, 2018 U.S. Dist. LEXIS 180303, at *4-*5 (N.D.N.Y. 2018).

Based on the foregoing authority, ICOT respectfully submits that the moves, pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss this case for lack of personal jurisdiction as to putative class members whose claims do not arise in New York.

## IV.    CONCLUSION

ICOT respectfully submits that Plaintiff's Motion for Class Certification should be denied.

Respectfully submitted,

*/s/ Lisa Messner*_____
Lisa Messner (Pro Hac Vice)
Ohio Bar No. 0074034
Walter C. Blackham (Pro Hac Vice)
Ohio Bar. No. 0097882
Helen Mac Murray (Pro Hac Vice)
Ohio Bar. No. 0038782
MAC MURRAY & SHUSTER, LLP
6525 West Campus Oval, Suite 210
New Albany, Ohio 43054
T: (614) 939-9955
F: (614) 939-9954
Email: lmessner@mslawgroup.com
         cblackham@mslawgroup.com
         hmacmurray@mslawgroup.com

*Counsel for Defendants*
*ICOT Holdings, LLC and*
*ICOT Hearing Systems, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served on Plaintiff Todd C. Bank via the Court's Electronic-filing (ECF) system which will send notice to all parties on this 26th day of February, 2021.

Respectfully submitted,

*/s/ Lisa Messner*_____
Lisa Messner (Pro Hac Vice)
Ohio Bar No. 0074034
*Counsel for Defendants*
*ICOT Holdings, LLC and*
*ICOT Hearing Systems, LLC*