**EXHIBIT A**

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER

```
                UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NEW YORK


    TODD C. BANK, et al,

       Plaintiff,





    vs.                      CIVIL ACTION NUMBER
                             1:18-CV-02554-AMD-PK
                                  (E.D.N.Y.)





    ICOT HOLDINGS, LLC,
    and ICOT HEARING SYSTEMS, LLC,
    d/b/a LISTENCLEAR,
       Defendant.
    --------------------------/

         The deposition of JACOB ZELLWEGER, a
    witness in the above-entitled cause, taken
    pursuant to Notice and agreement, before Kyle J.
    Saniga, Certified Court Reporter and Notary
    Public, at the Offices of Coastal Court
    Reporting & Video Inc., The Altmayer Building,
    100 Bull Street, Suite 200, Savannah, Georgia,
    on the 8th day of August 2019, commencing at or
    about the hour of 10:11 a.m.
```

COASTAL COURT REPORTING & VIDEO SERVICES
800-791-1100    www.coastalcourt.com

---

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                    2

```
 1   APPEARANCES OF COUNSEL:

 2      FOR THE PLAINTIFF:

 3          TODD C. BANK, ESQUIRE
            Attorney At Law
 4          119-40 Union Turnpike
            Fourth Floor
 5          Kew Gardens, New York 11415
            tbank@toddbanklaw.com
 6          718.520.7125

 7      FOR THE DEFENDANT:

 8          LISA MESSNER, ESQUIRE
            MacMurray & Shuster
 9          6525 West Campus Oval
            Suite 210
10          New Albany, Ohio 43054
            614.939.9955
11          lmessner@mslawgroup.com

12      ALSO PRESENT:
            Matthew Whelan, ListenClear
13          888.895.1162
            mattwhelan@icotdls.com

14

15

16

17                    - - -
```

COASTAL COURT REPORTING & VIDEO SERVICES
800-791-1100    www.coastalcourt.com

---

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                    3

```
                        I N D E X









                                              PAGE

    EXHIBIT INDEX ------------------------------ 4

    OPENING REMARKS AND STIPULATIONS ----------- 5

    DIRECT EXAMINATION:
       By Mr. Bank ----------------------------- 5

    CERTIFICATE -------------------------------- 80
    DISCLOSURE --------------------------------- 81
    DISCLOSURE --------------------------------- 82-84
```

COASTAL COURT REPORTING & VIDEO SERVICES
800-791-1100    www.coastalcourt.com

---

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                    4

```
 1       D O C U M E N T A R Y   E V I D E N C E

 2   NUMBER         DESCRIPTION              PAGE

 3   PX-1      Document (four pages)          59






 7       REPORTER'S NOTE:  PLAINTIFF'S EXHIBIT NUMBER 1
 8               WAS RETAINED BY PLAINTIFF'S COUNSEL.
```

COASTAL COURT REPORTING & VIDEO SERVICES
800-791-1100    www.coastalcourt.com

## Page 45

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER

```
 1    A    No, not that I'm aware of.
 2    Q    Okay.  About how many employees work in
 3  the office here in Savannah?
 4    A    85.
 5    Q    Okay.  So is it fair to say that
 6  roughly 65 work in the Tulsa office?
 7    A    I'd say that was a little high.  Maybe
 8  it's more like 90 45 there, something like that.
 9    Q    90 here and 45 there?
10    A    Yeah.
11    Q    Is there particular reason why
12  ListenClear has two offices rather than just
13  one?
14    A    Our hearing aids are assembled in Tulsa
15  when we purchased them.
16    Q    So it's in Tulsa they assemble the
17  hearing aids?
18    A    Correct.
19    Q    Do they do anything else there?
20    A    We have a call center there.
21    Q    And is that similar to the call center
22  -- I'm sorry, do you have a call center here in
23  Savannah?
24    A    Yes.
25    Q    And are those two call centers similar?
```

COASTAL COURT REPORTING & VIDEO SERVICES
800-791-1100      www.coastalcourt.com

## Page 46

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER

```
 1    A    No.
 2    Q    How are they different?
 3    A    They're just different in the number of
 4  sales reps.
 5    Q    Okay.  What -- and where are the
 6  majority of the sales reps?
 7    A    In Savannah.
 8    Q    Okay.  Other than the numbers being
 9  different, is the work the same for the sales
10  reps in both locations?
11    A    Correct.
12    Q    Other than -- okay.  Other than the
13  ones that we're here for today, the Hennie suit
14  and the Charvat case do you know any other
15  lawsuit against ListenClear relating to
16  telephone calls?
17    A    Yes.
18    Q    And can you tell me about those?
19    A    I don't know if they're lawsuits but I
20  mean they're -- sometimes we get in just, you
21  know, regular e-mail complaints.  Sometimes
22  we've got a letter from a lawyer.  I mean I
23  don't know what the correct definition of an
24  actual lawsuit would be.
25    Q    Uh-huh.
```

COASTAL COURT REPORTING & VIDEO SERVICES
800-791-1100      www.coastalcourt.com

## Page 47

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER

```
 1    A    I'm trying to think.  I mean I don't
 2  know any specifics of them.  We'll get -- you
 3  know, we've got a few complaints and I don't
 4  know, a couple we've settled with, so.
 5    Q    And as part of these complaints have
 6  the people making the complaints alleged they
 7  never gave consent to making -- to receiving
 8  these calls?
 9    A    Depends on the complaint, yeah.  I mean
10  some people say they never gave consent.  I mean
11  that's what most of the letters say.
12    Q    And in response did ListenClear ever
13  try to explain or convince the complainer that
14  there was actually consent?
15    A    Yes.  We send out a little thing that
16  says here's the opt-in info we have for you on
17  file and if you have any other questions please
18  contact somebody.
19    Q    And contact --
20    A    Usually we have -- I know we've sent
21  them out a couple of times but now we've got
22  MacMurray and Shuster take care of it, so.
23    Q    Have you -- has ListenClear ever
24  convinced any of these complainers that they
25  actually had given concept?
```



COASTAL COURT REPORTING & VIDEO SERVICES
800-791-1100      www.coastalcourt.com

## Page 48

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER

```
 1    A    Oh I'm sure.  I mean there's been a lot
 2  of people that we've never -- you know, we've
 3  sent that out and never heard from them again.
 4    Q    But some you have heard from again?
 5    A    Yeah.
 6    Q    And so in those situations is it
 7  correct that they maintain that they had not
 8  consented?
 9    A    Well I don't know if they necessarily
10  maintain they didn't consent.  They just
11  maintain they want money for calls made to them.
12  I mean there's usually -- when you look at those
13  letters there's usually like ten different
14  paragraphs of stuff you don't understand so we
15  would send it to MacMurray and Shuster.
16    Q    Well have you ever had -- have any of
17  these complainers at any point admitted that
18  they actually had consented to receiving the
19  call or calls?
20    A    I mean I don't talk to them or hear
21  from them personally so I have no idea.
22    Q    Did ListenClear ever contact Prospects
23  with respect to any of these complaints?
24    A    Yes.
25    Q    And did Prospects always provide some
```



COASTAL COURT REPORTING & VIDEO SERVICES
800-791-1100      www.coastalcourt.com

**EXHIBIT A**

---

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                           81

```
 1                    D I S C L O S U R E
 2           Pursuant to Article 8.B. of the Rules
 3  and Regulations of the Board of Court Reporting
 4  of the Judicial Council of Georgia, I make the
 5  following disclosure:
 6           I am a Georgia Certified Court Reporter.
 7  I was contacted by my office of Coastal Court
 8  Reporting, Inc. to provide court reporting
 9  services for this deposition.
10           I will not be taking this deposition
11  under any contract that is prohibited by
12  O.C.G.A. 15-14-37(a) and (b).
13           I have no contract/agreement to provide
14  reporting services with any party to the case,
15  any counsel in the case or any reporter or
16  reporting agency from whom a referral might have
17  been made to cover the deposition.
18           I will charge its usual and customary
19  rates to all parties in the case, and a
20  financial discount will not be given to any
21  party to this litigation.
22
23            Kyle J. Saniga
            -----------------------------
24              Date: August 8, 2019
25            Kyle J. Saniga, CCR, B-2038
```

**CCR** COASTAL COURT REPORTING & VIDEO SERVICES
800-791-1100       www.coastalcourt.com

---

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                           82

```
 1                    ERRATA SHEET
 2
 3  CAPTION:  TODD C. BANK, et al.   VS-
              ICOT HOLDINGS, LLC,
 4            and ICOT HEARING SYSTEMS, LLC,
              d/b/a LISTENCLEAR
 5
 6
 7       DECLARATION UNDER PENALTY OF PERJURY
 8           I declare under penalty of perjury
     that I have read the entire transcript
 9   of my Deposition taken in the
     above-captioned matter or the same
10   has been read to me and the same is
     true and accurate, save and except for
11   changes and/or corrections, if any, as
     indicated by me on the COASTAL COURT
12   REPORTING DEPOSITION ERRATA SHEET
     hereof, with the understanding that I
13   offer these changes as if still under
     oath. Signed on the _____ day of
14   _____, 2019.
15
16
17  _____
    JACOB ZELLWEGER (Deponent)
18
19
    SWORN TO and subscribed before me
20  THIS _____ day of _____, 2019
21
22  NOTARY PUBLIC: _____
23
    My commission Expires: _____
24
25
```

**CCR** COASTAL COURT REPORTING & VIDEO SERVICES
800-791-1100       www.coastalcourt.com

---

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                           83

```
 1              DEPOSITION ERRATA SHEET
    Reason for
 2  change:_____
    Page No._____Line No._____Change to:_____
 3  _____
    Reason for
 4  change:_____
    Page No._____Line No._____Change to:_____
 5  _____
    Reason for
 6  change:_____
    Page No._____Line No._____Change to:_____
 7  _____
    Reason for
 8  change:_____
    Page No._____Line No._____Change to:_____
 9  _____
    Reason for
10  change:_____
    Page No._____Line No._____Change to:_____
11  _____
    Reason for
12  change:_____
    Page No._____Line No._____Change to:_____
13  _____
    Reason for
14  change:_____
    Page No._____Line No._____Change to:_____
15  _____
    Reason for
16  change:_____
    Page No._____Line No._____Change to:_____
17  _____
    Reason for
18  change:_____
    Page No._____Line No._____Change to:_____
19  _____
    Reason for
20  change:_____
    Page No._____Line No._____Change to:_____
21  _____
    Reason for
22  change:_____
    Page No._____Line No._____Change to:_____
23  _____
24  SIGNATURE:_____DATE:_____
25              JACOB ZELLWEGER
```

**CCR** COASTAL COURT REPORTING & VIDEO SERVICES
800-791-1100       www.coastalcourt.com

---

TODD C. BANK vs ICOT HOLDINGS, LLC
1:18-CV-02554 - JACOB ZELLWEGER                           84

```
 1              DEPOSITION ERRATA SHEET
    Reason for
 2  change:_____
    Page No._____Line No._____Change to:_____
 3  _____
    Reason for
 4  change:_____
    Page No._____Line No._____Change to:_____
 5  _____
    Reason for
 6  change:_____
    Page No._____Line No._____Change to:_____
 7  _____
    Reason for
 8  change:_____
    Page No._____Line No._____Change to:_____
 9  _____
    Reason for
10  change:_____
    Page No._____Line No._____Change to:_____
11  _____
    Reason for
12  change:_____
    Page No._____Line No._____Change to:_____
13  _____
    Reason for
14  change:_____
    Page No._____Line No._____Change to:_____
15  _____
    Reason for
16  change:_____
    Page No._____Line No._____Change to:_____
17  _____
    Reason for
18  change:_____
    Page No._____Line No._____Change to:_____
19  _____
    Reason for
20  change:_____
    Page No._____Line No._____Change to:_____
21  _____
    Reason for
22  change:_____
    Page No._____Line No._____Change to:_____
23  _____
24  SIGNATURE:_____DATE:_____
25              JACOB ZELLWEGER
```

**CCR** COASTAL COURT REPORTING & VIDEO SERVICES
800-791-1100       www.coastalcourt.com

### Page 1

```
 2  IN THE UNITED STATES DISTRICT COURT FOR THE
    EASTERN DISTRICT OF NEW YORK
 3  ----------------------------------------X
    TODD C. BANK, Individually and on
 4  Behalf of All Others Similarly Situated,
 5          Plaintiff,
 6                              Index No.
                                1:18-cv-02554-AMD-PK
 7
            -against-
 8
    ICOT HOLDINGS, LLC, and ICOT
 9  HEARING SYSTEMS, LLC,
10          Defendants.
    ----------------------------------------X
11  ICOT HEARING SYSTEMS, LLC,
12          Third-Party Plaintiff,
13          -against-
14  PROSPECTS DM, INC.,
15          Third-Party Defendant.
    ----------------------------------------X
16
                    May 7th, 2019
17                  2:00 p.m.
18
19
20          EXAMINATION BEFORE TRIAL of the
21  Plaintiff, TODD C. BANK, taken by the
22  Defendants, pursuant to a Notice, held at the
23  offices of ESQUIRE DEPOSITION SOLUTIONS, 8900
24  Sutphin Boulevard, Suite 308C, Jamaica, New
25  York 11435, before AMANDA ALVAREZ, a
```

### Page 2

```
 2  Professional Court Reporter and a Notary Public
 3  of the State of New York.
```

### Page 3

```
 2  A P P E A R A N C E S
 3
    TODD C. BANK, ATTORNEY AT LAW, P.C.
 4  Attorneys for the Plaintiff
            119-40 Union Turnpike, Fourth Floor
 5          Kew Gardens, New York 11415
 6  BY: TODD C. BANK, ESQ.
        P: (718) 520-7125
 7      E: tblaw101@aol.com
 8
 9  MAC MURRAY & SHUSTER LLP
    Attorneys for the Defendants
10          6525 West Campus Oval, Suite 210
            New Albany, Ohio 43054
11
    BY: HELEN MAC MURRAY, ESQ.
12      P: (614) 939-9955
        F: (614) 939-9954
13      E: hmacmurray@mslawgroup.com
```

### Page 4

```
 2              FEDERAL STIPULATIONS
 3
 4          IT IS HEREBY STIPULATED AND AGREED by
 5  and between the attorneys for the respective
 6  parties herein, that filing and sealing be and
 7  the same are hereby waived.
 8
 9          IT IS FURTHER STIPULATED AND AGREED
10  that all objections, except as to form of the
11  question, shall be reserved to the time of the
12  trial.
13
14          IT IS FURTHER STIPULATED AND AGREED
15  that the within deposition may be sworn to and
16  signed before any officer authorized to
17  administer an oath, with the same force and
18  effect as if signed and sworn to before this
19  Court.
```



Page 5

1
2  T O D D  C.  B A N K, having been first duly
3  sworn by a Notary Public of the State of New
4  York, testified as follows:
5  EXAMINATION BY MS. MAC MURRAY:
6      Q.   State your name for the record,
7  please.
8      A.   Todd C. Bank.
9      Q.   State your address for the record,
10 please.
11     A.   119-40 Union Turnpike, Fourth
12 Floor, Kew Gardens, New York 11415.
13     Q.   I am Helen Mac Murray, as you know,
14 and I represent the defendants ICOT Holdings,
15 LLC, and ICOT Hearing Systems, LLC.  You are
16 the named plaintiff in this action, and we are
17 here to take your deposition regarding the
18 facts alleged in the complaint.
19     A.   Okay.
20     Q.   You are an attorney at law, so I'm
21 not going to bother with any of the
22 requirements and understandings and those kinds
23 of things.  I will ask if there are any
24 medications, illnesses or conditions that would
25 prevent you from being able to fully understand

Page 6

1               T. BANK
2  my questions today and tell the truth.
3      A.   I don't believe so.
4      Q.   How long have you been an attorney?
5      A.   For -- a licensed attorney?
6      Q.   Yes.
7      A.   Twenty-two years.
8      Q.   Where did you go to law school?
9      A.   Brooklyn Law School.
10     Q.   Have you always practiced on your
11 own?
12     A.   No.
13     Q.   What other types of legal practices
14 have you had besides your own practice, just
15 generally?
16     A.   I worked for a couple of law firms
17 after law school and also had some -- a smaller
18 series of very temporary and/or part-time
19 positions also soon after law school.
20     Q.   How long have you had your own
21 individual practice?
22     A.   Just about 20 years.
23     Q.   Today, can you give me a general
24 idea of the types of law that you practice?
25     A.   I practice mostly but not

Page 7

1               T. BANK
2  exclusively in the area of telemarketing
3  violations.
4      Q.   Is that where you are always a
5  plaintiff, or have you also handled cases where
6  you are an attorney and not a party in the
7  suit?
8      A.   I have represented clients, if I
9  understand your question correctly.
10     Q.   Yes.
11     A.   Yes.
12     Q.   Are you licensed in the State of
13 New York?
14     A.   Yes.
15     Q.   Are you licensed in any other
16 states?
17     A.   Not in any other state court
18 systems.
19     Q.   Have you appeared in any other
20 state or federal courts?
21     A.   Yes.
22     Q.   In a pro hac vice type of
23 situation?
24     A.   Among other ways, yes.
25     Q.   Which of the other ways?

Page 8

1               T. BANK
2      A.   Well, I'm admitted in the District
3  of Connecticut.  I'm admitted in a number of
4  federal circuits.  I am also admitted in the
5  United States Supreme Court.  So in cases like
6  that, I obviously would have to apply for a pro
7  hac vice.
8      Q.   Let's talk about today's case.  In
9  your complaint, you talk about two phone calls
10 that you received; is that correct?
11     A.   Two calls among others, yes.
12     Q.   When you say "among others," can
13 you describe what you are talking about,
14 please?
15     A.   Sure.  As alleged in the further
16 amended complaint -- and when I do say
17 "complaint," I mean the amended complaint is
18 the only operable complaint, of course.
19     Q.   That's fair.
20     A.   I do allege in the complaint that
21 there were dozens of calls that had the same
22 caller ID information as did the first of the
23 two calls that I answered and that I am
24 specifically alleging in the complaint.
25     Q.   Did you answer more than the two



Case 1:18-cv-02554-AMD-PK   Document 167-1   Filed 02/26/21   Page 6 of 11 PageID #: 1611

EXHIBIT A

TODD C. BANK
TODD C. BANK vs ICOT HOLDINGS

May 07, 2019
13–16

Page 13

1              T. BANK
2  so that other people don't break the law
3  offensive.  Just like if I didn't lock my door
4  at night and somebody broke into my home, I
5  would assume -- I would hope that the police
6  would still arrest that person and that I would
7  be able to sue that person for any damages,
8  even if I was foolish for leaving my door open
9  as a practical matter.
10     Q.   What telephone number are you
11  talking about?
12     A.   The number is (516) 489-0961, and
13  it's -- I either alleged that in complaint --
14  but if not, I think it's elsewhere documented.
15  I don't think it is alleged in the complaint,
16  actually.
17     Q.   Say the number again, please.
18     A.   Sure.  It's (516) 489-0961.
19     Q.   The number that is alleged in the
20  complaint, (516) 217-3754, what number is that?
21     A.   That is the caller ID number that
22  appeared on the dozens of calls that I
23  described as well as the first two calls that I
24  answered that led me to speak to someone who
25  identified himself as Mathew Tollis.

Page 14

1              T. BANK
2     Q.   I am going to refer to your
3  landline as (516) 489-0961.  Is that okay?
4     A.   Certainly.
5     Q.   The landline telephone number, do
6  you have more than one or is it just --
7     A.   There are multiple physical
8  telephones.
9     Q.   Can you tell me where they are
10  located?
11     A.   They're in my mother's home, if
12  that's what you mean.
13     Q.   What that address is that?  Is that
14  the address you gave the court reporter?
15     A.   No.
16     Q.   The address that you gave the court
17  reporter, what is the telephone number there?
18     A.   Well, it's just an unrelated
19  number.  I'm not sure what that number has to
20  do with the (516) 489-0961.
21     Q.   I don't know until I get what it is
22  and figure it out so --
23     A.   Well, I'm not sure -- figure out
24  what, though?
25     Q.   I get to ask the questions, and

Page 15

1              T. BANK
2  you're the deponent so --
3     A.   I understand --
4     Q.   And this is --
5     A.   You are not allowed to ask
6  anything.
7     Q.   This is a telemarketing --
8     A.   I understand.
9     Q.   I am asking about your telephone
10  numbers you received calls at.
11     A.   I understand, but there is no
12  similarity.  In other words, just by way of
13  example, if I understand, it's not like the
14  number I have at home is (516) 498-0961 and
15  there might be some question of they were
16  trying to reach that number and reached my
17  mother's number or something like that, if
18  that's what you are asking about.
19     Q.   I don't know what the circumstances
20  may be, but I certainly think it's a relevant
21  question.
22     A.   Well, you have my number in any
23  event.  It's on my letterhead.
24     Q.   Thank you.  Who resides at the home
25  where the (516) 489-0961 is?

Page 16

1              T. BANK
2     A.   Well, my mother is the sole
3  full-time resident, and I spend what I consider
4  a large or hefty amount of time at that
5  residence as well.
6     Q.   Do you visit?  Do you spend
7  evenings and nights there?
8     A.   I sleep over on a regular basis,
9  not a majority of nights but a sizable
10  minority.
11     Q.   Not trying to pry in your personal,
12  but where do you spend other nights, then?
13     A.   In the address that I gave earlier,
14  Kew Gardens.
15     Q.   The Kew Gardens address, is that a
16  commercial building or a residential building?
17     A.   Residential.
18     Q.   The 0961 number that you indicated
19  is a landline and is your mother's full-time
20  residency, correct?
21     A.   That's correct.
22     Q.   Is your mother married?
23     A.   No.
24     Q.   She is not?
25     A.   No.



Case 1:18-cv-02554-AMD-PK   Document 167-1   Filed 02/26/21   Page 7 of 11 PageID #: 1612

EXHIBIT A

TODD C. BANK
TODD C. BANK vs ICOT HOLDINGS

May 07, 2019
21–24

Page 21

1             T. BANK
2   class action.
3       Q.   Based on the frequency that you
4   said that you visit your mother, is it common
5   for you to answer the phone when it's ringing
6   and you are there?
7       A.   Define "common."
8       Q.   More times than not, you answer it.
9       A.   No.
10      Q.   It is not common?
11      A.   Not under that definition you just
12  gave me.
13      Q.   Do you know how long your mother
14  has had that number?
15      A.   I do.
16      Q.   How long?
17      A.   About 49 years.
18      Q.   You then spoke with at least two
19  individuals from these two calls that are
20  discussed in the amended complaint; is that
21  right?
22      A.   Yes.
23      Q.   The prerecorded part, was that,
24  again, substantially similar with the two
25  calls?

Page 22

1             T. BANK
2       A.   Yes.
3       Q.   So they were both about the hearing
4   aid industry?
5       A.   Well, about hearing aids. I don't
6   know if I would characterize it as being about
7   the industry but certainly about hearing aids.
8       Q.   So I was trying to distinguish
9   between one hearing aid company or just a
10  general introduction to hearing aids.
11      A.   Both of the calls were about
12  hearing aids or hearing loss and "Press 1 or
13  say yes if you want to speak to somebody about
14  hearing aids or hearing loss." I don't
15  remember the exact wording, but I do think I
16  have some of it written down.
17      Q.   Can you clarify whether or not you
18  recall if a company name was mentioned in the
19  prerecorded part of the call?
20      A.   I would have to look at my notes
21  because, offhand, I don't remember.
22      Q.   But you were subsequently
23  transferred to a human being, correct?
24      A.   Yes.
25      Q.   The first call, was it June 30th,

Page 23

1             T. BANK
2   2017?
3       A.   That's correct.
4       Q.   To the best of your recollection,
5   can you describe how that call went?
6       A.   From the time I answered the phone?
7       Q.   No. From the time you started
8   talking to the human being.
9       A.   I spoke to a human being who
10  identified himself as Mathew Tollis. We
11  discussed hearing aids or the needs that I
12  might have had regarding possibly obtaining the
13  hearing aid. He identified the name of the
14  company and/or its website, which I think are
15  kind of one and the same: Listenclear.com. I
16  provided him with some correct identification
17  information and some incorrect identification
18  information. I think we had a fairly lengthy
19  discussion. I gave him an e-mail address that
20  I do use. In other words, it was not a made-up
21  e-mail address because either I asked him or he
22  told me that he would send me an e-mail
23  relating to our conversation. That's basically
24  it.
25      Q.   Did you have to take some

Page 24

1             T. BANK
2   affirmative action -- like you said, "press 1"
3   -- to get to Mr. Tollis?
4       A.   I believe I did.
5       Q.   I am looking at you, and I'm not
6   seeing you wearing any hearing aids. Is that
7   right?
8       A.   No, I am not.
9       Q.   Have you ever worn hearing aids?
10      A.   Not that I recall.
11      Q.   Do you have any interest in
12  information about hearing about hearing aids
13  personally at this time?
14      A.   Not -- only mildly.
15      Q.   So you are saying you have a mild
16  interest --
17      A.   Very mild.
18      Q.   You have a very mild interest in
19  hearing aids?
20      A.   Correct, yes.
21      Q.   Is that why you pressed 1?
22      A.   No -- let me just clarify. I don't
23  remember if I pressed 1. I believe I did
24  something. I am virtually certain I did
25  something. It's probably in my notes. I



800.211.DEPO (3376)
EsquireSolutions.com

Case 1:18-cv-02554-AMD-PK  Document 167-1  Filed 02/26/21  Page 8 of 11 PageID #: 1613

EXHIBIT A

TODD C. BANK  
TODD C. BANK vs ICOT HOLDINGS

May 07, 2019  
53–55

Page 53

## CERTIFICATE

I, AMANDA ALVAREZ, a Shorthand Reporter and Notary Public of the State of New York, do hereby certify:

That, TODD BANK, the witness whose examination is hereinbefore set forth, was duly sworn, and that such examination is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage; and that I am no way interested in the outcome of this matter.



_____  
AMANDA ALVAREZ

Page 54

ESQUIRE ERRATA SHEET  
Esquire Job ID: J4107391  
Case Caption: TODD C. BANK, Individually and on Behalf of All Others Similarly Situated vs. ICOT HOLDINGS, LLC and ICOT HEARING SYSTEMS, LLC,

DECLARATION UNDER PENALTY OF PERJURY  
I declare under penalty of perjury that I have read the entire transcript of my Deposition taken in the above-captioned matter or the same has been read to me and the same is true and accurate, save and except for changes and/or corrections, if any, as indicated by me on the DEPOSITION ESQUIRE ERRATA SHEET hereof, with the understanding that I offer these changes as if still under oath. Signed on the 7th day of May, 2019.

_____  
TODD C. BANK

DEPOSITION ERRATA SHEET  
Page No.___Line No.___Change to:_____  
_____  
Reason for change:_____  
Page No.___Line No.___Change to:_____  
_____  
Reason for change:_____  
Page No.___Line No.___Change to:_____  
_____  
Reason for change:_____  
Page No.___Line No.___Change to:_____  
_____  
Reason for change:_____  
Page No.___Line No.___Change to:_____  
_____  
Reason for change:_____  

Page 55

Page No.___Line No.___Change to:_____  
_____  
Reason for change:_____  
SIGNATURE:_____DATE:_____  
           TODD C. BANK  
DEPOSITION ERRATA SHEET  
Page No.___Line No.___Change to:_____  
_____  
Reason for change:_____  
Page No.___Line No.___Change to:_____  
_____  
Reason for change:_____  
Page No.___Line No.___Change to:_____  
_____  
Reason for change:_____  
Page No.___Line No.___Change to:_____  
_____  
Reason for change:_____  
Page No.___Line No.___Change to:_____  
_____  
Reason for change:_____  
Page No.___Line No.___Change to:_____  
_____  
Reason for change:_____  
SIGNATURE:_____DATE:_____  
           TODD C. BANK

Page 1

```
 1
 2          UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK
 3          Case No. 1:18-cv-02554-AMD-PK
    ------------------------------------------ x
 4  TODD C. BANK, Individually and on Behalf of All
    Others Similarly Situated,
 5
 6                    Plaintiff,
 7       -against-
 8  ICOT HOLDINGS, LLC, and ICOT HEARING SYSTEMS, LLC,
 9                    Defendants.
10  ------------------------------------------ x
11  ICOT HEARING SYSTEMS, LLC,
12                    Third-Party Plaintiff,
13       -against-
14  PROSPECTS DM INC.,
15                    Third-Party Defendant.
16  ------------------------------------------ x
17       EXAMINATION BEFORE TRIAL of a Nonparty
18  Witness, MICHELE BANK, taken by the Defendant,
19  pursuant to a Subpoena, held at 561 Pacing Way,
20  Westbury, New York 11590, on September 5, 2019, at
21  11:00 a.m., before a Notary Public of the State of
22  New York.
23
24
25
```

Page 2

```
 1
 2  A P P E A R A N C E S:
 3
 4       TODD C. BANK
            Attorneys for Plaintiff
 5          119-40 Union Turnpike, 4th Floor
            Kew Gardens, New York 11415
 6
         TODD C. BANK, ESQ.
 7
 8
         MAC MURRAY & SHUSTER, LLP
 9          Attorneys for Defendants
            6525 West Campus Oval, Suite 210
10          New Albany, Ohio 43054
11       BY:   LISA MESSNER, ESQ.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1
 2               S T I P U L A T I O N S:
 3
 4       IT IS HEREBY STIPULATED AND AGREED by
 5  and between the attorneys for the respective parties
 6  herein, that filing, sealing and certification, and
 7  the same are, hereby waived.
 8
 9       IT IS FURTHER STIPULATED AND AGREED that
10  all objections except as to the form of the
11  question, shall be reserved to the time of the
12  trial.
13
14       IT IS FURTHER STIPULATED AND AGREED that
15  the within deposition may be signed and sworn to by
16  an officer authorized to administer an oath, with
17  the same force and effect as if signed and sworn to
18  before the Court.
19
20
21
22
23
24
25
```

Page 4

```
 1
 2   M I C H E L E  B A N K, the witness herein, having
 3   been first duly sworn before a Notary Public of the
 4   State of New York, was examined and testified as
 5   follows:
 6   EXAMINATION BY
 7   MS. MESSNER:
 8      Q.  Please state your name for the record.
 9      A.  Michele Bank.
10      Q.  What is your address?
11      A.  561 Pacing Way, Westbury, New York 11590.
12      Q.  Good morning.  Could you please state your
13   full name for the record.
14      A.  Yes.  Michele Bank.
15      Q.  Ms. Bank, my name is Lisa Messner.  I am
16   representing the defendants in a lawsuit that has
17   been brought by Mr. Bank, and I am going to be
18   asking you some questions today in connection with
19   that case.  Have you ever had occasion to have your
20   deposition taken before?
21      A.  No.
22      Q.  I am just going to kind of explain a
23   little bit of the process just so that you could
24   kind of be aware of what is going to happen today.
25   I am going to ask you some questions.  The court
```



Page 5

1          M. BANK
2  reporter is typing down your answers.  So try, as
3  best as you can, to verbalize those answers clearly
4  for her.  That will help make for a clear
5  transcript.
6     I don't anticipate taking much of your time
7  today, but if you should need or wish for a break at
8  any time for any reason, just let me know and I'll
9  be happy to accommodate that.  If I ask you a
10 question that you don't understand or don't hear,
11 please let me know and I'll be happy to rephrase or
12 restate that question.
13    A.  Okay.
14    Q.  So Ms. Bank, what is your current address?
15    A.  561 Pacing Way, Westbury, New York.
16    Q.  How long have you lived there?
17    A.  Eleven years.
18    Q.  Does anyone live there with you?
19    A.  No.
20    Q.  Are you currently working?
21    A.  No, I am not.
22    Q.  Are you taking any medications today or do
23 you have any medical conditions that would impair
24 your ability to testify today?
25    A.  No.

Page 6

1          M. BANK
2    Q.  So I had described at the beginning that
3  this matter involves a lawsuit brought by Mr. Bank.
4  Do you have any understanding what the lawsuit is
5  about?
6    A.  Somewhat.
7    Q.  Can you tell me what your understanding of
8  the lawsuit is about?
9    A.  I guess it's about a robocall and from an
10 ear company, hearing aid company, and that's it.
11    Q.  Is the telephone number of (516)489-0961
12 your telephone number?
13    A.  Yes, it is.
14    Q.  How long have you had that telephone
15 number?
16    A.  For as long as I am living here.
17    Q.  So that was for as long as you were living
18 there, would that be the 11 years?
19    A.  Yes.
20    Q.  Is that telephone a land line?
21    A.  Yes, it is.
22    Q.  What telephone company provides the
23 telephone land for that telephone number?
24    A.  Cablevision/Optimum.
25    Q.  Do you pay the bills associated with that

Page 7

1          M. BANK
2  telephone number?
3    A.  Yes, I do.
4    Q.  Is the telephone number (516) 489-0961 on
5  the National Do Not Call Registry?
6    A.  I don't know.
7    Q.  You don't recall taking steps to place
8  that number on the National Do Not Call Registry?
9    A.  I might have.  I am not sure.
10   Q.  Mr. Bank is your son, correct?
11   A.  Correct.
12   Q.  How often does your son -- when I refer to
13 your son, I am referring to Mr. Bank.  How often
14 does he visit you at your home?
15   A.  Most weekends.
16   Q.  How often does he use your telephone?
17   A.  It varies.
18   Q.  When he visits, does he have your
19 permission to answer your telephone?
20   A.  Yes, he does.
21   Q.  Does anyone else use your telephone
22 outside of you or Mr. Bank?
23   A.  No.
24   Q.  So in this lawsuit I will represent to you
25 that Mr. Bank alleges to have received at least two

Page 8

1          M. BANK
2  phone calls from my client related to hearing aids,
3  one being on June 30, 2017, and one being on May 30,
4  2018.  Do you recall being present for either of
5  those calls?
6    A.  No.
7    Q.  Do you remember anything in particular
8  about either of those calls?
9    A.  No, I don't.
10   Q.  Do you have caller ID on your phone?
11   A.  Yes.
12   Q.  Do you recall answering any telephone
13 calls with the caller ID of (516) 217-3754?
14   A.  No, I don't.
15   Q.  Do you recall ever receiving any calls to
16 your home regarding someone trying to sell hearing
17 aids?
18   A.  Not really, no.
19   Q.  Do you have an email address?
20   A.  Yes, I do.
21   Q.  Do you have more than one email address?
22   A.  No.
23   Q.  What is your email address?
24   A.  Shelbank1@aol.com.
25   Q.  Does anyone other than you use your email?



Case 1:18-cv-02554-AMD-PK   Document 167-1   Filed 02/26/21   Page 11 of 11 PageID #: 1616

**EXHIBIT A**

MICHELE BANK
TODD C. BANK v ICOT HOLDINGS

September 05, 2019
13–16

**Page 13**

```
1                    M. BANK
2              I N D E X
3   WITNESS        EXAMINATION BY        PAGE
4   Michele Bank   Ms. Messner            4
5
...
25
```

**Page 14**

```
1                    M. BANK
2              C E R T I F I C A T E
3        I, CHRISTINA FERRARO, a shorthand
4   reporter and Notary Public within and for the State
5   of New York, do hereby certify:
6        That the witness whose testimony is
7   hereinbefore set forth was duly sworn by me, and the
8   foregoing transcript is a true record of the
9   testimony given by such witness.
10       I further certify that I am not related to
11  any of the parties to this action by blood or
12  marriage, and that I am in no way interested in the
13  outcome of this matter.
14
15
16
17
18  _____
19         CHRISTINA FERRARO
20
...
25
```

**Page 15**

```
1                    M. BANK
2              ESQUIRE ERRATA SHEET
3
4   Esquire Job ID: 4450424
5   Case Caption: TODD C. BANK, Individually and on
6   Behalf of All Others Similarly Situated vs. ICOT
7   HOLDINGS LLC, et al.
8
9        DECLARATION UNDER PENALTY OF PERJURY
10
11       I declare under penalty of perjury that I have
12  read the entire transcript of my Deposition taken
13  in the above-captioned matter or the same
14  has been read to me and the same is true and
15  accurate, save and except for changes and/or
16  corrections, if any, as indicated by me on the
17  DEPOSITION ESQUIRE ERRATA SHEET hereof, with the
18  understanding that I offer these changes as if still
19  under oath.  Signed on the _____ day of
20  _____, 20___.
21  _____
22           MICHELE BANK
23
...
25
```

**Page 16**

```
1                    M. BANK
2              DEPOSITION ERRATA SHEET
3   Page No._____Line No._____Change to:_____
4   _____
5   Reason for change:_____
6   Page No._____Line No._____Change to:_____
7   _____
8   Reason for change:_____
9   Page No._____Line No._____Change to:_____
10  _____
11  Reason for change:_____
12  Page No._____Line No._____Change to:_____
13  _____
14  Reason for change:_____
15  Page No._____Line No._____Change to:_____
16  _____
17  Reason for change:_____
18  Page No._____Line No._____Change to:_____
19  _____
20  Reason for change:_____
21  Page No._____Line No._____Change to:_____
22  _____
23  Reason for change:_____
24       SIGNATURE:_____DATE:_____
25           MICHELE BANK
```