UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated, | 1:18-cv-02554-AMD-PK |
| *Plaintiff*, | |
| -against- | |
| ICOT HOLDINGS, LLC, and ICOT HEARING SYSTEMS, LLC, | |
| *Defendant*s. | |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

TODD C. BANK,
 ATTORNEY AT LAW, P.C.
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125
By Todd C. Bank

*Counsel to Plaintiff*

**TABLE OF CONTENTS**

<div align="right"><strong>Page</strong></div>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATUTES AND RULES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

AGENCY AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RESPONSE TO CERTAIN ASSERTIONS OF DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      PLAINTIFF IS A CLASS MEMBER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      "Called Parties," Who Have Standing Under the
                TCPA, Include a Person Who is not the Subscriber
                to a Telephone Number but is a Regular User of it  . . . . . . . . . . . . . . . . . . 4

        B.      Bank was a "Called Party"  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.      Defendants Feign Concern That the Interests of the Class Members
                Would Not be Given Sufficient Attention After Class Certification . . . . . . . . . . 9

II.     DEFENDANTS' CLASS SETTLEMENT IN ANOTHER
        CASE DOES NOT PRECLUDE CLASS CERTIFICATION . . . . . . . . . . . . . . . . . . 17

III.    THE RECORDS OF DEFENDANTS' TELEMARKETING
        COMPANY SUPPORT CLASS CERTIFICATION  . . . . . . . . . . . . . . . . . . . . . . . 18

IV.     THE CLASS PERIODS ARE PROPER BUT
        MAY BE NARROWED BY THE COURT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.      DEFENDANTS' ARGUMENTS FOR DISMISSAL OF THE CLAIMS OF
        THE OUT-OF-STATE CLASS MEMBERS ARE PLAINLY DISHONEST . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

# TABLE OF AUTHORITIES

**Page**

**STATUTES AND RULES**

47 U.S.C. § 227 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 32

Fed. R. Civ. P. 12(g)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 14, 15, 17, 26, 27, 38, 30, 31

Fed. R. Evid. 901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

N.Y. C.P.L.R. 901(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**CASES**

*Alea London Ltd. v. American Home Servs., Inc.*,
   638 F.3d 768 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ansoumana v. Gristede's Operating Corp.*,
   201 F.R.D. 81 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

*Balverde v. Lunella Ristorante, Inc.*,
   No. 15-5518, 2017 WL 1405786,
   2017 U.S. Dist. LEXIS 59778
   (S.D.N.Y. Apr. 19, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Banarji v. Wilshire Consumer Capital, LLC*,
   No. 14-cv-2967, 2016 WL 595323
   (S.D. Calif. Feb. 12, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Bank v. Independence Energy Group LLC*,
   736 F.3d 660 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Berman v. Freedom Financial Network, LLC*,
   400 F. Supp. 3d 964 (N.D. Calif. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Biscone v. JetBlue Airways Corp.*,
   681 F. Supp. 2d 383 (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Bristol-Myers Squibb Co. v. Superior Court of California,*
  *San Francisco County,*
   137 S. Ct. 1773 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 29, 30, 31, 32

Page

**Table of Authorities; Cases (*cont'd*)**

*Brotz v. Simm Associates, Inc.*,
  No. 17-cv-1603, 2018 WL 4963692
  (M.D. Fla. Oct. 15, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32-33

*Chen-Oster v. Goldman, Sachs & Co.*,
  877 F. Supp. 2d 113 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Chizniak v. CertainTeed Corp.*,
  No. 17-cv-1075, 2020 WL 495129
  (N.D.N.Y. Jan. 30, 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*Cruson v. Jackson Nat'l Life Ins. Co.*,
  954 F.3d 240 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 27-28, 29, 30, 31

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Dover v. British Airways, PLC (UK)*,
  321 F.R.D. 49 (E.D.N.Y. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Gazzillo v. Ply Gem Indus.*,
  No. 17-cv-1077, 2018 WL 5253050
  (N.D.N.Y. Oct. 22, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*George v. Shamrock Saloon II LLC*,
  No. 17-cv-6663, 2020 WL 133621
  (S.D.N.Y. Jan. 13, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 22-23

*Gibson v. Chrysler Corp.*,
  261 F.3d 927 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Goldsmith v. Correct Care Sols.*,
  No. 12-cv-3738, 2015 WL 2437332
  (N.D. Ill. Mar. 31, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

*Hager v. Omnicare, Inc.*,
  No. 19-cv-00484, 2020 WL 5806627
  (S.D. W. Va. Sept. 20, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*In re Bayshore Ford Trucks Sales, Inc.*,
  471 F.3d 1233 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Page

**Table of Authorities; Cases (*cont'd*)**

*In re Checking Account Overdraft Litig.*,
   780 F.3d 1031 (11th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*In re Chicago Bridge & Iron Co. N.V. Securities Litig.*,
   No. 17-cv-01580, 2019 WL 5287980
   (S.D.N.Y. Oct. 18, 2019), *adopted in part*,
   2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Restasis (Cyclosporine Ophthalmic
   Emulsion) Antitrust Litig.*,
   335 F.R.D. 1 (E.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Vitamin C Antitrust Litig.*,
   279 F.R.D. 90 (E.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kalish v. Karp & Kalamotousakis, LLP*,
   246 F.R.D. 461 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lee v. loanDepot.com, LLC*,
   No. 14-cv-01084, 2016 WL 4382786
   (D. Kan. Aug. 17, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Leyse v. Bank of America, N.A.*,
   804 F.3d 316 (3d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 12, 12-13

*Leyse v. Lifetime Entm't Servs.*,
   No. 13-cv-5794, 2015 WL 5837897
   (S.D.N.Y. Sept. 22, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5, 6, 9

*Liew v. Cohen & Slamowitz, LLP*,
   265 F. Supp. 3d 260 (E.D.N.Y.2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Lincoln v. Ford Motor Co.*,
   No. 19-cv-2741, 2020 WL 5820985
   (D. Md. Sept. 20, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*M.A. by Ashear v. NRA Group, LLC*,
   No. 17-cv- 7483, 2019 WL 2357767
   (E.D.N.Y. June 14, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Massey v. On-Site Manager, Inc.*,
   285 F.R.D. 239 (E.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Page

**Table of Authorities; Cases (*cont'd*)**

*Malautea v. Suzuki*,
    987 F.2d 1536 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Mims v. Arrow Financial Services, LLC*,
    565 U.S. 368 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Molock v. Whole Foods Mkt. Grp., Inc.*,
    952 F.3d 293 (D.C. Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 29, 30, 31

*Morangelli v. Chemed Corp.*,
    275 F.R.D. 99 (E.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Morlan v. Universal Guar. Life Ins. Co.*,
    298 F.3d 609 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Moya v. United States Dept. of Homeland Security*,
    975 F.3d 120 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Mussat v. IQVIA, Inc.*,
    953 F.3d 441 (7th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Napoli-Bosse v. General Motors LLC*,
    453 F. Supp. 3d 536 (D. Conn. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Osorio v. State Farm Bank, F.S.B.*,
    746 F.3d 1242 (11th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

*Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Rauch v. Vale S.A.*,
    378 F. Supp. 3d 198 (E.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Rivera v. Harvest Bakery Inc.*,
    312 F.R.D. 254 (E.D.N.Y. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Soppet v. Enhanced Recovery Co.*,
    679 F.3d 637 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

**Page**

**Table of Authorities; Cases (*cont'd*)**

*Sosna v. Iowa*,
    419 U.S. 393 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Southwell v. Mortg. Inv'rs Corp. of Ohio*,
    No. 13-cv-1289, 2014 WL 3956699
    (W.D. Wash. Aug. 12, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Spratley v. FCA US LLC*,
    No. 17-cv-0062, 2017 WL 4023348
    (N.D.N.Y. Sept. 12, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 32

*United States v. Bari*,
    599 F.3d 176 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Vayner*,
    769 F.3d 125 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Velazquez v. State Farm Fire and Casualty Co.*,
    No. 19-cv-3128, 2020 WL 1942784
    (E.D. Pa. Mar. 27, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Wiggins v. Bank of America, N.A.*,
    No. 19-cv-3223, --- F. Supp. 3d ---,
    2020 WL 5642422 (S.D. Ohio Sept. 22, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Zeidman v. J. Ray McDermott & Co.*,
    651 F.2d 1030 (5th Cir. Unit A July 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**AGENCY AUTHORITIES**

*In re Rules & Regulations Implementing*
  *the Telephone Consumer Protection Act of 1991*,
    30 FCC Rcd. 7961 (FCC July 10, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

**INTRODUCTION**

Plaintiff, Todd C. Bank ("Bank"), submits this reply memorandum of law in response to the opposition by Defendants, ICOT Hearing Systems, LLC ("ICOT Hearing"), and ICOT Holdings, LLC ("ICOT Holdings") (together, "ICOT"), to Bank's motion for class certification. Bank respectfully requests that the Court accept this enlarged brief, and believes that its length is warranted by ICOT's opposition.

**RESPONSE TO CERTAIN ASSERTIONS OF DEFENDANTS**

ICOT states: "ICOT are companies located in Savanna [sic] and Tulsa, Georgia [sic] which manufacture and sell hearing aids." Def. Mem. at 2, citing Transcript of Deposition of Jacob Zellweger ("Zellweger Tr.") at 45:1-18 (footnote omitted) (ICOT filed a copy of the transcript at Dkt. No. 166-1). The Tulsa office is in Oklahoma. *See* Zellweger Tr. at 44:19-24. In the footnote, ICOT states that, "ICOT presently has only 14 employees and maintains only one office. ICOT no longer actively markets hearing aids." Def. Mem. at 2, n.2. These assertions, which are obviously attempts to gain sympathy from the Court, are irrelevant. In any event, the purported number of employees (ICOT had about 140 employees as of August 8, 2019, *see* Zellweger Tr. at 44:12-18), and the purported single office (although it is unclear how ICOT can be located in Savannah and Tulsa but have only one office), are presented as unsworn assertions by ICOT's counsel rather than by a person with first-hand knowledge, and are therefore inadmissible in any event. In addition, it is unclear as to whether ICOT's counsel is stating that ICOT no longer uses robocalls, or no longer markets hearing aids altogether.

ICOT, referring to Prospects DM, Inc. ("Prospects DM" or " Prospects"), admits that it had "maintained call centers accepting inbound *transfers from Prospects DM* and other media[-]marketing companies," Def. Mem. at 2, citing Zellweger Tr. at 45:1-18 (emphasis added; footnote omitted), and contends, citing the Second Amended Complaint ("SAC"; Dkt. No. 133), that "Mr. Bank alleges that

he received 'Additional Calls' that were transferred to him," Def. Br. at 3 (ICOT apparently means calls that Bank received from Prospects DM that were then transferred to ICOT). Bank terms those calls "Additional Bank Calls." *See* SAC, ¶ 27 ("numerous telephone calls . . . were placed to the same residential telephone line in or about May and June of 2017 whose Caller ID information was identical to" the call that Bank answered on June 30, 2017). However, neither paragraph "27" nor any other part of the Second Amended Complaint alleges that any Additional Bank Calls were answered, much less by whom; instead, Bank merely testified as follows: "I very likely answered other calls with that same caller ID number as it had appeared when I received the first call that I alleged to have answered." Bank Tr. at 9:4-7.

ICOT states: "[c]ontrary to Plaintiff's contention, 'Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—i.e., *he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.*,' which often require a court to 'probe behind the pleadings.'" Def. Mem. at 7, quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 390 (2011) (emphasis by ICOT). Tellingly, ICOT does not cite to where Bank supposedly made the "contention," as Bank did not. *See* Plaintiff's Memorandum of Law in support of the instant motion ("Pl. Mem.") at 2-4.

ICOT states: "[w]hile the SAC disingenuously pleads that he 'received, on his residential telephone line…[,]' the offending calls ([SAC] ¶¶ 26, 34), Plaintiff has *since conceded in discovery* and in *subsequent filings* with the Court, that the phone calls were received on *his mother's residential telephone line*, approximately 20 miles away from Plaintiff's separate residence. (*E.g.*, Pl.'s [Memorandum of Law [(Dkt. No. 121)] in support of] 2d Mot. for Leave [(*i.e.*, Bank's motion to file the Second Amended Complaint], at PageID#788 [(*i.e.*, p.4)] ('Michele Bank, … whose telephone number is the number that was called each time that Bank answered….').) (*See also* T. Bank Dep. [(dated May 7, 2019)] 5:9-12; M. Bank Dep. [(dated Sept. 5, 2019)] 4:10-11.)." Def. Br.

at 9 (ICOT filed a copy of the Transcript of Deposition of Todd C. Bank ("Bank Tr.") at Dkt. No.

164-1, and a copy of the Transcript of Deposition of Michele Bank ("M. Bank Tr.") at Dkt. No. 165-

1). Each of Bank's 'concessions,' as well as his mother's 'concession,' occurred *before*, not *since*,

Bank filed the Second Amended Complaint. Moreover, as shown below, Bank, with respect to the

telephone number at issue, had been entirely up-front since his initial communication with Defendants,

which had occurred before the present action was commenced.

ICOT, having previously leveled the same accusation of underhandedness at Bank, is equally

wrong now, with the only difference between that its obvious attempt to deceive the Court is, in light

of the previous attempt's having been refuted, even more brazen. First, Bank repeats the previous

refutation, which was in Bank's response (Dkt. No. 128) to ICOT's opposition (Dkt. No. 125) to

Bank's motion (Dkt. No. 121) to file the Second Amended Complaint:

> Defendants state that, "[c]ontrary to his previous representations to the Court that the calls at issue were made 'to his residential telephone line,' Plaintiff now affirms that the calls were received to the landline servicing his mother's house (where Plaintiff does not live), and that he happened to answer the phone when he was visiting her," Def. Mem. at 2, and that, "Plaintiff has never been a resident at his mother's house and was merely visiting when he answered the alleged phone calls on his mother's behalf." *Id.* at 3. Given the analysis in Point I, *infra* [(which is repeated in Point I(B), *infra*)], it was proper of Bank to describe the telephone number as his residential number (however, Bank has never tried to hide the nature of that number, having explained, in his first litigation-related communication with Defendants: "[t]he telephone number on which I received the call (516-489-XXXX; the 'Receiving Number') [(the letter contained the complete number)] is a residential number that is registered to Michele I. Bank, my mother, at whose home I reside approximately one-third of the time, during which I regularly use the Receiving Number" (letter to Matthew J. Whelan dated March 21, 2018, a copy of which is annexed as Exhibit "C" [(Dkt. No. 127; PageID #: 1039)] to the Declaration of Todd C. Bank [(Dkt. No. 127; PageID #: 969)]).

Reply Memorandum of Law in support of Bank's motion to file the Second Amended Complaint, 3-4.

The present action was commenced on April 30, 2018, *i.e.*, *after* Mr. Bank had sent his letter to Mr.

3

Whelan.

On December 31, 2018, *i.e.*, almost nine months before Bank made his motion to file the Second Amended Complaint, such motion having been filed on September 27, 2019, ICOT served interrogatories and document requests that contained numerous requests regarding Bank's mother.

Furthermore, the parties engaged in extensive litigation concerning discovery relating to Bank's mother and the Receiving Number. *See*, *e.g.*, ICOT's motion to compel dated May 7, 2019 (Dkt. No. 59) at 1 ("Plaintiff asserts various claims under the Telephone Consumer Protection Act [(*i.e.*, 47 U.S.C. § 227 ('TCPA'))] premised on calls he answered and received while at his mother's home and on his mother's telephone.").

Finally, during Bank's deposition, which also occurred on May 7, 2019, *i.e.*, almost five months *before* Bank moved to file the Second Amended Complaint, Bank answered numerous questions regarding Bank's mother and the Receiving Number; the same is true of Bank's mother with respect to *her* deposition, which occurred on September 5, 2019, which was more than three weeks before Bank made the motion to amend.

ICOT's charge of underhandedness is, as it was the first time that ICOT leveled it, incomprehensibly dishonest while simultaneously being even less excusable.

## ARGUMENT

## POINT I

## PLAINTIFF IS A CLASS MEMBER

A.   **"Called Parties," Who Have Standing Under the TCPA, Include a Person Who is not the Subscriber to a Telephone Number but is a Regular User of it**

ICOT, which notes that, "[a] decision from this judicial district [sic] specifically identified that 'only "called parties" under the statute have standing to bring suit under the TCPA,'" Def. Mem. at 11, quoting *Leyse v. Lifetime Entm't Servs.*, No. 13-cv-5794, 2015 WL 5837897, *4 (S.D.N.Y. Sept.

22, 2015), argues, as ICOT argued when opposing Bank's motion to file the Second Amended Complaint, that Bank was not a "called party" and therefore does not have standing. *See* Def. Mem. at 11-13.

As ICOT noted in opposing Bank's motion to file the Second Amended Complaint, the Federal Communications Commission ("FCC") "defined the term 'called party' in a 2015 declaratory ruling as 'the subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan.'" Def. Mem. in Opp. to Motion to Amend (Dkt. No. 125) at 2, quoting *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 8000-8001, ¶ 73 (FCC July 10, 2015) ("*2015 TCPA Order*"). *See also Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 640 (7th Cir. 2012) ("called party" means "the person who pays the bills *or* needs the line in order to receive other calls" (emphasis added)); *accord*, *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014); *accord*, *2015 TCPA Order*, 30 FCC Rcd. at 8001, ¶ 75, n.270. The FCC, and *Soppet* and *Osorio*, were addressing cell phones (which concern considerably more TCPA cases than do residential phones), but the TCPA provision that concerns cell phones is substantively identical to the provision that concerns residential phones. With respect to the former, the TCPA states prohibits "any call (other than a call made for emergency purposes or made with the *prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service," 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added), whereas, with respect to residential phones, the TCPA prohibits "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the *prior express consent of the called party*, unless the call is initiated for emergency purposes." 47 U.S.C. § 227(b)(1)(B) (emphasis added) (a "family plan" simply refers to the inclusion of two or more cell-phone numbers on one bill.

Only one member of the plan is responsible to the provider for paying the bills of the entire plan. The members of such a plan need not share a household, nor must they have any family ties. The Court may take judicial notice of facts, like these, that are a matter of common knowledge, *see United States v. Bari*, 599 F.3d 176, 180 (2d Cir. 2010)). In short, the fact that the Receiving Number was assigned to Bank's mother, and the fact that Bank's mother was responsible for paying the bills, did not preclude Bank from being a "called party." Accordingly, the FCC's discussion is applicable here, as reflected in *Leyse*, *supra*, and *Leyse v. Bank of America, N.A.*, 804 F.3d 316 (3d Cir. 2015), each of which, as shown below, concerned residential telephone numbers and addressed the FCC's definition of "called party."

The FCC, following its defining of "called party" as including "the subscriber . . . or the non-subscriber customary user of a telephone number," *2015 TCPA Order*, 30 FCC Rcd. at 8000-8001, ¶ 73, stated: "*[b]oth such individuals can give prior express **consent** to be called at **that number**,*" *id.* at 8001, ¶ 73 (emphases added; footnote omitted); *see also id.* at 8001, ¶ 74 ("'called party' is best understood to mean the subscriber . . . and . . . a non-subscriber customary user, [who are] the person[s] whose privacy is interrupted by unwanted calls."). *See also Leyse*:

> On July 1[0], 2015, the [FCC] issued a Declaratory Ruling and Order (the "Ruling"), clarifying issues raised through litigation of TCPA issues. *See* FCC 15–72[,] [30 FCC Rcd. 7961] [('*2015 TCPA Order*')]. In the Ruling, the FCC found that "the *'called party'* [under the TCPA] is the subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, *or the non-subscriber customary user of a telephone number included in a family or business calling plan*". *Id.* at [8000][,] ¶ 73. The FCC went on to explain that it "[found] it reasonable to include in our interpretation of 'called party' individuals who might not be the subscriber, but who, due to their relationship to the subscriber, are the number's customary user and *can provide prior express consent for the call*". *Id.* at [8001][,] ¶ 75. Either the current subscriber *or **non-subscriber customary** **user*** of the phone *can give **consent** under the TCPA. Id.* at [7999][,] ¶ 72.

*Leyse*, 2015 WL 5837897 at *4 (emphases added). *Leyse* concerned a residential, not cellular,

telephone line. *See id.* at *1.

If either type of "called party" has given prior express consent, a defendant would be free from liability regardless of the identity of the plaintiff. *See Leyse v. Bank of America*, 804 F.3d at 327, n.16 (based on the FCC's definition of "called party," the subscriber and non-subscriber customary user of a telephone number "would *both* qualify as 'called parties,' and consent from *either* would *shield Bank of America from liability*.") (emphases added)). Thus, the question whose answer determines whether Bank was a "called party" is whether, if Bank had given consent to the placement of the calls to the Receiving Number, that consent would have been valid, such that ICOT would have been shielded from liability to either Bank *or* Bank's mother.

Because the TCPA is a strict-liability statute, *see M.A. by Ashear v. NRA Group, LLC*, No. 17-cv- 7483, 2019 WL 2357767, *2 (E.D.N.Y. June 14, 2019); *Soppet*, *supra*, 679 F.3d at 641; *Alea London Ltd. v. American Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011); *Berman v. Freedom Financial Network, LLC*, 400 F. Supp. 3d 964, 979 (N.D. Calif. 2019), ICOT would not be able to avoid liability on the basis of consent that was not given by a "called party." Suppose, therefore, that Bank had consented to receiving ICOT's calls to the Receiving Number: is there any doubt that, whether Bank or his mother were the plaintiff, ICOT would argue, based upon the significant amount of time that Bank resided at his mother's home and his use of the Receiving Number during that time, that such consent were valid, *i.e.*, that Bank was a "called party"? (the facts are discussed in Point I(B), *infra*) Would Bank, or Bank's mother, be able to plausibly argue that such consent were not valid and that ICOT was therefore liable? Indeed, ICOT, during Bank's deposition, began a series of questions as follows: "[a]ll of these questions will be along the lines of the issue of consent or not." Bank Tr. at 31:10-11. Such questioning was lengthy; *see id.* at 31:12 - 41:16 (indeed, much more so than the same line of questioning of Bank's mother, *see* M. Bank Tr. at 8:15 - 12:2).

**B.      Bank was a "Called Party"**

ICOT states: "based on the frequency with which Mr. Bank visits his mother at her home, it is more likely than not that Mr. Bank does not answer her telephone." Def. Mem. at 3, citing Bank Tr. at 21:3-9. ICOT's use of the term "does not" suggests (whether intentionally or not) that Bank probably never answered his mother's telephone. However, not only did Bank answer both telephone calls that are set forth in the Second Amended Complaint, *see* SAC, ¶¶ 29, 36, but the cited testimony merely states that Bank's mother answered the telephone more often than did Bank:

> **Q.** Based on the frequency that you said that you visit your mother, is it common for you to answer the phone when it's ringing and you are there? **A.** Define "common." **Q.** More times than not, you answer it. **A.** No. **Q.** It is not common? **A.** Not under that definition you just gave me.

Bank Tr. at 21:3-9.

ICOT describes Bank as a "houseguest who answered a phone call at his mother's home," Def. Br. at 14, and implies that Bank did not spend all that much time there. *See id.* at 12 ("Plaintiff simply answers his mother's telephone from time to time *when he happens to visit her on the weekend*") (emphasis added)). However, ICOT omits Bank's testimony that "my mother is the sole full-time resident, and I spend what I consider a large or hefty amount of time at that residence as well," Bank Tr. at 16:2-5, and that, "I sleep over on a regular basis, not a majority of nights but a sizable minority." *Id.* at 16:8-10.

ICOT states that, "Mr. Bank visits his mother most weekends, using her telephone in a varying fashion," Def. Br. at 3, citing M. Bank Tr. at 7:12-17, wherein the following occurred: "**Q.** How often does [Bank] visit you at your home? **A.** Most weekends. **Q.** How often does he use your telephone? **A.** It varies." This answer does not mean that Bank's time at his mother's residence is limited to weekends. Indeed, the First Telephone Call, *i.e.*, the call that Bank answered on June 30,

2017, *see* SAC, ¶ 26, occurred on a Friday, and the Second Telephone Call, *i.e.*, the call that Bank answered on May 30, 2018, *see id.*, ¶ 34, occurred on a Wednesday. *See also Todd C. Bank v. GoHealth, LLC*, No. 1:19-cv-05459-MKB-CLP (E.D.N.Y.), Sec. Am. Compl. (Dkt. No. 18), ¶¶ 20, 25-28 (call received on a Monday).

Bank was also authorized to answer this mother's telephone: "**Q.** How did it come that you answered your mother's phone? **A.** The phone rang, and I picked it up, and I was obviously in her home when I did that. **Q.** Did you have her authorization to do that? **A.** Yes." Bank Tr. at 19:2-6. Bank's mother similarly testified: "**Q.** When he visits, does he have your permission to answer your telephone? **A.** Yes, he does. **Q.** Does anyone else use your telephone outside of you or Mr. Bank? **A.** No." M. Bank Tr. at 7:18-23.

ICOT cites two cases for the proposition that only a "called party" has standing. *See* Def. Mem. at 11-12, citing *Leyse v. Lifetime Entm't Servs.*, *supra*, and *Lee v. loanDepot.com, LLC*, No. 14-cv-01084, 2016 WL 4382786 (D. Kan. Aug. 17, 2016). However, each found that the plaintiff, like Bank, had standing as a result of being being a non-subscriber customary user of the telephone number at issue. *See Leyse*, 2015 WL 5837897 at *4; *Lee*, 2016 WL 4382786 at *5; and, contrary to ICOT's suggestion, *see* Def. Mem. at 12, *Leyse* did not suggest that "called parties" were limited to full-time residents and those who pay the telephone bills (nor did *Lee*).

**C.** **Defendants Feign Concern That the Interests of the Class Members Would Not be Given Sufficient Attention After Class Certification**

ICOT relies upon *Banarji v. Wilshire Consumer Capital, LLC*, No. 14-cv-2967, 2016 WL 595323 (S.D. Calif. Feb. 12, 2016), *see* Def. Mem. at 13-14, for the notion that the issue of whether Bank was a "called party" is so complex that "the distraction of litigating this unique issue to Plaintiff will detract from the interests of the absent class members." *Id.* at 13. In *Banarji*, the plaintiff's father, who had consented to the calls at issue, *see Banarji*, 2016 WL 595323 at *1, might have been "a non-

9

subscriber customary user of the phone line, which would [have] give[n] him the *authority to consent* to receiving robocalls on that line." *Id.* at *3 (emphasis added). Unlike in *Banarji*, in which only "limited discovery [had] been conducted—particularly, the depositions of [the] [p]laintiff and her father," *id.* at *2, the parties in the present case have completed discovery. Indeed, ICOT elsewhere states that, "[t]he Court extended Plaintiff a full and fair opportunity to complete discovery," Def. Mem. at 9, n.21, and ICOT would presumably agree that the same is true regarding ICOT. Consistent with the fact that discovery has been completed, ICOT does not merely argue that the issue of whether Bank was a "called party" would need to be litigated post-class certification, but, instead, is able to argue, and *does* argue, that issue *now*, rendering it ripe for resolution. *See id.* at 11-13. Thus, ICOT's contention that, "Plaintiff's unique circumstance of answering phone calls on his mother's landline (where he does not live) will become the focal point of this litigation, to the detriment of the many class members that Plaintiff seeks to represent," *id.* at 14, and ICOT's conclusion that "the resolution of this novel issue unique to Plaintiff will detract from and interfere with the interests of the thousands of class plaintiffs that Plaintiff seeks to represent," *id.* at 16, are simply fox-guarding-the-henhouse disingenuousness. *See In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 100 (E.D.N.Y. 2012) ("[a]lthough it is important for a court to thoroughly vet any putative class representative, a court must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy where . . . the effect of an inadequacy finding would be to eliminate any class representation" (citation and quotation marks omitted)); *Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 464-465 (S.D.N.Y. 2007) ("[t]he unfortunate reality of this situation is that most of [the] [d]efendant's approximately 700 . . . violations would probably go unnoticed absent this lawsuit. Of course, that is the very reason [the] [d]efendant now opposes class certification: not out of any feigned concern for claimants, but because it will allow [the] [d]efendant effectively to avoid liability for its conceded violations of federal law" (citation and quotation marks omitted)); Ann M. Lipton,

*Halliburton and the Dog That Didn't Bark*, 10 Duke J. Const. L. & Pub. Policy 1, 22, n.80 (2015) ("[b]ecause Rule 23 is generally viewed as a mechanism for protecting absent class members from binding adverse determinations, courts frequently note that there is a certain fox-guarding-henhouse quality to allowing defendants to challenge certification.").

ICOT, notwithstanding its contention that this Court would have to address, after class certification is granted, the question of whether Bank's was a "called party," admits that this Court must *now* address that question because Bank must be a class member in order for class certification to be granted, and that, in order to be a class member, Bank must have been a "called party":

> Properly rejecting his false and disingenuous pleading that the allegedly offending calls were received on "his residential telephone line" as the Court must do on a motion for class certification,[5] Plaintiff sets forth no evidence that he is the subscriber or customary user included in a family plan for his mother's residential landline.
>
> [5] *Balverde v. Lunella Ristorante, Inc.*, [No. 15-5518][,] 2017 U.S. Dist. LEXIS 59778, at *8-9 (S.D.N.Y. Apr. 19, 2017) ("the Court must resolve factual disputes relevant to satisfying each Rule 23 requirement.").

*Id.* at 12.

ICOT pretends that yet another issue would plague post-certification litigation, contending that, "[i]n *addition* to the express authority holding that only a 'called party' has *statutory standing* under the TCPA to maintain a claim, a related line of cases additionally hold that only plaintiffs within the *'zone of interests'* protected by the TCPA may maintain a claim," *id.* at 14 (emphases added), that "the merits of this defense need not be resolved on this issue to decide class certification," *id.*, and that, accordingly, "ICOT will not endeavor to undertake the detailed analysis in this Opposition," *id.*, but that, "the determination of this unique defense will consume this litigation at the expense of unaffected class members." *Id.* However, "[t]he *zone-of-interests test* was *formerly* called *'statutory standing,'* but the Supreme Court has *since clarified* that it in fact is *not a standing issue*, but *simply*

11

*a question of whether the particular plaintiff has a cause of action under the statute*," *Moya v. United States Dept. of Homeland Security*, 975 F.3d 120, 130 (2d Cir. 2020) (emphases added; citations and quotation marks omitted). The only dispute concerning whether Bank has a cause of action is the dispute over whether Bank was a "called party," and that dispute is, again, ripe for review and must, according to ICOT, be resolved now.

ICOT also claims that, "[w]ithout clear statutory guidance, the zone[-]of[-]interest inquiry will require an in[-]depth analysis of legislative history to determine the rights sought to be protected by the TCPA, and the application of those protections to an individual such as Plaintiff, who received a telephone call by virtue of visiting another's home." Def. Mem. at 15. In essence, then, ICOT is claiming that, although it argued the "zone of interest" issue, *i.e.*, by arguing that Bank was not a "called party," and although that issue must be resolved now, ICOT did not argue it with sufficient comprehensiveness. That, however, would have been ICOT's choice. Moreover, ICOT does not point to the legislative history that would need later examination. Perhaps that is because there is no discussion in the legislative history about who has, or should have, standing. *See* H.R. 102-317; S.R. 102-177.

ICOT notes that, in *Leyse v. Bank of America*, *supra*, the court "examin[ed] the congressional record to discern legislative intent," Def. Mem. at 15, but does not cite where the court did so, much less quote it. Perhaps that is because this "examination" is rather brief, or perhaps it is because it favors Bank:

> In passing the Act, Congress was animated by "outrage[ ] over the proliferation" of prerecorded telemarketing calls to private residences, which consumers regarded as "an intrusive invasion of privacy" and "a nuisance." Telephone Consumer Protection Act of 1991, Pub.L. No. 102–243, § 2(5)-(6), (10), 105 Stat. 2394 (note following 47 U.S.C. § 227); see also id. § 2(9), (12)-(13). The congressional findings describe the persons aggrieved by these calls using a variety of labels: "consumers," "residential telephone subscribers," and "receiving part[ies]." *Id. § 2*(5)-(6), (10)(12).

12

The task facing Congress was that "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices." *Id. § 2*(9). In striking this balance, Congress determined that "[b]anning ... automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id. § 2*(12).

As was forcefully stated by Senator Hollings, the Act's sponsor, "Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821–22 (1991). Although his views are not controlling, *see Mims [v. Arrow Financial Services, LLC*], 565 U.S. [368] at 385 [(2012)], they are consistent with the findings that appear in the text of the Act, and it is relevant that he emphasized the potential of robocalls to harass the occupants of private residences. *See also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1258 (11th Cir.2014) (noting that a purpose of the Act is to protect "residential privacy").

From this evidence, *it is clear that the Act's zone of interests encompasses more than just the intended recipients of prerecorded telemarketing calls*. It is the *actual recipient, intended or not, who suffers the nuisance and invasion of privacy*. This does not mean that *all* those *within earshot* of an unwanted robocall are entitled to make a federal case out of it. Congress's repeated references to privacy convince us that *a mere houseguest or visitor who picks up the phone would likely fall outside the protected zone of interests*. On the other hand, a regular user of the phone line who occupies the residence being called undoubtedly has the sort of interest in privacy, peace, and quiet that Congress intended to protect.

*Leyse*, 804 F.3d at 325-326 (emphases added; footnote omitted). Again, the FCC and related case law make clear that Bank was a "called party."

## POINT II

## DEFENDANTS' CLASS SETTLEMENT IN ANOTHER
## CASE DOES NOT PRECLUDE CLASS CERTIFICATION

ICOT, referring to the settlement in *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.), states that, "ICOT can only speculate that Plaintiff may argue that the pre-December 2018 class composition is comprised of individuals who opted-out (or whose mother opted-out) of the *Hennie* settlement and are therefore not subject to the release," Def. Mem. at 18, and thereupon contends: "[t]o the extent that Plaintiff may make this argument, the fact remains that five individuals opted out of the *Hennie* settlement. Setting class parameters over five individuals fails to meet Rule 23(a) numerosity requirements," *id.* (citation omitted); *see also id.* at 17 ("Plaintiff . . . attempts to include the *Hennie* release period in his class (undoubtedly in an attempt to shoehorn himself into the class definition) through an unexplained effort to carveout from the class those excluded from the *Hennie* settlement."). This is pure subterfuge, as ICOT is fully aware that there is no "pre-December 2018 class." Rather, as this Court, in denying ICOT's motion to dismiss the Second Amended Complaint (the "Dismissal Motion"; Dkt. No. 135), explained in its Memorandum Decision and Order dated September 29, 2020 (the "Denial Order"; Dkt. No. 140):

> The defendants argue that the plaintiff has not shown that he can meet Rule 23's typicality requirement, but that is "exactly the sort of issue that would be litigated and decided in the context of a motion for class certification." *Chen-Oster* [*v. Goldman, Sachs & Co.*], 877 F. Supp. 2d [113] at 117 [(S.D.N.Y. 2012)]. The plaintiff specifically describes two calls from the defendants in *2017 and 2018*—a period of time that overlaps with the *Hennie* settlement—but the typicality requirement of Rule 23(a)(3) at this stage is not defeated by *"minor variations in the factual allegations" among the various class members. Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 210 (E.D.N.Y. 2019). The *essence* of the plaintiff's claims is that *the defendants made unsolicited calls to members of the class over the course of four years, and that the class members were injured because these calls violated the TCPA.* While the time period the plaintiff pleads, combined with other factors, may ultimately defeat class certification, or prevent the plaintiff from acting as the class representative, the

14

ICOT Defendants' challenges are premature at this stage of the litigation.

*Id.* at 6 (emphases added; footnote omitted). *See also In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 13 (E.D.N.Y. 2020) ("[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met [on a motion for class certification] irrespective of minor variations in the fact patterns underlying individual claims" (citations and quotation marks omitted)). Thus, the fact that only five class members, including Bank, received their calls before the other class members received theirs does not undermine the typicality requirement of Rule 23(a)(3), which is satisfied where the claims of the named plaintiff and those of the putative class members "arise from the *same course of events* and each class member makes *similar legal arguments* to prove the defendants' liability even if there are *minor variations* in the factual allegations." *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 210 (E.D.N.Y. 2019) (emphases added; citation and quotation marks omitted).

Unsurprisingly, ICOT cites no authority in support of its position, but instead cites two cases, *i.e.*, *Liew v. Cohen & Slamowitz, LLP*, 265 F. Supp. 3d 260 (E.D.N.Y.2017), and *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001), for the obvious purpose of trying, as it tried in the Dismissal Motion, to mislead this Court. ICOT states:

> In any event, the five claims arising from those opt-outs are properly brought as *individual* claims, not as *resurrected class claims*. *Wai Hoe Liew v. Cohen & Slamowitz, LLP*, 265 F. Supp. 3d 260, 275 (E.D.N.Y.2017) ("If opt-out plaintiffs wish to pursue their *individual* claims, they must do so *individually*, and *not as a resurrected class* asserting claims arising from factual predicates identical to those asserted in the prior class action from which they opted-out."); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 88 (S.D.N.Y. 2001) (class members "must be given an option: to gain the convenience of class membership, or *opting-out and suing individually*.").

15

Def. Mem. at 18 (emphases added). This Court, in denying the Dismissal Motion, rejected this

argument:

> In *Liew*, the plaintiffs opted out of a class settlement, and then commenced an identical class action. Magistrate Judge Kuo dismissed the complaint, holding that a class member who opts out of a class settlement can continue to litigate his individual claims, but cannot bring a *new* class action complaint based on the same set of facts. A plaintiff who "exercises the right to be excluded from the class action by opting out . . . *relinquishes his right to bring class claims and may proceed only on an individual basis* . . . [and] may not frustrate the efficiency and benefits afforded by the class[-]action procedure by opting out of the class action and then *resurrecting* class claims in the same or a separate action." *Liew*, 265 F. Supp. 3d at 275.
>
> This case is different. The plaintiff brought this action *before* the parties in *Hennie* settled—and indeed, *before* the *Hennie* action itself was *commenced*. He is *not a member* of the *Hennie* class. While his mother *was* a member of the *Hennie* class, she *opted out* of the settlement after the defendant called her at the plaintiff's number. The [Second] [A]mended [C]omplaint also pleads a broader time period than the *Hennie* settlement, alleging that the defendants began calling class members in 2014, two years before the time period covered by the *Hennie* settlement. The considerable overlap between the two actions may ultimately defeat the plaintiff's efforts to certify a class, but the *Hennie* settlement does not, at the motion[-]to[-]dismiss stage, extinguish the plaintiff's class[-]action claims.

*Id.* at 4-5 (emphases added; footnote omitted). Even beyond the fact that, as this Court found, "[t]his

case is different" than *Liew*, *id.* at 5, *Liew* was erroneously decided. *See* Plaintiff's Memorandum of

Law in opposition to the Dismissal Motion ("Dismissal Opp. Mem."; Dkt. No. 136) at 7-10, wherein

Bank explained that the fact "that a putative class member who opts out of the class *could* have

instead remained in the class and objected to the proposed settlement is *irrelevant*, as a class member

either stays in the class and is *bound the settlement*, or *opts out* and, as matter of due process, is not

bound by it at all; *there is no middle ground*." *Id.* at 8 (emphases added; citations omitted).

   With respect to ICOT's reliance upon *Ansoumana*, *supra*, *see* Def. Mem. at 18 (quoted

above), Bank's response is the same as when Bank addressed the Dismissal Motion:

[Defendants] note that, in *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001), the court stated that, "members of a Rule 26(b)(3) class 'must be given an option: to gain the convenience of class membership, or opting-out and suing individually.'" Def. Mem. at 5, quoting *Ansoumana*, 201 F.R.D. at 88. The context in which that quotation appears shows that the court was addressing an issue that has nothing to do with the question of whether Bank may assert his class claims:

> The interplay of the [New York] Minimum Wage Act and the [New York] Civil Practice Law and Rules makes th[e] [Rule 23(b)(3) class-certification] procedure important. Those aggrieved by a willful violation of the New York Minimum Wage Act may recover liquidated damages . . . . However, they cannot do so as part of a class action. See N.Y.C.P.L.R. 901(b).[4] Hence, those affected must be given an option: to gain the convenience of class membership, or opting-out and suing individually.
>
> [4] CPLR 901(b) provides that "[u]nless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action."

*Ansoumana*, 201 F.R.D. at 88 (emphases added; additional footnote omitted). So out-of-context did [Defendants] take their quotation from *Ansoumana*, and so misleading was that quotation as a result, that Bank would be well within his rights to seek sanctions against [Defendants]' counsel, but instead gives counsel the benefit of the doubt that its reliance upon *Ansoumana* was the result of carelessness rather than an intent to mislead the Court.

Dismissal Opp. Mem. at 10-11. Given that ICOT does not now, nor did in the Dismissal Motion, contend that CPLR Section 901(b) is applicable here, it is obvious that its reliance upon *Ansoumana* is, as it was previously, utterly misleading (in any event, neither the federal nor state-law claims are subject to Section 901(b), *see*, respectively, *Bank v. Independence Energy Group LLC*, 736 F.3d 660 (2d Cir. 2013); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)).

As the foregoing makes clear, ICOT's sub-point heading containing the above-discussed

arguments, such heading being "Plaintiff failed to provide a basis how to ascertain classes that carveout individuals 'excluded from the Hennie settlement' – i.e., any class members whose claims predate the Dec. 31, 2018 end of the *Hennie* release," Def. Mem. at 17, and ICOT's claim that "Plaintiff also is excluded from a class of individuals who may have received calls after January 1, 2019 because the calls Plaintiff alleges to have answered occurred in 2017 and 2018, respectively – not in 2019 or thereafter," *id.* at 17, n.6, are based on a false premise, *i.e.*, that Bank proposes, or that this Court would need to certify, a separate class of the persons who received calls before 2019. Rather, those persons, whom ICOT has identified, *see id.* at 18 ("five individuals opted out of the *Hennie* settlement," citing *Hennie,* Dkt. No. 33-1 at 24, which contains the names of those persons), would, like all of the class members, be, at minimum, part of the Federal Robocall Class. For the same reasons, ICOT's contentions that "Plaintiff's proposed class definitions and Motion for Class Certification contain no criteria or objective basis to exclude *Hennie* releasees from his proposed classes – i.e., those individuals receiving a telephone call on or before December 2018." Def. Mem. at 5, and that "Plaintiff has provided no factual support or argument as to how any of the phone calls identified in ICOT164 are excluded from the *Hennie* settlement," *id.*, are devoid of merit. In addition, the fact that "[t]he call logs produced by ICOT in ICOT164 'did not include records pertaining to any calls made on or after January 1, 2018,'" Def. Mem. at 5, quoting Pl. Mem. at 9, is, in light of the *Hennie* opt-out list, irrelevant.

## POINT III

### THE RECORDS OF DEFENDANTS' TELEMARKETING COMPANY SUPPORT CLASS CERTIFICATION

ICOT states: "[t]ellingly, while ICOT164 ends on January 2, 2018 almost a full year before the *Hennie* settlement, it appears that Plaintiff only sought the Additional Records for telephone calls after January 2, 2019. Plaintiff's own apparent disinterest [sic] in obtaining calling records from this

period demonstrate the lack of a measurable class." Def. Mem. at 22. First, Bank's subpoena upon Prospects DM (the "Prospects Subpoena"), stated that, "[u]nless otherwise indicated, each Request shall be answered with respect to the Relevant Period." Declaration of Todd C . Bank in support of the instant motion (the "Bank Declaration" or "Bank Decl."; Dkt. No. 163-1), Exh. "F," PageID #:1415, ¶ "g," and that, "[t]he term 'Relevant Period' means the period from December 31, 2017, to the present." *Id.* at PageID #:1416, ¶ "e." Second, the records that Prospects produced (the "Prospects Spreadsheet") dated back to June 30, 2017. In any event, the only persons who are class members based on calls that were made before 2019 are those who opted out of the *Hennie* settlement (the list of whom ICOT itself cited, *see* Point II, *supra*).

ICOT contends that, "[w]hile Plaintiff has indicated that he requested records from Prospects DM though a subpoena, he has tellingly failed to indicate whether Prospects DM formally responded to the subpoena. Instead, Plaintiff vague indicates [sic] that 'a colleague of [Eric] Allen emailed, to Bank, [the Additional Records]'." Def. Mem. at 20, n.7, quoting Pl. Mem. at 11 (last bracketed portion by ICOT). This is grossly misleading, as Bank stated, in full: "[o]n December 28, 2020, a colleague of Mr. Allen emailed, to Bank, records [(*i.e.*, the Prospects Spreadsheet)] that itemize 186,072 transfers of calls from Prospects to ICOT from January 2, 2019, through April 9, 2020 (a redacted excerpt of which is annexed as Exhibit 'G' to the [the Bank] Declaration)." Pl. Mem. at 11. Bank also stated in the Bank Declaration: "[a] copy of a redacted excerpt of the document that Prospects DM, Inc., served upon me in response to the subpoena described in paragraph '7' is annexed hereto as Exhibit 'G.'" Bank Decl., ¶ 14 (from the context, it is obvious that Bank's reference to paragraph "7" was an error, and that he was referring to paragraph "13"). As if the name of Mr. Allen's colleague were relevant, it is Chris Wixom, a paralegal with Mr. Allen's firm, of whom ICOT had knowledge, as Bank had forwarded the documents to one of ICOT's attorneys, Walter (Chad) Blackham, on January 20, 2021 (a copy of the email correspondence between Bank, Mr.

Allen, and Mr. Wixom, and the email that Bank sent to Mr. Blackham would be provided upon request of the Court). Thus, ICOT would have this Court believe that ICOT carefully reviewed neither the Prospects Subpoena nor the Prospects Spreadsheet.

ICOT contends: "[w]ith respect to the Additional Records [(*i.e.*, the Prospects Spreadsheet)] that were emailed to him by the colleague of an attorney for non-party Prospects DM, Plaintiff provides no information regarding this data other than his characterization that it lists 186,072 transfers from January 2019 through April 2020 along with the photograph of a computer screen that appears to have the file open," Def. Mem. at 6, whereupon ICOT embeds a copy of Exhibit "G" of the Bank Declaration. *See id.* ICOT further states: "[a]nything else about the Additional Records remains a mystery. There is no evidence to provide any foundation for the document (i.e., indicating what it purports to represent, whether it is a business record of Prospects DM, how, why, or when it was created, or any indica of reliability)." *Id.*

First, Bank provided a copy of the subpoena (the "Prospects Subpoena"), which had requested "[c]omplete copies of any and all documents that indicate the telephone number to which any Promotional Telephone Call was placed, . . . the number of Promotional Telephone Calls that were placed to any telephone number to which at least one Promotional Telephone Call was placed, . . . the date on which any Promotional Telephone Call was placed, . . . [and] the name of the person that was associated with a telephone number to which any Promotional Telephone Call was placed." Bank Decl., Exh. "F," PageID #:1418, Schedule "A," ¶¶ 1-4.

Second, "a document can be authenticated by distinctive characteristics of the document itself, such as its '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with the circumstances.'" *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2015) (quoting Fed. R. Evid. 901(b)(4) (pre–2011 amendments) (additional citation and quotation marks omitted).

Third, ICOT submitted a declaration (Dkt. No. 113) by Joshua Grant, dated August 28, 2019, which stated: "I am a duly authorized custodian of the business records of Prospects DM, a Canadian company, I am knowledgeable as to how those business records are generated and stored, I am knowledgeable as to how Prospects DM computer systems generate and store information and have the authority to certify Prospects DM's business records as well as custodial responsibility over the records produced." *Id.*, ¶ 1. Mr. Grant, referring to the *Hennie* action (*see id.*, ¶ 5), further stated that, in that action, Prospects had produced "[a] file of all ListenClear transfers that were completed to ListenClear," *id.*, ¶ 6(d), and that "[t]he Calling Records contain 26 data[-]point columns." *Id.*, ¶ 7. Although the Prospects Spreadsheet contains 12 columns, *see* Bank Decl., Exh. "G," each of the following columns that were, according to Mr. Grant, in the *Hennie* file are also in the Prospects Spreadsheet: "[t]imestamp of when the call was initiated," " [t]imestamp of when the call was ended," "the phone number called," and "[t]he Caller ID used, showing the number that is displayed to the person being called." *Id.*, ¶ 7. The Prospects Spreadsheet also contains, in accordance with the request in the Prospects Subpoena, *see* Bank Decl., Exh. "F," PageID #:1418, Schedule "A," ¶ 4, and as seen in Exhibit "G" to the Bank Declaration, the first and last names associated with the telephone numbers that were called (which Bank redacted in the exhibit).

Finally, Mr. Grant stated: "[t]he records that Prospects DM produced are true and accurate copies of the business records of Prospects DM and: (a) the records were made at or near the time of the events they record; (b) the records were made by or from information transmitted by a person with knowledge of the events they record; (c) the records were kept in the ordinary course of business; and (d) it was the regular practice of Prospects DM to make such records." *Id.*, Grant Decl., ¶ 29. As the foregoing shows, the principle that "[p]roduction of documents by a subpoena recipient satisfies the requirements for authentication under Federal Rule of Evidence 901, that is, that the records are what [the producing party] claim[s] they are," *Goldsmith v. Correct Care Sols.*, No. 12-

cv-3738, 2015 WL 2437332, *3 (N.D. Ill. Mar. 31, 2015), easily applies here.

ICOT, presumably referring to Exhibit "G" of the Bank Declaration, states: "[t]he Court cannot now presume the existence of numerosity based on a photograph of a computer screen." Def. Mem. at 23. However, Bank not only stated that the Prospects "records . . . itemize 186,072 transfers of calls from Prospects to ICOT from January 2, 2019, through April 9, 2020," Pl. Mem. at 11, but also stated that, "I incorporate, by reference, all factual assertions in my accompanying memorandum of law." Bank Decl., ¶ 15. Thus, Bank stated, under oath, that his examination of the Prospects Spreadsheet showed those 186,072 calls; and, of course, Bank would provide, under seal to the Court, the Prospects Spreadsheet if requested, upon which the Court could easily confirm the truth of Bank's statement.

ICOT contends that Bank's description of the Prospects Spreadsheet was insufficient and that, instead, he was required to have an expert. *See* Def. Mem. at 6 ("while one would expect expert analysis regarding the potential class size and other aspects of a raw[-]data file of purported call transfers, Plaintiff provides no analysis of the Additional Records other foundationless conclusions [sic] to the date range and number of transfers."). Thus, according to ICOT, the present case is distinguished from *George v. Shamrock Saloon II LLC*, No. 17-cv-6663, 2020 WL 133621 (S.D.N.Y. Jan. 13, 2020). *See* Def. Mem. at 19. However, ICOT does not explain why an expert was needed in the present case. Moreover, whereas Bank was easily able to describe the very straightforward call records rather than have an expert do so, the records in *George* apparently required expert analysis:

> With full access to [the] [d]efendants' Call Fire account (through which [the] [d]efendants store collected phone numbers and draft and schedule mass text[-]message promotional campaigns), the expert found that 67,630 unique cell phone numbers received text messages between March 26, 2015 and September 1, 2017 from [the] [d]efendants without consent provided "in the handwritten sheets completed by customers at the restaurant ... [or] on the website

content list." Expert Rpt. ¶¶ 55.

*George*, 2020 WL 133621 at *2.

ICOT's reliance upon *Southwell v. Mortg. Inv'rs Corp. of Ohio*, No. 13-cv-1289, 2014 WL 3956699 (W.D. Wash. Aug. 12, 2014), *see* Def. Mem. at 19-20, is misplaced. In *Southwell*, the court found that the expert "was given multiple sets of data by [the] [p]laintiffs' counsel, ran it through a series of filters using parameters set by [the] [p]laintiffs' counsel and reported on the numbers which those calculations produced," *Southwell*, 2014 WL 3956699 at *3, and that "[h]e has no idea what the numbers represent and no independent opinion on whether they are accurate representations of what Plaintiffs purport them to mean. ('All my work was an assertion I was given by plaintiffs' counsel, so I have no support one way or another for, you know, sort of no legal opinion or assumption about the validity of the assumptions I was provided.')." *Id.* (citation omitted).

ICOT states: "[t]o the extent that Plaintiff argues further discovery or retention of an expert in the future could potentially identify putative class members, discovery is closed in this case after having been extended multiple times. The Court extended Plaintiff a full and fair opportunity to complete discovery." Def. Mem. at 21, n.9. Although Bank does not believe that an expert was needed, he does request leave to retain an expert if the Court were to find otherwise; likewise, Bank believes that further authentication of the Prospects Spreadsheet was not needed, but requests leave to retain such authentication if the Court were to find otherwise.

ICOT contends that the Prospects Spreadsheet does not specifically identify members of two of the three classes, *i.e.*, the Federal Do-Not-Call Class and the New York Class. *See* Def. Mem. at 20. ICOT is correct about the former, but not the latter, as the New York Class consists of "all persons to whose New York State area-code telephone numbers one or more telephone calls" were made, Pl. Mem. at 1; and, of course, the identification of New York State area codes is a matter of public knowledge of which the Court may take judicial notice. *See also* SAC, ¶ 4 (listing all such area

23

codes). Arguably, a New York Class member would be required to show or affirm that his telephone number was a not a business number, although Mr. Zellweger, when asked whether "Prospects call[ed] business numbers," answered, "[n]ot that I'm aware of." Zellweger Tr. at 59:5-7.

Each member of the Federal Do-Not-Call Class would, like the members of the New York Class, also be a member of the Federal Robocall Class and would therefore be entitled to receive class notice; and, if there were a judgment in favor of the Federal Robocall Class, the members of the Federal Do-Not-Call Class would be required to submit evidence that their telephone numbers were on the National Do Not Call Registry during the period that was relevant to their calls, whereas the Prospects Spreadsheet would show whether multiple calls were made to a given telephone number within a 12-month period.

ICOT states: "[n]owhere does Mr. Bank identify or even estimate the number of individuals that may be in any of his three proposed classes." Def. Mem. at 21. First, that is clearly not true of the Federal Robocall Class. *See* Pl. Mem. at 11 (186,072 calls). Second, given that "the calls were made nationwide," Pl. Mem. at 6, and that "[n]umerosity is presumed at a level of 40 members," *id.* at 11 (citations and quotation marks omitted), it is clear that there are many New York Class members (indeed, the Prospects Spreadsheet shows that there are thousands). Finally, ICOT is correct regarding the Federal Do-Not-Call Class, but, again, its members, all of whose claims are the result of the same series of telephone calls, are members of the Federal Robocall Class and would provide evidence of their Federal Do-Not-Call claims.

**POINT IV**

**THE CLASS PERIODS ARE PROPER BUT MAY BE NARROWED BY THE COURT**

ICOT states: "Plaintiff's Motion for Class Certification acknowledges that Prospects DM only began transferring calls to ICOT 'in late 2016 or early 2017.' As such, the beginning point of the classes can be no earlier than late 2016, as the classes are defined through calls transferred from

Prospects DM to ICOT." Def. Mem. at 4, quoting Pl. Mem. at 6. Thus, ICOT objects to the proposed class periods insofar as part of those periods did not include any alleged violations. It is difficult to see how a class period that is broader than the period of the alleged violations could harm ICOT or any class members, but, in any event, Bank does not object to the class periods' beginning in late 2016, *i.e.*, September 1, 2016. *See Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 267 (E.D.N.Y. 2016) ("[i]t is well-established that '[t]he court may, in its discretion[,] ... modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies. In fact, the court has a duty to ensure that the class is properly constituted and has broad discretion to modify the class definition as appropriate to provide the necessary precision,'" quoting *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 114 (E.D.N.Y. 2011), in turn quoting 5 James W. Moore *et al.*, *Moore's Federal Practice*, § 23.21(6) (additional quotation marks omitted)); *Dover v. British Airways, PLC (UK)*, 321 F.R.D. 49 (E.D.N.Y. 2017) (stating, in decision on class certification, that "[the defendant]'s . . . argument[] that the class as currently defined [might be too broad] is well taken, but easily addressed. As [the] [p]laintiffs state in their reply, they have no objection to modifying the class definition to define the class."); *Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239 (E.D.N.Y. 2012) (stating, in decision on class certification, that, with respect to the defendant's argument that the class definition was underinclusive, *see id.* at 245-246, "[the] [p]laintiff has mooted this point in [her] reply[,] [which] has refined [the] class definition [accordingly]," *id.* at 246); *In re Chicago Bridge & Iron Co. N.V. Securities Litig.*, No. 17-cv-01580, 2019 WL 5287980, *40 (S.D.N.Y. Oct. 18, 2019), *adopted in relevant part*, 2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) (stating, in decision on class certification, that, "[t]he Court is not bound by the class definition proposed in the Complaint and has the authority to modify a class definition.").

ICOT states: "[n]otably, all three classes appear to extend to the subscribers of the phone numbers receiving the alleged calls – 'all persons to whose [] telephone number(s)' received a call,"

Def. Mem. at 4, quoting Pl. Mem. at 1, and that, "Plaintiff necessarily falls outside of the very classes he desires to represent because the calls were received at his mother's house, on her residential landline, for which she is the subscriber and pays the bills," *id.* at 9 (citation omitted), as a result of which "she is the individual 'whose telephone number received an alleged call,' and falls within the proposed class definitions, not Plaintiff." *Id.* (internal quotation unattributed). However, Bank did not use the term "subscriber" in the class definitions.

ICOT's argument that, "[t]o the extent that Plaintiff may argue that the class definitions should be redrafted or interpreted to constitute a class of individuals that happened to answer someone else's telephone, Plaintiff has not, and cannot, show an objective basis to ascertain such a class," *id.* at 9-10, is based on the erroneous premise that, for purposes of the TCPA, Bank answered "someone else's telephone." *See* Point I, *supra.*

## POINT V

## DEFENDANTS' ARGUMENTS FOR DISMISSAL OF THE CLAIMS OF THE OUT-OF-STATE CLASS MEMBERS ARE PLAINLY DISHONEST

ICOT "submits that the moves [sic], pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss this case for lack of personal jurisdiction as to *putative class members* whose claims *do not arise in New York*," Def. Mem. at 25 (emphases added), based upon ICOT's position that *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017), "extends to nationwide class-based claims." *Id.*

ICOT describes *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293 (D.C. Cir. 2020), and *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240 (5th Cir. 2020), as "extending *Bristol-Meyers* to Rule 23 class actions." Def. Mem. at 24. That is empathically untrue of either case. In *Molock*, the majority explained, over a dissent that *did* argue that *Bristol-Myers* was so applicable (*see Molock*, 952 F.3d at 300 (Silberman, *Senior J.*, dissenting)): "[b]ecause the class in this case has yet to be

certified, [the defendant]'s motion to dismiss the [out-of-state] putative class members is *premature*. Only *after* the putative class members are *added to the action—that is, when the action is certified as a class under Rule 23*, should the district court *entertain* [the defendant]'s *motion to dismiss the [out-of-state] nonnamed class members.*" *Id.* at 298 (emphases added). *See also Velazquez v. State Farm Fire and Casualty Co.*, No. 19-cv-3128, 2020 WL 1942784, *11 (E.D. Pa. Mar. 27, 2020) (noting that *Molock* "*did not rule* on whether *Bristol-Myers* applied; rather, it concluded that '[b]ecause the class in this case has yet to be certified, [the defendant's] motion to dismiss the putative class members is *premature*,'" quoting *Molock*, 952 F.3d at 298 (emphases added)).

In *Cruson*, the court addressed, as had *Molock*, only the question of *when* a defendant may present a personal-jurisdiction challenge to unnamed class members. *Cruson* ruled that the defendant, in making, before the plaintiffs had moved for class certification, Rule 12 motions that did *not* include a personal-jurisdiction challenge to unnamed class members, *see id.* at 248, 249, did not thereby waive its rights to later present such a challenge, as the defendant *could not have done so as part of the Rule 12 motions*, because doing so would have been *premature*:

> The issue [with respect to the question of waiver] is whether the personal[-]jurisdiction defense was "available" under Rule 12(g)(2) when [the defendant] filed its Rule 12 motions. We conclude it was not. [The defendant]'s objection to personal jurisdiction concerned only class members who were non-residents of Texas. Those members, however, were not yet before the court when [the defendant] filed its Rule 12 motions. *What brings putative class members before the court is certification*: "*Certification of a class is the critical act which reifies the unnamed class members and, critically, renders them subject to the court's power.*" *In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir. 2015); *accord Molock*, 952 F.3d at 298 ("Putative class members *become parties* to an action—and thus subject to dismissal—only *after* class certification." (citing *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1245 (11th Cir. 2006))).[8] When [the defendant] filed its pre-certification Rule 12 motions, however, the only live claims belonged to the *named* plaintiffs, all Texas residents as to whom [the defendant] conceded personal jurisdiction. *See, e.g., Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 n.22 (2d

27

Cir. 2013) (noting [that] "*until* certification there is no class action but merely the *prospect* of one; the *only action* is the suit by the *named plaintiffs*" (quoting *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002))).[9] Thus, at that time, a personal[-]jurisdiction objection respecting merely putative class members was not "available," as Rule 12(g)(2) requires for waiver.

[8] *See also*, *e.g.*, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (observing [that] "a putative class acquires an independent legal status *once it is certified* under Rule 23"); *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (disapproving "the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation *before the class is certified*" (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 16 n.1 [(2002)] (Scalia, J., dissenting))); *Sosna v. Iowa*, 419 U.S. 393, 399 (1975) (*upon* certification, "the class of unnamed persons ... acquired a legal status separate from the [named plaintiff]"); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1045 (5th Cir. Unit A July 1981) (explaining [that] "the act of certification brought the unnamed members of the class before the court for Article III purposes") (discussing *Sosna*).

[9] *See also*, *e.g.*, *Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir. 2001) (observing that "a class action, when filed, includes only the claims of the *named* plaintiff or plaintiffs" and that "[t]he claims of *unnamed* class members are *added to the action later*, when the action is *certified* as a class under Rule 23"); *Biscone v. JetBlue Airways Corp.*, 681 F. Supp. 2d 383, 386 (E.D.N.Y. 2010) ("As a general rule, *until a class action is certified* pursuant to Rule 23 of the Federal Rules of Civil Procedure, *the claims of potential class members cannot be considered*."). *See generally* 2 [William B. Rubenstein,] [*Newberg on Class Actions*,] § 7:12 [(5th ed. 2012)] (explaining that, before certification, "putative absent class members ... remained *complete nonparties*" and so could not be bound by a dispositive motion granted to defendants).

\*\*\*

[I]t is evident why a personal[-]jurisdiction objection was not "available" with respect to the putative claims of unnamed Texas non-residents. *Prior to certification*, those nonresidents were not yet before the [district] court, their *possible future claims* against [the defendant] were *hypothetical*, and *so there was no justiciable controversy between [the defendant] and [them]*. To rule that [the defendant] was required, on pain of waiver, to raise[,] [in the Rule 12 motions][,] a personal[-]jurisdiction objection against those putative class members would validate the *novel and surely erroneous argument* that a *nonnamed* class member is a party to the class-action

litigation *before the class is certified*.

*Cruson*, 954 F.3d at 250, 251 (emphases added; citation and quotation marks omitted). The court, which had vacated the district court's granting of class certification, *see id.* at 245, also stated: "[the defendant] is free to raise the defense again should [the] plaintiffs *seek to re-certify* a class." *Id.* at 249, n.7 (emphasis added). By this statement, the court, in light of the above-quoted discussion, found, at most, that a personal-jurisdiction challenge to unnamed class members was presentable in a defendant's opposition to a motion for class certification but would become justiciable only if the class were certified, or, put differently, would continue to be moot if the class were not certified.

It is not even conceivable that either *Cruson* or *Molock* could be understood as "extending the *Bristol-Myers* holding . . . [to] putative class members whose claims do not arise" in the forum state. Def. Mem. at 25.

ICOT states that, "[w]hile the Second Circuit has not resolved the issue . . . [of whether] *Bristol-Myers* extends to nationwide class-based claims[,] . . . district courts within New York recently issued persuasive holdings extending the *Bristol-Myers* holding *in this exact manner*." *Id.* (emphasis added), citing *Chizniak v. CertainTeed Corp.*, No. 17-cv-1075, 2020 WL 495129 (N.D.N.Y. Jan. 30, 2020), as "dismissing claims of *out-of-state plaintiffs* due to a lack of connection to New York," *id.* (emphasis added), *Spratley v. FCA US LLC*, No. 17-cv-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017), and *Gazzillo v. Ply Gem Indus.*, No. 17-cv-1077, 2018 WL 5253050 (N.D.N.Y. Oct. 22, 2018).

In *Chizniak*, the court dismissed the claims of out-of-state *named* plaintiffs, not the claims of *unnamed* class members. *See Chizniak*, 2020 WL 495129 at *3-*5. Indeed, the court did not even *mention* the question of whether *Bristol-Meyers* applies to unnamed class members.

As in *Chizniak*, the court in *Spratley* addressed personal jurisdiction with respect *only* to the *named* plaintiffs, *i.e.*, those named plaintiffs who were not New York residents. *See Spratley*, 2017

29

WL 4023348 at *1, *6, *9; *see also Wiggins v. Bank of America, N.A.*, No. 19-cv-3223, --- F. Supp. 3d ---, 2020 WL 5642422, *6 (S.D. Ohio Sept. 22, 2020) (describing *Spratley* as "applying *Bristol-Myers* and finding that the court lacked specific jurisdiction over the claims of the out[-]of[-]state *named* plaintiffs who showed no connection between their claims and the defendant's contacts with the forum state" (emphasis added)); *Napoli-Bosse v. General Motors LLC*, 453 F. Supp. 3d 536, 541 (D. Conn. 2020) (describing *Spratley* as "applying *Bristol-Myers* to dismiss non-resident *named* plaintiffs in a class action in federal court" (emphasis added)).

Also as in *Chizniak*, the *Spratley* court did not even mention the question of whether *Bristol-Meyers* applies to unnamed class members.

In *Gazzillo*, the court, yet again, dismissed the claims of the *named* plaintiffs, *see Gazzillo*, 2018 WL 5253050 at *7, and, yet again, did not even mention the question of whether *Bristol-Meyers* applies to unnamed class members.

ICOT states that, "ICOT recognizes that courts around the country are split on whether the *Bristol-Myers* standard, extends [sic] to bar national class actions against out-of-state defendants," Def. Mem. at 24. ICOT thereupon cites *Molock* and *Cruson*, and then states: "*[b]ut see Mussat v. IQVIA, Inc.*, 953 F.3d 441 (7th Cir. 2020) (refusing to extend *Bristol-Myers* to Rule 23 class actions)." Def. Mem. at 24-25 (the term "refusing" as if to suggest that the question of whether to "extend *Bristol-Myers* to Rule 23 class actions" is merely a matter of judicial discretion rather than a purely legal matter). In *Mussat*, the Seventh Circuit held, in what happened to be a TCPA case, that "[the] general consensus that due[-]process principles did not prohibit a plaintiff from seeking to represent a nationwide class in federal court, even if the federal court did not have general jurisdiction over the defendant," *Mussat*, 953 F.3d at 445, remained intact following *Bristol-Myers*, *see id.* at 443 ("we hold that the principles announced in *Bristol-Myers* do not apply to the case of a nationwide class action filed in federal court under a federal statute."); *id.* at 447 ("[w]e see no reason why

personal jurisdiction should be treated any differently from subject-matter jurisdiction and venue: the *named* representatives must be able to demonstrate either general or specific personal jurisdiction" (emphases added)); *see also Hager v. Omnicare, Inc.*, No. 19-cv-00484, 2020 WL 5806627, *4 (S.D. W. Va. Sept. 20, 2020) ("the majority of district courts that have considered the issue[] have determined that *Bristol-Myers Squibb* is inapplicable in the Rule 23 context"); *Lincoln v. Ford Motor Co.*, No. 19-cv-2741, 2020 WL 5820985, *4 (D. Md. Sept. 20, 2020) ("[t]he overwhelming majority of federal courts have held that *Bristol-Myers* applies to claims brought by *named* plaintiffs in [a] class action" (emphasis added)).

In order for *Molock* and *Cruson* to be on one side of the "split" (Def. Mem. at 24) and *Mussat* to be on the other side, *Molock* and *Cruson* would have had to find, in contrast to *Mussat*, that *Bristol-Myers does* apply to the claims of unnamed class members, but that, of course, is not true of *any* of the cases relied upon by ICOT, including *Molock* and *Cruson*, as *none even addressed the question* of whether *Bristol-Myers* applies to the claims of unnamed class members. Indeed, *Mussat* is consistent with every case upon which ICOT relies, as none of them, nor *Mussat*, found, nor even suggested, that *Bristol-Myers* is inapplicable to the claims of *named* plaintiffs.

As shown above, ICOT has represented several cases, including *Molock* and *Cruson*, as applying *Bristol-Myers* to the claims of unnamed class members, whereas those cases either applied *Bristol-Myers* to the claims *only* of *named* plaintiffs or merely addressed the question of *when* a defendant could assert a personal-jurisdiction challenge to the claims of unnamed class members. Not a single case that ICOT cites as an example of applying *Bristol-Myers* to the claims of unnamed class members has even arguably done so; indeed, and again, none of those cases have even *suggested* that *Bristol-Myers* is so applicable. ICOT's papering-over of the obviously vital distinction between the question to which ICOT seeks an affirmative answer by the Court, *i.e.*, the question of whether *Bristol-Myers* applies to *unnamed class members*, as opposed to *named plaintiffs*, is unmistakably

intended to mislead the Court.

At least one court expressed its displeasure with precisely what ICOT does here:

> [The] [d]efendant asserts that the *Bristol-Myers* holding requires dismissal of the claims of non-Florida-resident putative class members in this action. In its motion, [the] [d]efendant supports its argument by citing six cases from district courts in Arizona, New York, Missouri, and Illinois applying *Bristol-Myers*.[]¹ [(the footnote includes *Spratley*)][.] [The] [d]efendant represents that "courts throughout the country have determined that personal jurisdiction cannot be maintained over non-resident class claims against a defendant who is not subject to general personal jurisdiction in the subject forum."²
>
> ² The cited cases barely support [the] [d]efendant's proposition—that a district court lacks specific personal jurisdiction over a defendant with respect to claims lodged by putative class members residing outside the forum state. *Indeed, in Spratley, the Northern District of New York invoked Bristol-Myers in support of the court's holding that it lacked personal jurisdiction over six out-of-state named* plaintiffs. 2017 WL 4023348, at *6–7. . . .
>
> Interestingly, [the] [d]efendant's brief fails to mention a single decision, of which there are numerous, holding that *Bristol-Myers* does not apply in the class[-]action context. Indeed, [the] [d]efendant only tells half the story, which is unfortunate since the other half is more compelling. Since *Bristol-Myers* was decided, numerous district courts faced with Rule 12(b)(2) motions have found that *Bristol-Myers'* holding does not apply to out-of-forum putative class members' claims. . . . Ultimately, the Court finds the reasoning of the cases [the] [d]efendant neglected to cite compelling and that *Bristol-Myers* is inapplicable here. . . .⁴
>
> ⁴ Although no decisions in this District had addressed this precise issue before [the] [d]efendant's Motion to Dismiss was filed, numerous district courts across the country had entered decisions contradicting [the] [d]efendant's interpretation of *Bristol-Myers* by then.
>
> While [the] [d]efendant's omission does not technically violate Florida's ethical rules— which require the disclosure of binding caselaw directly adverse to the advocated position—the Court takes notice of defense counsel's lack of candor. *See* Fla. R. of Prof. Conduct 4-3-3; *Malautea v. Suzuki*, 987 F.2d 1536, 1546 [(11th Cir. 1993)] ("All attorneys, as 'officers of the court,' owe duties of complete candor and primary loyalty to the court before which they practice."). Defense counsel is reminded that the "duty to a client can never outweigh [an attorney's] responsibility to see that our system of

justice functions smoothly." *Malautea*, 987 F.2d at 1546.

*Brotz v. Simm Associates, Inc.*, No. 17-cv-1603, 2018 WL 4963692, *2, *3 (M.D. Fla. Oct. 15, 2018) (emphasis added; citation and additional footnotes omitted). ICOT, of course, does not merely omit the fact that the case law overwhelmingly opposes ICOT's position, but misrepresents numerous cases as supporting that position.

     ICOT had every right to argue its position, but did not have the right to do so in the egregiously false and misleading manner in which it did.

<div align="center">

**<u>CONCLUSION</u>**

</div>

     Plaintiff respectfully requests that this Court grant Plaintiff's motion.

Dated: March 12, 2021

<div style="margin-left: 50%;">

Respectfully submitted,

  **s/ *Todd C. Bank***        
TODD C. BANK,
  ATTORNEY AT LAW, P.C.
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125
By Todd C. Bank

*Counsel to Plaintiff*

</div>

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and accurate copy of the foregoing document is being filed electronically on March 12, 2021, via the Court's electronic-case-filing (ECF) system. Notice of this filing will be sent by the Court's ECF system to all parties, and copies will be mailed to those parties, if any, that are not served in such manner.

Dated: March 12, 2021

<u>  s/ *Todd C. Bank*                </u>
Todd C. Bank