UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
TODD C. BANK,                                               :
                                                            :
                       Plaintiff,                           :       **REPORT AND**
                                                            :       **RECOMMENDATION**
               -against-                                    :
                                                            :       18-CV-02554 (AMD)(PK)
ICOT HOLDINGS, LLC and ICOT HEARING                         :
SYSTEMS, LLC,                                               :
                                                            :
                       Defendants.                          :
                                                            :
                                                            :
------------------------------------------------------------- X

**Peggy Kuo, United States Magistrate Judge:**

      Todd C. Bank ("Plaintiff") brought this action against ICOT Holdings, LLC and ICOT Hearing Systems, LLC (collectively, "ICOT" or "Defendants"), individually and as a class action, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et seq.*, and New York General Business Law ("GBL") § 399-p.

      Before the Court on referral from the Honorable Ann M. Donnelly is Plaintiff's Motion for Class Certification. ("Motion," Dkt. 163.) For the reasons stated herein, I respectfully recommend that the Motion be denied.

## FACTUAL BACKGROUND

      On or about June 30, 2017, while at his mother's home, Plaintiff answered her residential telephone landline and heard a prerecorded voice promoting hearing aids (the "First Telephone Call"). (Second Amended Complaint ("SAC") ¶¶ 26, 29, 30, Dkt. 133.) Upon entering a prompt, Plaintiff was connected to an employee of Defendants who provided the company name ListenClear. (*Id.* at ¶¶ 31-33; *see* Transcript of the May 7, 2019 Deposition of Todd Bank ("Bank Tr.") 22:22-24:4, Dkt. 164-1.) Defendants manufacture and sell hearing aids as ListenClear. (*See* Defendants' Memorandum in Opposition to Plaintiff's Motion ("Def. Opp.") at 4, Dkt. 167; Excerpt of Transcript of Deposition

1

of Jacob Zellweger ("Zellweger Tr.") 11:23-25, Ex. A to Motion, Dkt. 163-1.) Plaintiff "had a fairly lengthy discussion" with the employee and "provided him with some correct identification information and some incorrect identification information." (Bank Tr. 23:15-19.) Plaintiff identified himself as "Joseph Carney." (Bank Tr. 32:2-4, 33:2-5.)

On or about May 30, 2018, Plaintiff again answered his mother's landline and heard a prerecorded voice promoting hearing aids. (SAC ¶¶ 34-37.) Plaintiff was connected to a ListenClear employee (the "Second Telephone Call"). (*Id.* at ¶¶ 38-40.) Plaintiff provided the name "Joseph Klarne" and "expressed an interest in obtaining hearing aids." (Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories at 4, Ex. C. to Motion, Dkt. 163-1.)

The telephone number at which Plaintiff received these calls was on the National Do-Not-Call Registry for over 31 days at the time of the calls, and these calls were "made without the prior express written consent of any person who had the legal right to provide such consent." (SAC ¶¶ 42, 47).[1] On neither the First nor the Second Telephone Call did the caller state the caller's name, address, or telephone number. (*Id.* at ¶¶ 44-46.)

The calls received by Plaintiff were initiated by Prospects DM, a media marketing company engaged in a hearing aid campaign for Defendants. (*See id.* at ¶ 55; Def. Opp. at 2; Affidavit of Joshua Grant dated Aug. 28, 2019 ("Grant 2019 Aff.") ¶¶ 6(f), 11, Dkt. 113.) Prospects DM obtained lists of telephone numbers from "affiliate lead generators, who have a network of publishers," and directly from "publishers who collect data from web pages." (Grant 2019 Aff. ¶ 12.) Publishers collect "prior express written consent to be called" (*id.* at ¶ 17(a)), and lead generators use "lead generation forms, which state the affiliate has collected prior express written consent for Prospects DM to call

---

[1] Plaintiff alleges that "numerous" additional telephone calls were placed to the same telephone line "in or about May and June of 2017" but only describes these two calls. (SAC ¶ 27.)

consumers using a prerecorded message or automatic telephone dialing system ('ATDS') in compliance with the Telephone Consumer Protection Act . . . ." (*Id.* at ¶ 14.)

For Defendants' campaign, Prospects DM received phone numbers from Landfall Data, Qatalyst, Inc., and Fluent, Inc. (*Id.* at ¶ 13.) Landfall Data and Qatalyst, Inc. provided records indicating that the individuals whose phone numbers were provided had consented to being contacted, but Fluent, Inc. did not. (*Id.* at ¶ 15.) Joshua Grant, a business custodian of the records produced by Prospects DM, stated that "all leads were held out to Prospects DM as having been based on consent, but for [Defendants'] campaign I have no personal knowledge whether there was actual consent or not." (*Id.* at ¶ 11.)

The lead generation data obtained in this way were uploaded into Prospects DM's "soundboard" system, which it used to call consumers by automatically dialing the telephone numbers. (*Id.* at ¶¶ 8, 17(c).) Before Prospects DM initiated a call for Defendants, each phone number also underwent "various 'scrubs' to ensure compliance with applicable law." (*Id.* at ¶ 17(d).) These included an internal do-not-call list specific to Defendants' campaign, an internal do-not-call list tailored to Prospects DM, the federal do-not-call list, "[w]eekly files received from ListenClear regarding consumers," and "[v]arious third-party scrubbing resources promoting TCPA compliance including 'dnc.com' and the 'Blacklist Alliance.'" (*Id.*)

When a call was answered, a live agent for Prospects DM played "prerecorded snippets" intended to gauge the call recipient's interest in a hearing aid. (*Id.* at ¶¶ 8-9.) Based on screening criteria and the number of leads purchased by Defendants, Prospects DM then transferred calls to Defendants, who attempted to make a sale. (*Id.* at ¶¶ 17(f), 21.) A transfer from a Prospects DM agent to an agent for Defendants was called a "warm transfer." (*See id.* at ¶ 16.)

Defendants purchased warm transfers from Prospects DM from 2016 until at least April 9, 2020.[2] (Grant 2019 Aff. ¶ 16; Grant May 2021 Decl. ¶ 7.)

On April 30, 2018, Plaintiff brought this action individually and on behalf of a putative class, alleging that Defendants violated the TCPA and GBL. (Compl.) He filed an Amended Complaint on June 27, 2018, (First Amended Compl., Dkt. 17), and a Second Amended Complaint on November 22, 2019.[3] (SAC.)

On May 9, 2018, Matthew Hennie brought a class action suit against Defendants in the Northern District of Georgia, alleging TCPA violations based on numerous unsolicited calls he received in 2017. *See Hennie v. ICOT Hearing Sys., LLC*, No. 18-CV-02045, 2018 WL 9439109 (N.D. Ga., May 9, 2018) ("*Hennie* litigation"); (*see also* SAC at ¶ 2). A Settlement Class was certified in the *Hennie* litigation, consisting of "all called persons transferred to ICOT Hearing Systems, LLC d/b/a ListenClear from Prospects DM at any time between August 1, 2016 and December 31, 2018." (Final Approval Order and Judgment in *Hennie* litigation ("*Hennie* Settlement Order") ¶ 2, Ex. B to Def. Opp., Dkt. 167-2.) On November 18, 2019, the settlement reached by the parties in the *Hennie* litigation was approved, and judgment was entered. (*See id.*) Plaintiff's mother, Michele Bank, was a member of the *Hennie* Settlement Class but opted out of the settlement, along with five other class members. (*See Hennie* Settlement Order ¶ 9; Exclusion List, Ex. F to Declaration of Jay Geraci ("Geraci Decl."), *Hennie* Docket at 33-1.)[4]

---

[2] Defendants initially contracted with a brokerage firm to provide leads from Prospects DM; in May 2017, Defendants began to get the leads directly from Prospects DM. (Grant 2019 Aff. ¶ 18-20; Declaration of Joshua Grant dated May 27, 2021 ("Grant May 2021 Decl.") ¶¶ 10-11, Dkt. 177.)

[3] Prospects DM and various individuals were also named as defendants in the Second Amended Complaint, but Plaintiff voluntarily dismissed the claims against them. (*See* Dkts. 137, 138, 171, 172.)

[4] In various filings, the parties state that five people opted out of the *Hennie* settlement. However, the Settlement Order indicates that one additional person was added to the five listed on the exclusion list, for a total of six opt outs. (*See* Ex. F to Geraci Decl.; *Hennie* Settlement Order ¶ 9.)

Plaintiff states that he "personally was not a member of the Hennie class. [His] mother was." (April 8, 2021 Oral Argument Transcript ("Apr. 2021 Tr.") 27:16-17, Dkt. 192; *see also* "Decision and Order on Motion to Dismiss" at 5, Dkt. 140.) He also described his mother as being a member of the *Hennie* class "whose telephone number is the number that was called each time that [Plaintiff] answered [the First and Second Telephone Calls]" and that she "excluded that number from the settlement." (Plaintiff's Memorandum of Law in Support of Motion ("Pl. Mem. of Law") at 8, Dkt. 163-3 (quoting Plaintiff's Motion to Amend at 4, Dkt. 121).)

Discovery in the case brought by Plaintiff closed on October 25, 2019.[5] (*See* Order dated Sept. 23, 2019.) On December 16, 2019, Defendants moved to dismiss the Second Amended Complaint (Dkt. 135), and on September 29, 2020, that motion was denied. (Decision and Order on Motion to Dismiss.)

On January 26, 2021, Plaintiff moved to certify three classes (together, the "Proposed Classes"):

> **(1) Federal Robocall Class:** all persons to whose residential or cellular telephone number one or more telephone calls, from April 30, 2014, through April 9, 2020, were placed by ICOT through Prospects DM, Inc., that ICOT has not affirmatively shown to have been placed with proper consent, except to the extent that the claims of such persons were released in *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.);
>
> **(2) Federal Do-Not-Call Class:** all persons to whose telephone number, while having been on the National Do Not Call Registry for 31 days or more, at least two telephone calls, during any 12-month period from April 30, 2014, through April 9, 2020, were placed by ICOT through Prospects DM, Inc., that ICOT has not affirmatively shown to have been placed with proper consent, except to the extent that the claims of such persons were released by *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.); and
>
> **(3) New York Class:** all persons to whose New York State area-code telephone numbers one or more telephone calls, from April 30, 2015, through April 9, 2020, were placed by ICOT through Prospects DM, Inc., except to the extent that the claims

---

[5] At a conference on October 21, 2020, the Court reminded the parties that they had a continuing obligation to update their discovery responses, and Defendants also agreed to provide clarification regarding some codes on documents they had produced. (Minute Entry dated Oct. 21, 2020.)

>of such persons were released by *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.).

(Pl. Mem. of Law at 1.)

Plaintiff attached various exhibits to his Motion, including an excerpt of a spreadsheet ("Prospects DM Records") that Plaintiff received pursuant to a subpoena sent to Prospects DM in December 2020. (*See* "Prospects DM Records," Ex. G to Motion, Dkt. 163-1 beginning at ECF page 98.)

On February 26, 2021, Defendants filed their opposition to Plaintiff's Motion. (Def. Opp.) On March 12, 2021, Plaintiff filed his Reply. ("Pl. Reply," Dkt. 168.)

Oral argument was held on April 8, 2021. (Minute Entry dated Apr. 9, 2021.) Because questions were raised about whether the Prospects DM Records indicated that calls were placed after 2018, Plaintiff was granted leave to supplement the records and submitted a second declaration of Joshua Grant dated May 27, 2021. In this second declaration, Grant stated that the Prospects DM Records contained data on calls made by Prospects DM, or one of its agents, that were transferred to Defendants between January 2, 2017 and April 9, 2020. (*See* Grant May 2021 Decl. at ¶ 3.) Of the calls listed in the spreadsheet, 186,072 were made in 2019 and 2020, and "several thousand of those calls were made to telephone numbers with a New York State area code." (*Id.* at ¶ 6.) Additionally, all of the phone numbers listed "belonged to individuals who had opted-in to receive a phone call. . . ." (*Id.* at ¶ 8.)

On June 25, 2021, the Court held a hearing at which Plaintiff's supplemental filing was discussed. (Minute Entry dated June 27, 2021.) The Court granted Defendants leave to conduct limited discovery to clarify Grant's statement about individuals who "opted in" and whether they gave prior written consent to be called. On July 8, 2021, Defendants filed a supplemental declaration of Joshua Grant in which Grant clarified that all of the phone numbers in the spreadsheet "belonged to individuals who had . . . . provided prior express written consent to be called using an automatic

6

telephone dialing system or prerecorded message under the [TCPA], and that [Grant] ha[d] retained an opt-in record confirming that each of those persons so consented." (Declaration of Joshua Grant dated July 7, 2021 ("Grant July 2021 Decl.") ¶¶ 5-6, Dkt. 181-1.)[6]

On July 9, 2021, Plaintiff filed a response to the supplemental declaration of Joshua Grant, arguing that Prospects DM has not produced the consent records that Grant refers to and that Grant could not authenticate the purported records in any event. (*See* Dkt. 182.)

## LEGAL STANDARD

To qualify for certification, a class must meet the prerequisites set forth in Rule 23 of the Federal Rules of Civil Procedure. A plaintiff seeking certification under Rule 23 has the burden to establish (1) numerosity, (2) commonality, (3) typicality, (4) adequacy of representation, (5) superiority of the class action over other procedures, and (6) predominance. *Mazzei v. Money Store*, 829 F.3d 260, 270 (2d Cir. 2016); *see* Fed. R. Civ. P. 23(a), (b)(3). The Second Circuit has also recognized an implied requirement of ascertainability. *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015) ("Like our sister Circuits, we have recognized an 'implied requirement of ascertainability' in Rule 23 of the Federal Rules of Civil Procedure." (citation omitted)); *see McBean v. City of N.Y.*, 260 F.R.D. 120, 132-33 (S.D.N.Y. 2009).

To certify a class, a district court must definitively assess each class certification element and find that each requirement is "established by at least a preponderance of the evidence." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013) (quoting *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010)).

---

[6] Although the May 2021 and July 2021 documents are titled "Declaration of Joshua Grant," the statements were made under penalty of perjury, similar to those in his affidavit.

In a motion for class certification, the moving party has the burden of satisfying all the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

Under the TCPA, it is unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission . . . ." 47 U.S.C. § 227(b)(1)(B). Federal Communications Commission ("FCC") regulations prohibit telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . ." 47 C.F.R. § 64.1200(c)(2). The TCPA provides a private right of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity . . ." in violation of the TCPA or 47 C.F.R. § 64.1200(c)(2). *See* 47 U.S.C. § 227(c)(5); *Conboy v. AT & T Corp.*, 241 F.3d 242, 253-54 (2d Cir. 2001) (noting TCPA provides private right of action to enforce FCC regulations protecting consumers from unwanted telephone solicitations).

Under the GBL, telephone calls placed through automatic dialing-announcing devices must "state at the beginning of the call the nature of the call and the name of the person or on whose behalf the message is being transmitted and at the end of such message the address, and telephone number of [that] person . . . ." NYGBL § 399-p(3)(a). The GBL provides a private right of action to "any person who has received a telephone call in violation of" Section 399-p(3). NYGBL § 399-p(9).

## **DISCUSSION**

As a preliminary matter, it is undisputed that Defendants did not place any telephone calls through Prospects DM until December 2016 or January 2017. (*See* Zellweger Tr. 17:11-18-5.) Therefore, there can be no class members before then. Although the Proposed Classes purport to

8

cover periods beginning as early as 2014, Plaintiff agreed that the covered period for the Proposed Classes should be narrowed to begin on September 1, 2016. (*See* "Pl. Reply Mem. of Law" at 25, Dkt. 168-1 (Plaintiff "does not object to the class periods' beginning in late 2016, *i.e.* September 1, 2016.").) Therefore, the relevant period to be discussed consists of the time during the period covered by the *Hennie* litigation (August 1, 2016 to December 31, 2018) (the "*Hennie* Covered Period") and the period thereafter (January 1, 2019 to April 9, 2020).

## I.  Definitions Common to the Proposed Classes

Although the three Proposed Classes differ from one another, they contain some common elements. They all purport to be comprised of: "all persons to whose . . . telephone number . . . telephone calls . . . were placed by ICOT through Prospects DM, Inc., . . . except to the extent that the claims of such persons were released [by] *Hennie v. ICOT Hearing Systems, LLC*, No. 18-cv-02045 (N.D. Ga.)." (Pl. Mem. of Law at 1.)

### A.  *Exclusion of Persons Whose Claims Were Released in* **Hennie**

The Proposed Classes are defined to exclude as members those individuals whose claims were released by the *Hennie* litigation.

The *Hennie* Settlement Class consisted of "all called persons transferred to ICOT Hearing Systems, LLC d/b/a ListenClear from Prospects DM at any time between August 1, 2016 through December 31, 2018." (*Hennie* Settlement Order ¶ 2.)

Pursuant to the *Hennie* Settlement Order, any members of the *Hennie* litigation class who did not opt out of the Settlement Class had their claims released. (*Id.* ¶ 18.) Six class members opted out, including Plaintiff's mother. All other class members from the *Hennie* litigation, who did not opt out, are explicitly excluded from membership in the Proposed Classes. Plaintiff concedes as much, stating

9

that, "[i]n any event, the only persons who are class members based on calls that were made before 2019 are those who opted out of the *Hennie* settlement . . . ." (Pl. Reply Mem. of Law at 19.)[7]

Those who opted out of the *Hennie* Settlement Class, however, can sue only in their individual capacities for the period covered by the *Hennie* litigation and may not join the Proposed Classes. *See, e.g.*, *Wai Hoe Liew v. Cohen & Slamowitz, LLP*, 265 F. Supp. 3d 260, 275 (E.D.N.Y. 2017) ("If opt-out plaintiffs wish to pursue their individual claims, they must do so individually, and not as a resurrected class asserting claims arising from factual predicates identical to those asserted in the prior class action from which they opted out."); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 88 (S.D.N.Y. 2001) (Purported class members "must be given an option: to gain the convenience of class membership, or opting-out and suing individually.").[8]

Therefore, none of the *Hennie* class members—whether they opted out or not—can be members of the Proposed Classes.

Plaintiff asserts that he was never a member of the *Hennie* litigation, and, therefore, is not excluded as a member of the Proposed Classes. As the *Hennie* Settlement Class was defined, it would appear that Plaintiff—who received the First Telephone Call on June 30, 2017 and the Second Telephone Call on May 30, 2018, both within the *Hennie* Covered Period—should have been a member of that class. And because he did not opt out, Plaintiff's claim should have been released.

Plaintiff does not explain why he was not a member of the *Hennie* Settlement Class.

Nevertheless, the Court has accepted that he was not a member of the *Hennie* Settlement Class (*see* Decision and Order on Motion to Dismiss at 5), and I assume, *arguendo*, that Plaintiff's claim was not released as a result of the *Hennie* litigation.

---

[7] Elsewhere, as discussed below, Plaintiff states that he is also not excluded from the Proposed Classes. (*See* Apr. 2021 Tr. 28:18-24 ("THE COURT: . . . [E]veryone who received a phone call before 2019, other than the five [sic] opt outs and you, are no longer part of that, are excluded from this class. MR. BANK: Correct.").)

[8] In opposition, Plaintiff asserts only that "*Liew* was erroneously decided." (Pl. Reply Mem. of Law at 16.)

10

### B. *"Called Party"*

Membership in the Proposed Classes is limited to "persons to whose . . . telephone number" calls were placed. If this term is defined as the subscriber of the telephone number, Plaintiff would not be a member, because he was not a subscriber of the telephone number on which he received the First and Second Telephone Calls. In that case, Plaintiff would not have standing to bring this class action lawsuit and would not be an adequate class representative. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594-95 (1997) ("Representatives must be part of the class and possess the same interest and suffer the same injury as the class members."); *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) ("A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." (citation omitted)); *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 96 (S.D.N.Y. 2010) (suggesting that to serve as an adequate class representative, a plaintiff must be a member of the class that he seeks to represent); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) ("We conclude that the district court properly found Baffa lacked standing because he was not a member of the class.").

Plaintiff urges a broader definition for who can be a member, to include not only subscribers of the telephone numbers called, but also any "non-subscriber customary user" of the numbers. (*See* Pl. Reply Mem. of Law at 9.) He suggests that the Proposed Classes include any individual, such as himself, who is a frequent user of a telephone number based on the amount of time he uses the phone and his authority to answer it. (*See id.* at 6-9.) Plaintiff states that he "spend[s] what [he] consider[s] a large or hefty amount of time at [his mother's] residence," "sleep[s] over on a regular basis, not a majority of nights but a sizable minority," and "us[es] her telephone in a varying fashion." (*Id.* at 8 (citing Bank Tr. 16:2-10, 7:12-17).) Plaintiff asserts that his description of who qualifies as a member of the Proposed Classes is consistent with the definition of "called party" in the TCPA. (*See id.* at 6-8.)

11

The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice . . . without the prior express consent of the called party . . . ." 47 U.S.C. § 227(b)(1)(B). The statute does not contain a definition of the term "called party."

The FCC has defined "called party" as "the subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling & Order No. 15-72, 30 FCC Rcd. 7961 ¶ 73 (F.C.C. July 10, 2015). It does so in the context of determining whether a current or previous subscriber to a wireless telephone number can consent to receiving calls on that number once it has been reassigned. (*Id.*) The FCC ruling further provides that a "called party" includes "individuals who might not be the subscriber, but who, due to their relationship to the subscriber, are the number's customary user and can provide prior express consent for the call." *Id.* at ¶ 75. As an example, it gives "a close relative on a subscriber's family calling plan or an employee on a company's business calling plan." *Id.*

Plaintiff cites *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) for the proposition that "called party" means "the person who pays the bills *or* needs the line in order to receive other calls." (Pl. Reply Mem. of Law at 5 (emphasis in original).) The Court in *Soppet*, however, held that, in deciding whether "called party" referred to a cellphone number's previous or current subscriber, "'called party' in § 227(b)(1) means the person subscribing to the called number at the time the call is made." 679 F.3d at 643. While the Court noted in dicta that the TCPA sometimes appears to use the term "called party" to refer to the person who answered the phone, *see id.* at 640, the Court did not incorporate that observation into its holding.

It is not necessary to decide here whether Plaintiff's description of who constitutes a "called party" is correct. For purposes of this Motion, I accept, *arguendo*, Plaintiff's expansive definition of

12

the Proposed Classes to include non-subscriber customary users, in order to examine whether membership in those classes, thus defined, is ascertainable.

## II. Ascertainability

Federal Rule of Civil Procedure Rule 23(a) contains an implied requirement of ascertainability, defined by "objective criteria" that make it "administratively feasible" to identify the class members. *See, e.g.*, *Leyse v. Lifetime Ent. Servs., LLC*, 679 F. App'x 44, 47 (2d Cir. 2017) (citation to summary order) (affirming a district court's denial of class certification based on ascertainability where proposed class members were unlikely to be able to confirm their membership in the class); *Charron v. Pinnacle Grp., N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (citation omitted); *McBean*, 260 F.R.D. at 133. "A class is ascertainable when . . . identifying its members would not require a mini-hearing on the merits of each case." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) (quoting *Brecher*, 806 F.3d at 24-25 (citation omitted)). While the Court need not ascertain who is in the Proposed Classes at the class certification stage, "the exact membership of the class[es] must be ascertainable at some point in the case." *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002) (quoting *Rios v. Marshall*, 100 F.R.D. 395, 403 (S.D.N.Y. 1983)).

Additionally, there is no "freestanding administrative feasibility requirement . . . ." *In re Petrobras*, 862 F.3d at 264. "Certification will only be precluded" on the grounds of ascertainability, "if a proposed class definition is indeterminate in some fundamental way." *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 403 (E.D.N.Y. 2022) (quoting *In re Petrobras*, 862 F.3d at 269).

Plaintiff argues that the requirement of ascertainability has been met as to all the Proposed Classes because "the call records that Prospects [DM] produced list each telephone number that was called." (Pl. Mem. of Law at 17.) He further argues that the New York Class can be ascertained by identifying all telephone numbers with New York State area codes contained in the call records. (Pl. Reply Mem. of Law at 23.)

13

The Prospects DM Records contain a list of telephone calls made between January 2, 2017 and April 9, 2020, with 186,072 calls made in 2019 and 2020. (Grant May 2021 Decl. ¶¶ 3, 6.) While it might be possible to match the telephone numbers on that list with a list of names to identify the subscribers of those numbers, Plaintiff's definition requires more than that. In order to ascertain the identities of people like Plaintiff—who were not subscribers of the telephone numbers but claim some other basis for joining the class—a different methodology would have to be used. Plaintiff fails to propose a workable methodology.

In addressing the potential of double- or triple-counting members in a household where multiple people have access to a landline, Plaintiff suggested that it should be left to the relevant individuals to determine who among them received the telephone call. Positing a hypothetical household with multiple family members, Plaintiff stated, "it might well be that Jane Smith answered [the telephone]. It might be that John answered it or one of the children, and it might be that there was just a voicemail or something like that where no one actually answered it . . . . [I]f there's a claim that's made, . . . [and] the settlement payment is made out to Jane Doe, if her husband or one of her kids wants to say hey, I was the one who answered the phone, that money should go to me, you know, that will be for them to work out." (*See* Apr. 2021 Tr. 21:13-24:20.) However, Plaintiff's approach only resolves the question of who ultimately collects the damages, not who should be named as a class member. And it adds a subjective element to a process that should contain only objective criteria.

Ultimately, Plaintiff's description of who can qualify as a class member renders the Proposed Classes unascertainable by muddying the seemingly objective criteria by which membership in the classes can be determined.

In *Leyse*, the plaintiff sought to certify a class "of 'all persons to whose residential telephone lines [the defendant] or a third party acting on its behalf initiated' the challenged prerecorded message." 679 F. App'x at 47 (alteration in original). Because no list of the called numbers existed,

14

the plaintiff proposed that potential class members be identified "by soliciting individual affidavits certifying receipt of the prerecorded call accompanied by telephone bills showing subscription to New York City residential telephone service . . . ." *Id.* The district court found that the proposed class was unascertainable because "(1) no list of the called numbers existed, (2) no such list was likely to emerge; and (3) . . . proposed class members could not 'realistically be expected to recall a brief phone call received six years ago or . . . to retain any concrete documentation' of such receipt." *Id.* (quoting *Leyse v. Lifetime Ent. Servs.*, No. 13-CV-5794 (AKH), 2015 WL 5837897, at *5 (S.D.N.Y. Sept. 22, 2015), *aff'd sub nom. Leyse*, 679 F. App'x 44). The Court of Appeals affirmed the district court's denial of the plaintiff's motion to certify a class, finding that the plaintiff "had failed to show a sufficiently reliable method for identifying the proposed class to avoid 'mini-hearing[s] on the merits of each case.'" *Id.* (quoting *Brecher*, 806 F.3d at 25) (alteration in original). It further noted that any records supplementing the individual affidavits would only show subscription "to residential telephone service, not the receipt of particular calls." *Id.*

In the instant case, although the Prospects DM Records contain a list of telephone numbers dialed, there is no list that can identify the persons whose telephone numbers received calls based on the criteria Plaintiff has enumerated. Plaintiff's description of the Proposed Classes would include "non-subscriber customary users" of a landline who are not linked to the telephone number as a subscriber or part of a family or business calling plan. Plaintiff has offered no method for obtaining this information, let alone one that is reliable, and no such list is likely to emerge. As Plaintiff acknowledges, "There's never going to be a situation where there will be any kind of record of every single person who answers the phone." (Apr. 2021 Tr. 21:14-17.) Without records of who answered the calls, it would not be possible to identify those who qualify as non-subscriber class members. As in *Leyse*, potential members would be expected to remember telephone calls received years ago in order to self-identify as members.

Moreover, if the Proposed Classes were to be certified as Plaintiff describes, the Court would be forced to conduct a mini-hearing for each potential class member to determine whether the amount of time that person used the telephone or spent at the address associated with the telephone number would qualify that individual as a customary user. There are no objective criteria to determine the number of hours or the kind of permission that would suffice for someone to be permitted to join one of the Proposed Classes.

Accordingly, I find that the Proposed Classes as defined by Plaintiff are unascertainable and, therefore, cannot be certified.

Because the Proposed Classes are unascertainable, it is not necessary to determine whether Plaintiff has met all the other requirements to certify a class under Rule 23.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that the Motion be denied.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any just objection waives the right to further judicial review of this Report and Recommendation. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         January 1, 2023